UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOCIETY OF THE HOLY TRANSFIGURATION MONASTERY, INCORPORATED,<br><br>    *Plaintiff,*<br><br>v.<br><br>ARCHBISHOP GREGORY OF DENVER, COLORADO,<br><br>    *Defendant.* | Civil Action No. 1:07-cv-12387-RGS<br><br>**REQUEST FOR ORAL ARGUMENT** |

**MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF PROTECTIVE ORDER**

  Plaintiff Society of the Holy Transfiguration Monastery, Incorporated ("HTM") respectfully moves this Court pursuant to Fed. R. Civ. P. 26(c) for entry of HTM's attached proposed protective order concerning confidential discovery materials ("Proposed Protective Order," attached to Plaintiff's Motion for Protective Order as Exh. A).

  The parties have agreed to the majority of terms in the Proposed Protective Order, but have been unable to reach agreement on two critical issues. Defendant takes the unreasonable position that private correspondence between HTM and third parties should not be protected from public disclosure, and that HTM's sensitive business information, including its financial data, customer names, and vendor names, should be disclosed to Defendant personally, despite Defendant's prior infringing conduct and a lack of any demonstrated need for Defendant to access this information. As discussed below, there is good cause for the protections HTM seeks, and the Proposed Protective Order is narrowly tailored to balance HTM's privacy interests and Defendant's right to discovery. Thus, HTM requests its motion be granted and the Proposed Protective Order entered.

## FACTS

**A.    Background Of The Case**

HTM is a community of religiously devoted members of an Eastern Orthodox Order located in Brookline, Massachusetts. *See* Affidavit of Father Pachomius filed in connection with Plaintiff's Opposition to Defendant's Motion to Dismiss, Dkt 12-2 (hereinafter "Dkt 12-2"), ¶ 1. For the last thirty years, HTM has created and published numerous textual works often comprising English translations of original church Greek language texts, as well as original text and works of visual art. *Id*. at ¶ 3. HTM relies on its ability to control the distribution and sale of the works to offset HTM's publishing costs and to provide additional income to HTM. Defendant is a former member and novitiate of HTM who lived and worked at the monastery for thirteen years. *Id*. at ¶ 5-6, 8.

This is an action for copyright infringement and breach of contract, and is the second lawsuit HTM has had to bring against Defendant for reproducing HTM's copyrighted works without authorization. In January 2006, the Monastery commenced Civil Action No. 2:06-CV-10291 in the United States District Court of the Eastern District of Michigan against Defendant and his publisher, Sheridan Books, Inc., for copyright infringement (the "Michigan action"), which was subsequently settled. *See* Dkt. 1, Complaint at ¶¶ 38-40.

Despite the fact that Defendant entered into a Settlement Agreement with HTM in 2006, wherein defendant acknowledged the validity of HTM's "St. Isaac" work and agreed never to reproduce the work in the future, Defendant published the St. Isaac work along with six other copyrighted works owned by HTM on his website in 2007. In his Answer, Defendant admits that he published the works, but claims he did not need HTM's permission to do so. Dkt. 21, Answer at ¶ 48.

**B.     The Proposed Protective Order**

On September 15, 2008, HTM served discovery requests to Defendant. *See* Declaration of Eric Keller, hereinafter "Keller Decl.", at ¶ 3. On the same date, HTM forwarded a draft protective order to Defendant. Defendant initially signaled to HTM that a protective order was appropriate and it would be willing to negotiate one. *See* Keller Decl. at ¶¶ 4-6.

On October 16, 2008 Defendant reversed course and indicated that Defendant "does not see any reason to enter into a protective order in this matter and will not agree to one." Keller Decl. at ¶ 9. HTM immediately responded by telling Defendant that although he may believe none of his own information is confidential, HTM still reserved the right to revisit the issue of a protective order when and if Defendant served discovery on HTM. Keller Decl. at ¶ 10.

Defendant propounded discovery to HTM on October 16, 2008. Keller Decl. at ¶ 11. Again, on November 12, 2008, HTM notified Defendant that because Defendant's discovery requests require the disclosure of confidential HTM material, the parties must negotiate an acceptable protective order. Keller Decl. at ¶¶ 12, 14. Defendant finally relented, and agreed to negotiate terms of a protective order. Keller Decl. at ¶ 15-19.

