UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOCIETY OF THE HOLY TRANSFIGURATION MONASTERY, INCORPORATED,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ARCHBISHOP GREGORY OF DENVER, COLORADO,<br><br>　　　　　Defendant. | Civil action No. 07-12387RGS |

**SOCIETY OF THE HOLY TRANSFIGURATION MONASTERY, INC.'S CONCISE STATEMENT OF DISPUTED MATERIAL FACTS AND OMITTED UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiff Society of the Holy Transfiguration Monastery, Incorporated (the "Monastery") provides the following concise statement of the material facts of record as to which it contends there is a genuine issue to be tried, as well as a concise statement of the material omitted undisputed facts which the Monastery contends are relevant to the determination of the Defendant Archbishop Gregory of Denver Colorado (the "Defendant") Motion for Partial Summary Judgment (the "Motion").

**The Monastery's Concise Statement of Disputed Material Facts**

The Defendant filed a Concise Statement of Material Undisputed Facts ("Defendant's Statement") with his Motion, that included paragraphs 1-24.  Below are the specific facts that the Monastery contends are in dispute, which paragraphs correspond to the paragraphs in Defendant's Statement.

3. The Monastery was founded in 1960 by seven individuals who are adherents to the Eastern Orthodox faith. *See* Declaration of Father Pachomius (hereinafter "Pachomius") at ¶ 3; Ex. 1 [Monastery's Agreement of Association]; ¶ 4; Ex. 2 [Monastery's Certificate of Incorporation]; and ¶ 28.

5. The Monastery disputes that being in communion with the bishops of the Russian Orthodox Church Outside of Russia ("ROCOR") or under ROCOR's ecclesiastical jurisdiction ever meant that the Monastery "came under the rule" of the bishops of ROCOR instead of the Bishops of Constantinople. The Monastery is independent in its organization and governance, and although the Monastery began commemorating the bishops of ROCOR in 1965, it was never owned or governed by ROCOR or any particular church within the Orthodox faith. See id. at ¶ 27-35. The Monastery's corporate documents do not mention ROCOR. *See id*. at ¶¶ 3-7; *see also* Ex. Nos. 1–5 [Monastery's Agreement of Association, Monastery's Certificate of Incorporation, and Bylaws of the Monastery].

9. The Monastery disputes that the Monastery was ever governed or bound by the document the Defendant refers to as the "Monastic Statutes." *See id*. at ¶¶ 24, 48. The Monastery is an independent corporation and no such statutes were disclosed to the Monastery prior to this lawsuit. *See id*. at ¶¶ 27, 48. The Monastery was never "a ROCOR Monastery." *See id*. at ¶ 35. Although for a time the Monastery commemorated the bishops of ROCOR, the Monastery was not established at the direction or request of the ROCOR or by any bishop of ROCOR. *See id*. In addition to its corporate bylaws, the only written guidelines binding on the Monastery are the Orthodox Canons contained in the Rudder. *See* id. at ¶ 7; Ex. 5 [Bylaws of the Monastery]; *see also* Declaration of Eric J. Keller (hereinafter "Keller") at ¶ 1; Ex. 1 [Deposition testimony of Father Panteleimon at 86:16 – 89:5, 90:7 - 91:4].

10. The Monastery disputes that the "Monastic Statutes" apply to the Monastery because the Monastery was not founded by or under the authority of the ROCOR. *See* Pachomius at ¶¶ 25, 27, and 35. On their face, the "Monastic Statutes" apply only to monasteries founded by ROCOR. *See* Dkt. 50, Defendants Statement of Undisputed Facts; Deposition Ex. 82 at §§ 1, 5, and 6 (The "Monastic Statutes" deal with "establishing," "opening," or "founding" monastic communities "within the Russian Orthodox Church Abroad….").

11. The Monastery disputes that the Monastery was ever governed or bound by the document the Defendant refers to as the "Monastic Regulations." No such regulations were disclosed to the Monastery. *See id*. at ¶ 25, 48. In addition to its corporate bylaws, the only written guidelines binding on the Monastery are the Orthodox Canons contained in the Rudder. *See id*. at ¶ 7; Ex. 5 [Bylaws of the Monastery]; *see also* Keller at ¶¶ 1-2; Ex Nos. 1-2 [Deposition testimony of Father Panteleimon at 88:16 - 89:5 and 96:17 – 97:19].

12. The Monastery disputes that the Monastery was ever governed or bound by the document the Defendant refers to as the "Monastic Decree On Property And Finances." No such decree was disclosed to the Monastery. *See* Pachomius at ¶ 26. In addition to its corporate bylaws, the only written guidelines binding on the Monastery are the Orthodox Canons contained in the Rudder. *See id*. at ¶ 7; Ex. 5 [Bylaws of the Monastery]; *see also* Keller at ¶ 1; Ex. 1 [Deposition testimony of Father Panteleimon at 88:16 - 90:1, 91:5-15].