The parties subsequently agreed to most of the terms in the Proposed Protective Order. For example, the parties agreed that "CONFIDENTIAL" information would be defined as follows:

> For the purposes of this Agreement, a document may be designated "CONFIDENTIAL" if and only if it contains (1) publishing program information, including and limited to the identity of the publisher and the costs of publishing; (2) information relating to licensing or granting of permissions of use of the Works. This information may be reviewed by the receiving party's representatives and experts as defined in paragraph 6(a) herein, but must be protected against disclosure to third parties.

Exh. A to HTM's Motion For Entry of Proposed Protective Order, at ¶ 2.a.

The parties also agreed that "CONFIDENTIAL" information shall be treated as follows:

> Access to all information or documents legitimately designated CONFIDENTIAL" shall be limited to, and only to, the following qualified persons:
> i. The Monastery and members of the Monastery
> ii. Archbishop Gregory
> iii. The respective outside counsel of record of The Monastery or Archbishop Gregory in this Action, and their employees and staff, provided that such person is informed of the existence and contents of this Protective Order before such person is permitted access to any of the Confidential Information
> iv. Organizations or persons retained by the attorneys to provide litigation support services in this action, …
> v. Independent experts and consultants retained in this action by the attorneys of record, in so far as the attorneys of record may deem it necessary for the preparation or trial of this case to consult with such experts or consultants, …
> vi. Mock jurors engaged by any consultant in preparation for trial, …
> vii. The Court and those employed by the Court
> viii. Such other person as hereafter may be designated by written agreement in this action or by order of the Court

*Id.* at ¶ 6.a.

## C.  Terms of the Protective Order Disputed By the Parties

The parties agree on the language of the Proposed Protective Order with the exception of two issues: (1) the treatment of correspondence between the Monastery and third parties as CONFIDENTIAL; and (2) the inclusion of a "HIGHLY CONFIDENTIAL" designation that will limit disclosure of certain highly sensitive HTM business information to outside counsel, with some exceptions.

With respect to the first issue, HTM seeks to include "correspondence between the Monastery and third parties" as a third category of documents that may be protected under this designation, in addition to the two categories of documents the parties already agree may be treated as CONFIDENTIAL. HTM therefore proposes to define CONFIDENTIAL information as follows:

4

> For the purposes of this Agreement, a document may be designated "CONFIDENTIAL" if and only if it contains (1) publishing program information, including and limited to the identity of the publisher and the costs of publishing; (2) information relating to licensing or granting of permissions of use of the Works; or (3) correspondence between the Monastery and third parties. This information may be reviewed by the receiving party's representatives and experts as defined in paragraph 6(a) herein, but must be protected against disclosure to third parties.

With respect to the second issue, HTM seeks a HIGHLY CONFIDENTIAL designation to protect financial information ("Financial Information"), information relating to customers of either party ("Customer Information"), and vendor information, such as publisher and printer information ("Vendor Information") from disclosure except to the Court, outside counsel, and experts. It would preclude the Defendant from personally accessing such information without agreement of the parties or court order. Thus, HTM proposes that HIGHLY CONFIDENTIAL be defined as follows:

> For the purposes of this Agreement, a document may be designated "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" if and only if it contains (1) financial, budgeting and/or accounting information, including but not limited to a party's tax information, sales information, or revenue information; (2) information relating to customers of either party, such as identification of or personal information of any customer as contained in mailing lists, order forms, donation forms or any other list or record identifying customers; or (3) information relating to vendors, such as publishers or printers. This information may be reviewed by the receiving party's attorneys and experts as defined in paragraph 6(b) herein, but must otherwise be protected against disclosure to the receiving party or third parties.

*Id*. at ¶ 2.b.