13. The Monastery disputes that Monastery's four translations that are the subject matter of the Defendant's Motion belong to ROCOR and not to the Monastery. *See* Pachomius at ¶¶ 8-12; Ex. Nos. 6–10 [Certificates of Registration]; ¶¶ 36-42.

14. The Monastery disputes that the abbot Archimandrite Panteleimon and Heiromonk Isaac were relieved of their positions of authority in the Monastery, because the

Monastery disputes that anyone outside of the Monastery had the right to remove the abbot of the Monastery. *See id.* at ¶¶ 5-7; Ex. Nos. 3-5 [Bylaws of the Monastery] (requiring unanimous vote of the members of the Monastery to remove an abbot).

16. The Monastery disputes that the monks of the Monastery, on December 12, 1986, purported to secede from ROCOR. Pursuant to a unanimous decision of its members, the members of the Monastery ceased commemorating the bishops of ROCOR on December 8, 1986. *See id.* at 33. In other words, the Monastery ceased to be in communion with the bishops of ROCOR and the spiritual affiliation between the Monastery and ROCOR ended. *See id.*

18. The Monastery disputes that the Monastery was under the "jurisdiction" of ROCOR. Although the Monastery adheres to the Orthodox faith, it is independent in its organization and governance and is not owned or governed by ROCOR or any particular church within the Orthodox faith. *See id.* at ¶ 27. At different times since its inception, the Monastery has been spiritually affiliated or in communion with various bishops within the Orthodox faith, including the bishops of ROCOR. *See id.* at ¶ 29. The terms "spiritual affiliation," "ecclesiastical jurisdiction," or "in communion" mean that a monastery concurs with the particular confession of faith of a bishop or group of bishops and enjoys the blessing of the bishops during that time. *See id.* at ¶ 30. Although for a time the Monastery commemorated the bishops of ROCOR, the Monastery was not established at the direction or request of the ROCOR or by any bishop of ROCOR and was never "a ROCOR Monastery." *See id.* at ¶ 35; *see also* Keller at ¶ 1; Ex. 1 [Deposition testimony of Father Panteleimon at 88:16 – 89:5].

20. The Monastery disputes that the Monastery was under investigation and that it "fled" ROCOR. The Monastery ceased commemorating the bishops of ROCOR in 1986. *See*

Pachomius at ¶ 33.  Additionally, the Monastery first registered its copyright in the Psalter Work in 1975.  *See id.* at ¶ 8  Ex. 6 [1975 Registration Certificate for Psalter].

21. The Monastery does not dispute that its Psalter work, St. Isaac work, Pentecostarion work, and Octoëchos work were created by the Monastery prior to December 1986.  However, the Monastery disputes the Defendant's characterization of the relationship between the Monastery and the ROCOR with respect to the Monastery's copyrighted works. The Monastery was never a monastery of ROCOR.  *See* Pachomius at ¶ 35.  The Monastery ceased commemorating the bishops of ROCOR in December of 1986.  *See* Pachomius at ¶¶ 28-35 (explaining the nature of the relationship between the Monastery and the ROCOR).

### The Monastery's Concise Statement of Material Omitted Undisputed Facts

25. The Monastery was founded in 1960 by seven individuals who are adherents to the Eastern Orthodox faith.  *See* Pachomius at ¶ 3; Ex. 1 [Agreement of Association]; ¶ 4; Ex. 2 [Certificate of Incorporation]; and ¶ 28.

26. The Monastery was incorporated in Massachusetts as a non-profit corporation on January 12, 1961.  It has members and officers, but no parent corporation and no stock. *See id.* at ¶¶ 3-7; Ex. Nos. 1–5 [Monastery's Agreement of Association, Monastery's Certificate of Incorporation, and Bylaws of the Monastery].

27. Although the Monastery adheres to the Orthodox faith, it is independent in its organization and governance and is not owned or governed by the ROCOR or any particular church within the Orthodox faith.  *See id.* at ¶ 27.

28. At different times since its inception, the Monastery has been spiritually affiliated or in communion with various bishops within the Orthodox faith, including the bishops of the

ROCOR, bishops the Old Calendar Church in Greece, and the bishops of the Holy Orthodox Church in North America ("HOCNA").  *See id*. at ¶ 29.

29. The terms "spiritual affiliation," "ecclesiastical jurisdiction," or "in communion" mean that the Monastery concurs with the particular confession of faith of a bishop or group of bishops and enjoys the blessing of the bishops during that time.  *See id*. at ¶ 30.

30. The Monastery began its spiritual affiliation with the bishops of the ROCOR in 1965.  *See id*. at ¶ 31.

31. Some time after the Monastery began its spiritual affiliation with the bishops of the ROCOR, as a sign that it was in communion with the ROCOR bishops, the ROCOR gave the Monastery an antimension, which is a cloth signed by a bishop that is kept on an altar table to indicate that the bishop has consecrated the cloth to be served on as an altar.  *See id.* at ¶ 32.