HTM further proposes that "HIGHLY CONFIDENTIAL" information be treated in the following manner:

> Access to all information or documents legitimately designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall be limited to, and only to, the following qualified persons:
> i.  The respective outside counsel of record of the Monastery and Archbishop Gregory, and their employees and staff, provided that such person is

    informed of the existence and contents of this Protective Order before
    such person is permitted access to any of the Confidential Information
ii.  Organizations or persons retained by the attorneys to provide litigation
support services in this action, provided that
  (1) such organization or person is informed of the existence and
contents of this Protective Order before such person is permitted access to any of
the Confidential Information; and
  (2) such organization or person is not engaged in any other matter
relating in any way to the producing party for the duration of this litigation.
iii.  Independent experts and consultants retained in this action by the
attorneys of record, in so far as the attorneys of record may deem it necessary
for the preparation or trial of this case to consult with such experts or consultants,
    provided that:
  (1) such actual or contemplated expert or consultant complies with the
requirements of paragraph 7 of this Protective Order ("Disclosure to Experts");
and
  (2) such actual or contemplated expert or consultant is not an
employee of any of the parties hereto or their respective counsel.
vi.  Mock jurors engaged by any consultant in preparation for trial, provided
that:
  (1) such person shall first execute an affidavit, in substantially the
form attached hereto as Exhibit A, agreeing to be bound by the terms of this
Protective Order, and such affidavit shall be retained under counsel's control until
final termination of this action; and
  (2) such individuals are not officers, directors, employees, agents,
owners, or members of a named party.
v.  The Court and those employed by the Court
vi.  Such other person as hereafter may be designated by written agreement in
this  action or by order of the Court

*Id*. at 6.b.

For the Court's convenience, the portions of the Proposed Protective Order to which

Defendant objects are underlined in a marked-up version of the Proposed Protective Order

attached at Ex. B to HTM's Motion For Entry of Protective Order, Proposed Protective Order.

**ARGUMENT**

**A.    HTM'S PROPOSED PROTECTIVE ORDER ADEQUATELY BALANCES THE PARTIES' NEEDS AND HTM HAS SHOWN GOOD CAUSE WHY IT SHOULD BE ENTERED**

The Proposed Protective Order is appropriate, narrowly tailored to the facts of this case, and should be entered to protect HTM's confidential information. Rule 26(c)(1) authorizes a court to issue a protective order for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26. It is common for courts to issue protective orders that limit disclosure of certain confidential information, including limiting such information to outside counsel. *See,* e.g., *Bailey v. Dart Container Corp. of Michigan*, 980 F.Supp. 560 (D. Mass. 1997) (discussing use of protective orders to balance interests of the parties); *GTE Products Corp. v. Gee*, 112 F.R.D. 169, 172 (D. Mass. 1986) (balancing risk of competitive injury against need for information and issuing protective order limiting disclosure of specific types of documents containing confidential information to outside counsel); *Triangle Ink and Color Co. v. Sherwin-Williams Co.*, 61 F.R.D. 634, 636-637 (N.D. Ill. 1974) (limiting access to confidential information to trial counsel and independent experts).

The Proposed Protective Order adequately balances the Monastery's concerns of misuse against Defendant's right to access the sought information. *See, e.g.*, *GTE Products Corp. v. Gee*, 112 F.R.D. 169, 172 (D. Mass. 1986). First, HTM seeks CONFIDENTIAL protection for its correspondence with third parties. A CONFIDENTIAL designation will allow such correspondence to be freely disclosed to the Defendant, his attorneys, experts, and litigation support personnel, thus causing no undue burden for Defendant. It would merely prevent such correspondence from being publicly disclosed or used for purposes unrelated to this litigation—

7

an eminently reasonable restriction for this type of private and personal correspondence between HTM and its members and third parties.

Defendant cannot offer any reasonable argument as to why such private correspondence should not be shielded from public disclosure and its use restricted to this lawsuit. Accordingly, inclusion of "correspondence between the Monastery and third parties" as a category of information which may be designated CONFIDENTIAL is reasonable and accomplishes a balance between HTM's legitimate concerns for privacy and the litigation needs of the Defendant.

Second, it is reasonable for the protective order in this case to have a mechanism by which HTM can protect its highly confidential business information from needless and potentially prejudicial disclosure to the Defendant. HTM seeks to have its financial information including pricing information for its published works ("Financial Information"), information about its customers ("Customer Information"), and information about its publishers and other business vendors ("Vendor Information") designated HIGHLY CONFIDENTIAL— ATTORNEYS' EYES ONLY. This would allow Defendant's outside counsel and experts access to such information, but would shield it from the Defendant himself.