32. Pursuant to a unanimous decision of its members, the members of the Monastery ceased commemorating the bishops of ROCOR on December 8, 1986, and the spiritual affiliation between the Monastery and ROCOR ended.  See *id.* at ¶ 33.

33. After the Monastery ceased commemorating the bishops of ROCOR, ROCOR requested the return of the antimension it had given the Monastery.  The Monastery returned the antimension to ROCOR.  *See id*. at ¶ 34.

34. The Monastery was never "a ROCOR Monastery."  Although for a time the Monastery commemorated the bishops of ROCOR, the Monastery was not established at the direction or request of the ROCOR or by any bishop of ROCOR.  *See id*. at ¶ 35.

35. Since its inception, members of the Monastery have worked on translating certain religious documents from Greek into English, including the four works known as the "Pentecostarion," "the Octoëchos," "the Psalter According to the Seventy," and "the Ascetical

Homilies of Saint Isaac the Syrian" (hereinafter the "Works") which are the subject of Defendant's motion for summary judgment.  *See id*. at ¶ 36.

36. By practice and according to its Bylaws, individual members of the Monastery are precluded from owning property.  *See id.* at ¶ 37.

37. The Monastery's bylaws preclude ownership by any Monastery member of "private or personal property whether real or other."  *See id*. at ¶¶ 5-7; Ex. Nos. 3–5 [Bylaws of the Monastery] at Art. II.

38. In addition, the Monastery's bylaws provide that anything created by a member of the Monastery for the brotherhood is owned by the Monastery.  *See id*. at ¶ 7; Ex. 5 [Bylaws of the Monastery] at Art. II, § 5.

39. The Monastery alone owns all of its property, including title to its residence in Brookline, which it purchased in 1970.  *See id*. at ¶ 38.

40. Individual members of the Monastery participated in the creation of these Works and they performed their work as an obedience and for the benefit of the Monastery.  Pursuant to the custom and practice of the Monastery, and as set forth in the bylaws of the corporation, the Monastery is the sole and exclusive owner of the Works as work for hire. *See id*. at ¶ 39.

41. The certificates of registration from the U.S. Copyright Office for these Works reflect that the works are owned by the Monastery as "works made for hire."  *See id*. at ¶¶ 8-12; Ex. Nos. 6-10 [Certificates of Registration].

42. No bishop of ROCOR requested or commissioned the translation of the Works by the Monastery.  The translations were created on the initiative of the abbot, acting on behalf of the Monastery, as part of the Monastery's ordinary business.  *See id*. at ¶ 40.

43. ROCOR never requested that the Monastery amend its articles of incorporation or bylaws. *See id*. at ¶ 41.

44. The Monastery has remained at all times the sole and exclusive owner of the copyright in the Works.  It has never assigned the Works to anyone, including ROCOR. *See id*. at ¶ 42.

45. The Monastery never intended to create a trust and assign the copyrights in the Works to a trustee to hold in trust for the benefit of ROCOR, nor has any such trust or assignment been established or made by the Monastery. *See id*. at ¶ 43.

46. ROCOR never requested that the Monastery assign any ownership interest in the Monastery's copyrights to ROCOR or to any bishop of ROCOR. *See id*. at ¶ 44.

47. ROCOR has never alleged that the copyrights in the Works were or are held in trust for the benefit of ROCOR.  To the contrary, ROCOR has repeatedly acknowledged the Monastery's ownership of the copyright in the Works by repeatedly seeking the Monastery's permission to reproduce certain portions of the Works in its own publications and agreeing to acknowledge the Monastery's copyright. *See id*. at ¶ 45; see also ¶¶ 13-23; Ex. Nos. 11-21 [Correspondence between ROCOR and the Monastery where ROCOR has acknowledged the Monastery's copyrights in the Works, and seeking the Monastery's permission to use the Works].

48. The "Monastic Statutes" and the "Monastic Regulations" of the ROCOR relied on by the Defendant were never disclosed to the Monastery until these documents were produced by the Defendant in 2008 during this lawsuit, and the Monastery is not and was not bound by the terms of either document. *See id*. at ¶ 46; see also Keller at ¶ 1; Ex. 1 [Deposition testimony of Father Panteleimon at 86:18- 87:21 and 89:6-90:13].

Dated:  November 30, 2009                          /s/ Amy L. Brosius
                                                   Amy L. Brosius (BBO# 656521)
                                                   Mark A. Fischer (BBO# 167100)
                                                   Eric J. Keller (BBO# 670275)
                                                   Fish & Richardson P.C.
                                                   225 Franklin Street
                                                   Boston, MA 02110
                                                   p: (617) 542-5070
                                                   F: (617) 542-8906
                                                   *Attorneys for Plaintiff*
                                                   *Society of the Holy Transfiguration Monastery,*
                                                   *Incorporated*

## CERTIFICATE OF SERVICE

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 30th day of November.

                          /s/ Amy L. Brosius
                          Amy L. Brosius