The parties are competitors who share potential customers. Both HTM and Defendant publish religious texts—Defendant on his website and HTM through its traditional print publishing program.[1] The information sought to be protected as HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY is HTM's proprietary and sensitive business information, which could provide Defendant with a competitive advantage if disclosed to and used by Defendant

---

[1] In 2006, Defendant attempted to enter the traditional publishing realm by contracting with a publishing company, Sheridan Books, to publish a volume that was to contain HTM's copyrighted material. In settling that dispute, Defendant agreed never to reproduce HTM's St. Isaac Work. Less than 2 years later, Defendant published the St. Isaac work on his website.

8

outside of this litigation.  *GTE Products Corp.*, 112 F.R.D. at 172 (limiting disclosure of business information and financial information).  For example, HTM seeks to protect Financial Information which will include its pricing information, sales figures, profit margins, and related financial information that should not be disclosed to a competitor.  Similarly, HTM's Customer Information such as the identity of HTM's customers, and the terms of its business dealings with customers is highly sensitive matter, because both parties potentially compete for the same customers within the Orthodox religious community.  HTM should not have to disclose the identity of its customers to Defendant, and risk that such information will be used to Defendant's competitive advantage through solicitation or other contact by Defendant.  *Id.* (finding it proper to limit disclosure of customer lists and other customer identification information).  Finally, HTM's Vendor Information, including the identity of its publishers, printers, and distributors, and the terms of the business relationships between HTM and such vendors, should be shielded from disclosure to Defendant for the same reason.

    Protecting such information from disclosure to Defendant personally will ensure that HTM's proprietary business information is not misused by Defendant.  HTM has heightened concerns regarding misuse of HTM's information by Defendant.  This is the second time HTM has been forced to bring suit against Defendant for infringing HTM's copyrighted works, and Defendant has shown a pattern of failing to recognize or respect HTM's intellectual property.

    Notwithstanding the history between the parties, it would still be reasonable to protect one party's confidential financial, vendor and customer data from another competitive party.  The Defendant's history of misuse of HTM's copyrighted works only makes the risk higher and the need stronger.

Defendant is in no way prejudiced by the inclusion of a HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY designation that restricts HTM's Financial, Customer, and Vendor Information from Defendant's view.  Defendant's right to obtain discovery is still met because his counsel and experts have access to and can utilize this information in his defense. *Id.* (entering protective order and stating "I find no basis in law for the defendants' contention that they have the right to have confidential commercial information of competitors disclosed to them in addition to having the information disclosed to their attorneys. In this case, in balancing the risk of competitive injury to third parties as against the need for the defendants [ ] to have access to this information when the information will be disclosed to their attorneys, I find that the balance tilts in favor of issuing the plaintiff's requested protective order.").  Moreover, review of this information is unlikely to require any specialized knowledge of the Defendant personally.  For example, review of HTM's financial information can be sufficiently conducted by counsel or an expert.  Depositions of HTM's customers, to the extent any are relevant, require only counsel's attendance.  In addition, the Proposed Protective Order contains a mechanism by which a designation may be challenged, if it is believed that Defendant's access to certain information is necessary.  *See* Proposed Protective Order at ¶ 4.  Accordingly, creating a HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY designation for HTM's Financial Information, Customer Information, and Vendor Information is supported by good cause and adequately balances the interests and needs of the parties.

## CONCLUSION

Accordingly, for at least the reasons stated above, the Monastery respectfully requests that the Court enter its Proposed Protective Order.

Dated:  February 10, 2009            /s/ Courtney M. Quish
                                                                 Amy L. Brosius (BBO # 656521)
Mark A. Fischer (BBO # 167100)
Courtney M. Quish (BBO # 662288)
Eric J. Keller (BBO # 670275)
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
p: (617) 542-5070
F: (617) 542-8906
quish@fr.com

*Attorneys for Plaintiff*
*Society of the Holy Monastery, Incorporated*


CERTIFICATE OF SERVICE

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 10th day of February, 2009.

/s/ Courtney M. Quish
Courtney M. Quish

11