UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOCIETY OF THE HOLY TRANSFIGURATION MONASTERY, INCORPORATED, | |
| Plaintiff, | |
| v. | Civil action No. 07-12387RGS |
| ARCHBISHOP GREGORY OF DENVER, COLORADO, | |
| Defendant. | |

## [PROPOSED] JOINT STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to the Court's May 17th scheduling order, Plaintiff Society of the Holy Transfiguration Monastery, Incorporated (the "Monastery") submit the following [proposed] joint concise statement of material facts as to which there is no genuine issue to be tried, which incorporates the parties proposed facts, but that are disputed by the other side, with explanation and evidence as to why they are disputed.

Despite the Court's May 17, 2010 order requiring the parties to file a *joint* statement of stipulated facts, and despite the fact that the parties have been diligently working to finalize and file the joint statement today (the deadline the parties agreed upon in their assented-to motion for an extension of time filed on Friday, June 18, 2010 (Dkt. 80)), defendant inexplicably filed its own separate statement of proposed facts with the Court today (see Dkt. 81).

Defendant's unilateral filing was done without prior notice to the Monastery, and was done while the Monastery believed that the parties were still diligently working to complete the

joint statement for filing today.  *See* Supplemental Declaration of Amy L. Brosius (hereinafter Supplemental Brosius at ¶ ___) at ¶ 1.  Up until 5:30 P.M. today, the Monastery was working diligently to resolve all outstanding issues with defendant with respect to the joint statement of facts.  *Id*.

Since the time the parties filed their assented-to motion for an extension of time on Friday June 18, 2010, the parties continued working on the joint statement, exchanging documents and comments on Friday, June 18, over the weekend, and through today in an attempt to finalize the section of joint stipulated facts and sections that include each side's proposed facts in dispute, along with explanation and evidence from the other side as to why these facts are in dispute.  *Id*. at ¶ 3.  Correspondence between the parties bears out these efforts.  *Id*. at ¶ 4.  This process was complicated by the fact that defendant provided the Monastery with its final set of proposed facts – comprising 59 pages - on Friday, June 18, which the Monastery then had to review.  Id. at ¶ 4.

As of 5:30 P.M. today, the Monastery was operating under the assumption that the parties would make a joint filing today.  *Id*. at ¶ 5.  At approximately 5:30 P.M., defendant's counsel called the Monastery's counsel and indicated his belief that he may not have time to complete his comments on the Monastery's suggested changes to defendant's proposed facts.  *Id*.  The Monastery's counsel suggested that the parties continue working so that a joint statement could be filed with the Court as soon as possible tonight.  *Id*.  Instead, at 5:57 P.M., and with no notice prior notice to the Monastery's counsel, defendant filed its own separate proposed facts with the Court.  Dkt. 81, *see also* Supplemental Brosius at ¶ 5.

The document filed by defendant under Dkt. 81 contains only defendant's "proposed" facts, despite the fact that the Monastery had already told defendant which of its proposed facts it

would stipulate to, and which it would dispute. *Id*. at ¶ 6. Furthermore, the document contains none of the Monastery's proposed facts, despite the fact that defendant had the Monastery's facts, together with defendant's comments thereto, and the Monastery's counter-comments, in hand since Friday, June 18, 2010. *Id*. at 4, Exhibit 1.

As a consequence, the Monastery is filing the below document with the Court. It comprises the most recent draft of the joint statement that the parties had exchanged as of 5:30 P.M. today, with minor formatting edits and additions to the Monastery's explanations for why some of defendant's proposed facts are disputed. This proposed joint statement contains (1) the proposed facts the parties have *already* stipulated to; (2) The Monastery's proposed facts with defendant's existent comments as to why they are disputed, and (3) defendant's proposed facts with the Monastery's existent comments as to why they are disputed.

The Monastery is unsure what other submissions might best aid the Court given the present circumstances.

### The Parties' Stipulated Facts

1.     The Monastery published a work entitled Psalter According to the Seventy (the "Psalter Work") in March 1975. (*See* Declaration of Father Pachomius (hereinafter "Pachomius") at ¶ 2.)

2.      The Monastery registered the published version of this Psalter Work with the U.S. Copyright Office in May 1975, and the Copyright Office issued Certificate of Registration No. A 637792 for the work. (*See* Dkt. 56-7 (Certificate of Registration); *see also* Pachomius at ¶¶ 3,4, Exhibit 1[1] (Copy of Registered Work).)

---

[1] Numbered exhibits in this statement refer to exhibits attached to the Declaration of Amy L. Brosius (hereinafter "Brosius"), Declaration of Father Pachomius (hereinafter "Pachomius"), and Father Ephraim (hereinafter "Ephraim"), respectively, all of which are in support of the Monastery's Motion for Summary Judgment.

3.      The Monastery registered the same published version of the Psalter Work with the U.S. Copyright Office again in February 1986, and the Copyright Office issued Certificate of Registration No. TX 1 761 132 for the work.  (*See* Dkt. 1-7 (Certificate of Registration) ; *see also* Pachomius at ¶ 3.)

4.      Members of the Monastery worked on the creation of this Psalter Work.  (See Declaration of Metropolitan Ephraim (hereinafter "Ephraim") at ¶ 4.)

5.      The Monastery published a work entitled A Prayer Book for Orthodox Christians (the "Prayer Book Work") in July 1988. (*See* Pachomius at ¶ 5.)

6.      The Monastery registered the published version of this Prayer Book Work with the U.S. Copyright Office in November 1988, and the Copyright Office issued Certificate of Registration No. TX 2 455 908 for the work.  (*See* Dkt 1-5 (Certificate of Registration), *see also* Pachomius at ¶¶ 6-7, Exhibit 2 (Copy of Registered).)

7.      Members of the Monastery worked on the creation of this Prayer Book Work.  (*See* Ephraim at ¶ 4.)

8.      The Monastery published a work entitled The Great Horologion (the "Horologion Work") in October 1997. (*See* Pachomius, ¶ 8.)

9.      The Monastery registered the published version of this Horologion Work with the U.S. Copyright Office in December 1997, and the Copyright Office issued Registration Certificate No. TX 4-757-802 for the work.. (*See* Dkt. 1-2 (Certificate of Registration), *see also* Pachomius at ¶¶ 9-10, Exhibit 3 (Copy of Registered Work).)

10.     Members of the Monastery worked on the creation of this Horologion Work.  (*See* Ephraim at ¶ 4.)

11.     The Monastery registered the unpublished version of this Pentecostarion Work with the U.S. Copyright Office in June 1986 and the Copyright Office issued Certificate of Registration No. TXu 243 197 for the work. (*See* Dkt. 1-4 (Certificate of Registration), *see also* Pachomius at ¶¶ 12-13, Exhibit 4 (Copy of Registered Work).)

12.     Members of the Monastery worked on the creation of this Pentecostarion Work.  (See Ephraim at ¶ 4.)

13.     The Monastery subsequently published its Pentecostarion Work in 1990.  (*See* Pachomius at ¶¶ 14-15, Exhibit 5 (Copy of Published Work).

14.     The Monastery completed a work entitled Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year (the "Dismissal Hymns Work") in 1980.  (*See* Pachomius at ¶ 16.)

15.      The Monastery registered the unpublished version of its Dismissal Hymns Work with the U.S. Copyright Office in December 1987 and the Copyright Office issued Certificate of Registration No. TXu 309 242 for this work.  (*See* Dkt. 1-3 (Certificate of Registration), *see also* Pachomius at ¶¶ 17-18, Exhibit 6 (Copy of Registered Work).)

16.     Members of the Monastery worked on the creation of this Dismissal Hymns Work.  (See Ephraim at ¶ 4.)

17.     The Monastery completed a work entitled The Octoëchos (the "Octoëchos Work") in 1982.  (*See* Pachomius at ¶ 19.)

18.     The Monastery registered the unpublished version of its Octoëchos Work with the U.S. Copyright Office in June 1986, and the Copyright Office issued Certificate of Registration No. TXu 243 214 for the work. (*See* Dkt. 1-6 (Certificate of Registration), *see also* Pachomius at ¶¶ 20-21,  Exhibit 7 (Copy of Registered Work).)

19.    Members of the Monastery worked on the creation of this Octoëchos Work.  (See Ephraim at ¶ 4.)

20.    Defendant is one of the founders of Dormition Skete, founded in 1979, and Defendant resides on the premises of Dormition Skete immediately outside of Buena Vista, Colorado.  (*See* Dkt. 46-6 at 19:9-20:1 (Copy of AB deposition transcript); see also Dkt. 19-2 at ¶ 3.)

21.    Dormition Skete has a library containing books, and Defendant has access to the books in the Dormition Skete library.  (*See* Dkt. 46-6 at 67:18-68:1, 69:10-71:6 (Copy of AB deposition transcript.)

22.    Defendant is the Registrant of the domain name trueorthodoxy.info (hereinafter the "Website") and Dormition Skete is listed as the Registrant Organization for the domain name. (*See* Dkt. 1-9 (Copy of Whois Record for Trueorthodoxy.info); Dkt. 7-3 at ¶ 8 (Affidavit of Archbishop).)

23.    Defendant admits he bears responsibility for and has authority over the content that appears on the Website.  (*See* Dkt. 7-3 at ¶ 9 (Affidavit of Archbishop Gregory filed in support of Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P.12);  *see also* Dkt. 46-6 at 166:7-169:6 (Deposition of Archbishop Gregory).)

24.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "01_Troparia_Jan.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Declaration of Amy L. Brosius (hereinafter "Brosius") at ¶ 4, Exhibit 1.)

25.    Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "02_Troparia_Feb.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 5, Exhibit 2.)

26.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name 03_Troparia_Mar.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 6, Exhibit 3.)

27.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "04_Troparia_April.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 7, Exhibit 4.)

28.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "05_Troparia_May".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 8, Exhibit 5.)

29.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "06_Troparia_June.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 9, Exhibit 6.)

30.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "07_Troparia_July.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 10, Exhibit 7.)

31.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "08_Troparia_August.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 11, Exhibit 8.)

32.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name 09_Troparia_Sept.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 12, Exhibit 9.)

33.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "10_Troparia_Oct.pdf." (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 13, Exhibit 10.)

34.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "11_Troparia_Nov.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 14, Exhibit 11.)

35.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "12_Troparia_Dec.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 15, Exhibit 12.)

36.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "PENTECOSTARION-DISMISSAL_HYMNS_AND_KONTAKIA.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 16, Exhibit 13.)

37.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "HomePrayerRule-NoJesusPrayer.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 17, Exhibit 14.)

38.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "HomePrayerRule.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 18, Exhibit 15.)

39.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "Akathist-Theotokos.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 19, Exhibit 16.)

40.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "DivineServiceBookForHomeUse.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 20, Exhibit 17.)

41.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "All_Night_Vigil_for_Kliros.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 21, Exhibit 18.)

42.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name  "Octoechos.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 22, Exhibit 19.)

43.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "SupplicatoryCanonToTheotokos.pdf".  (*See* Dkt 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 23, Exhibit 20.)

44.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "PalmSundayBooklet.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 24, Exhibit 21.)

45.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "PaschaBooklet.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 25, Exhibit 22.)

46.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "PentecostBooklet.pdf." (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 26, Exhibit 23.)

47.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "NativityBooklet.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 27, Exhibit 24.)

48.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "All_Night_Vigil_for_Clergy.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 28, Exhibit 25.)

49.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyForClergy-WithDeacon-Hierarchal.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 29, Exhibit 26.)

50.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyForClergy-WithoutDeacon.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 30, Exhibit 27.)

51.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyofStBasil-WithDeacon-Hierarchal.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 31, Exhibit 28.)

52.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyofStBasil-WithoutDeacon.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 32, Exhibit 29.)

53.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "HolyBaptism.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 33, Exhibit 30.)

54.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "Betrothal-HolyMatrimony.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 34, Exhibit 31.)

55.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "PrayersForPurity.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 35, Exhibit 32.)

56.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "AfterCommunionPrayers.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 36, Exhibit 33.)

57.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "TonsureService.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 37, Exhibit 34.)

58.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "MealTimePrayers.pdf ". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 38, Exhibit 35.)

59.     Defendant allowed document to be reproduced onto the Website in or about August 2007 under the file name "SmallBookofNeeds.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (AB deposition transcript); *see also* Brosius at ¶ 39, Exhibit 36.)

60.     Mother Mariam is a member of the board of Dormition Skete and also serves as secretary and vice president of Dormition Skete. (*See* Dkt. 46-6 at 28:2-32:16, 39:23-41:2 (AB deposition transcript), see also Brosius at ¶ 40, Exhibit 37).

61.     Mother Mariam resides at Holy Apostles Covent, in a building adjacent to the Dormition

Skete buildings on land that Dormition Skete owns.  (*See* Dkt. 46-6 at 28:2-32:16, 39:23-41:2

(AB deposition transcript).)

62.     Holy Apostles Convent has a library of books.  (*See id.* at 255:15-25 (AB deposition

transcript).)

63.     Defendant has, on at least one occasion, been allowed to access the Holy Apostles

Convent library.  (*See* id. at 256:1-257:24 (AB deposition transcript).)

64.     Defendant has, on at least one occasion, borrowed books from the Holy Apostles

Convent library.  (*See* id.).

65.     Defendant had a copy of the Monastery's Psalter Work in his possession prior to August

2007.  (*See id*. at 79:10-25, 82:11-21, 86:24-87:8 (AB deposition transcript), *see also* Brosius at

¶ 41, Exhibit 38 (Archbishop Gregory's response to Request for Admission No. 6.)).

66.     English language psalms that were reproduced on the Defendant's Website were taken

from the Monastery's Psalter Work.  During his deposition Defendant testified:

> Q.   Okay.  And apart from the 50th Psalm
> that's been our example of the last few minutes, are
> there other psalms or con -- portions of the HTM
> Psalter that also appear on your website?
> A.   Probably 142, which is in -- which is in
> the vespers.  Portions of it, yes.
> Q.   Portions of it, of Psalm 142?  Any other
> psalms?
> A.   Psalms, I don't -- I don't know.  But
> wherever there's a psalm in the service, it's our
> practice to use the one of The Psalter that has been
> part of the Russian Church and accepted by our
> bishops.
> Q.   Which is the ATM -- which is the HTM
> version?
> A.   Yes.
> Q.   So in fact, if I see anything on your
> website that is from The Psalter --

A.  You can assume that it's –
Q.  The HTM version of The Psalter?
A.  Right.
Q.  Not someone else's version of The Psalter?
A.  Oh, yes.  It's someone else's, too.

 (*See* Dkt. 46-6 at 97:7-98:5.)

67.     Defendant has a copy of the Monastery's Prayer Book Work in his possession.  (*See* Dkt.

46-6 at 104:15-106:20, 155:11-159:1)).

68.     Defendant has at least two copies of the Monastery's Horologion Work in his possession.

(*See id.* at 73:18-74:5, 101:16-103:4, 147:8-149:22).)

69.     Defendant believes that the two volumes of the Monastery's Horologion Work were

donated to Dormition Skete and believes this may have taken place around the same time that

Mother Mariam, of Holy Apostles Convent, purchased a copy of the Monastery's Menaion work.

(*See id*. at 73:18-74:5, 101:16-103:4, 147:8-149:22).)

70.     Mother Mariam ordered a copy of the Monastery's Menaion work from the Monastery in

September 2005.  (*See* Pachomius at ¶¶ 22-23, Exhibit 8 (2005 invoice.)

71.     Mother Mariam also ordered two copies of the Monastery's Horologion Work in 2005

from St. Nectarios Press, a parish bookstore located in Seattle, WA that distributes the

Monastery's Works, and third party published works. (*See id*. at ¶¶25-26, Exhibit 9 (2005

invoices)).

72.     Defendant has in the past asked Mother Mariam of Holy Apostles Convent to order books

for him from St. Nectarios Press.  (*See* Dkt. 46-6 at 83:21-84:11, 258:23-259:4).)

73.     Defendant has a copy of the published version of the Monastery's Pentecostarion Work

in his possession, and produced a copy of that work to the Monastery during discovery in this

case, in two sections under file names "Pentecostarion Part 1 -- 1990 -- HTM.pdf" and

"Pentecostarion Part 2 -- 1990 -- HTM.pdf".  (*See* Dkt. 46-6 at 73:18-74:5, 87:9-89:7, 98:6-20, 128:18-129:21), *see also* Brosius at ¶ 42, Exhibit 39 (Deposition Exhibits 12 and 13, combined).)

74.     During discovery in this case, Defendant produced documents to the Monastery comprised of English language dismissal hymns separated in twelve sections, one for each month of the year under the file names:

> Menaion January est. 1980.pdf
> Menaion February.pdf
> Menaion March est. 1980.pdf
> Menaion April est. 1980.pdf
> Menaion May est. 1980.pdf
> Menaion June est. 1980.pdf
> Menaion July est. 1980.pdf
> Menaion August est. 1980.pdf
> Menaion September est. 1980.pdf
> Menaion October est. 1980.pdf
> Menaion November est. 1980.pdf
> Menaion December est. 1980.pdf

(*See* Dkt. 46-6 at 119:16-123:19, 124:11-24, 142:8-143:24), *see also* Brosius at ¶ 43, Exhibit 40 (dismissal hymns document produced by Defendant, combined).)

75.     During his deposition, Defendant examined one of these documents ("Menaion April est. 1980.pdf") and testified that this document is an unbound "loose-leaf" document that is typically stored on the chanting stands in the church at Dormition Skete.  (*See* Dkt. 46-6 at 119:16-123:19, 124:11-24, 142:8-143:24)

76.     Defendant acquired this document sometime in the 1980s.  (*See id.* at 119:16-123:19, 124:11-24, 142:8-143:24).)

77.     Some of the handwriting and handwritten edits on this document is that of Metropolitan Ephraim, a member of the Monastery. (*See* Ephraim at ¶ 30.)

78.     Some portions of the document produced by Defendant are "megalynaria" to certain saints. (*See* Brosius at ¶ 43, Exhibit 40 (dismissal hymns document produced by Defendant, combined).)

79.     During discovery in this case, Defendant produced documents to the Monastery comprised of an English language religious text in two parts under the filenames "Octoechos -- part one -- 1980.pdf" and "Octoechos -- part two -- 1980.pdf". (*See* Dkt. 46-6 at 124:25-125:11, 134:24-141:19, *see also* Brosius at ¶ 44, Exhibit 41 (copy of Octoëchos document produced by Defendant, Deposition Exhibits 17 and 18, combined).)

80.     During his deposition, Defendant examined these documents, and testified that they comprise an unbound "loose-leaf" document, which is typically stored on the chanting stands in the church at Dormition Skete. (*See* Dkt. 46-6 at 124:25-125:11, 134:24-141:19.)

81.     Defendant acquired this document sometime in the 1980s. (*See* Dkt. 46-6 at 24:25-125:11, 134:24-141:19.)

82.     Some of the handwriting and handwritten edits on this document is that of Metropolitan Ephraim, a member of the Monastery. (*See* Ephraim at ¶ 31.)

83.     Archbishop Gregory has two copies of the Monastery's twelve volume Menaion work in his possession. These volumes of the Monastery's Menaion work were given to Dormition Skete by Mother Mariam at Holy Apostles Convent. (*See* Dkt. 46-6 at 73:18-74:5, 83:21-84:11, 85:10-86:19, 130:12-131:20, 144:20-145:9, 265:23-267:22).

84.     Mother Mariam purchased one set of the Monastery's Menaion work from the Monastery in September 2005 and two sets in April 2007. (*See* Pachomius at ¶¶ 27-28, Exhibit 10 (September 2005 and April 2007 HTM Invoices)).

85.     In the past, the Monastery has received requests from third parties to reproduce certain portions of its works, and has given permission in some circumstances, and in cases where the Monastery was of the opinion that the Monastery's copyright was not duly recognized, the Monastery requested and obtained acknowledgement of the Monastery's copyright.  Many of these permissions were requested and granted after the Monastery ceased its affiliation with ROCOR in 1986.  (*See* Dkt. 56-12 through 56-19; *see also* Pachomius at ¶ 29-30,  Exhibit 11 (Orthodox Life).)

86.     The Monastery was founded in 1960 by seven individual adherents of the Eastern Orthodox faith.  (*See id*. at ¶ 31.)

87.     The Monastery was not founded by ROCOR, or at ROCOR's request.  (*See id*. at ¶ 32.)

88.     Certain members of the Monastery participated in the creation of the six works that are the subject of the present motion for summary judgment (hereinafter collectively, the "Works"). (*See* Ephraim at ¶ 4.)

89.     Metropolitan Ephraim, for many years, oversaw the Monastery's translation program, in consultation with the Abbot and subject to his blessing.  (*See* Ephraim at ¶¶ 17-18.)

90.     The translation process took place at the Monastery's residence in Brookline, Massachusetts, by those members who were skilled at reading and writing both Greek and English.  (*See id*. at ¶ 19.)

91.     ROCOR did not pay the Monastery to create or publish any of the Works. (*See id*. at ¶ 27.)

92.     Sale of the Monastery's published Works is one of the sources of income for the Monastery. (*See id*. at ¶ 28; *see also* Pachomius at ¶ 43.)

93.     On occasion throughout the years, the Monastery has provided portions of its Works to English-speaking Orthodox parishes.  This was done in part to obtain feedback on the style of the translations so that the Monastery could determine whether style or syntax changes should be made for purposes of creating a linguistically pleasing English-language liturgical text.  (*See* Ephraim at ¶ 29.)

94.     The Plaintiff, Society of the Holy Transfiguration Monastery, Inc. (hereinafter  "HTM") is a religious group whose members are, as of the time of this filing, loosely affiliated with a specific faction of a church organization in Greece.  See Panteleimon Depo. at p. 27:14-17, 203:5-11, 204:7-205:12.

95.     HTM was established in the early 1960's, see Panteleimon Depo. at p. 63:1-7, under authority from the Holy Mountain of Athos in Greece, see Panteleimon Depo. at pp. 8:23-9:1.

96.     HTM has documented that it was founded to "forever perpetuate religious worship, services, sacraments, and teachings in full accordance and unity with the doctrines, ritual, common law, faith, practice, discipline, tradition, and usages of the Orthodox church, and for the carrying out of the said purpose and intent to maintain a monastic organization **which will be adherent and obedient to the orthodox ecclesiastical jurisdiction and authority of the Holy Mountain, Athos**. . . ." See  Panteleimon Depo. at pp. 73:2-74:6 and Deposition Exhibit 87 thereto (emphasis added).  There is no distinction between the HTM corporation and the monastic brotherhood.  See Panteleimon Depo. at p.48:9-16, 57:13-58:11; Isaac Depo. at p. 99:10-23; Ephraim Depo. at p. 75.3-18.

97.     HTM changed affiliation to the Russian Orthodox Church Outside Russia (hereinafter "ROCOR") by the mid-1960's, which meant practically that HTM came under the rule of the

bishops of ROCOR instead of the Bishop of Constantinople (the Ecumenical Patriarch).  <u>See</u>

Panteleimon Depo. at pp. 76:23-77:8,82:17-83:24; Isaac Depo. at pp. 95:15-95:24.

98.     Defendant, Archbishop Gregory is a former member of HTM.  Archbishop Gregory

received blessing from ROCOR to leave HTM in order to form a small monastic skete.  <u>See</u>

Panteleimon Depo. at p. 84:12-19.

99.     In 1979, Archbishop Gregory began building Dormition Skete in an austere and isolated

location in the Rocky Mountains Colorado, 9,000 feet above sea level.  Dormition Skete is

dedicated to the painting of traditional Byzantine Orthodox icons for churches and for private

use.  Archbishop Gregory has continued the same work for more than thirty years. <u>See</u> Affidavit

of Archbishop Gregory ¶¶ 1-4.

100.     HTM objected to Archbishop Gregory founding an independent and separate monastery,

but was required to accept Archbishop Gregory leaving HTM "because we recognize[d] the

Orthodox hierarchy."  <u>See</u> Panteleimon Depo. at pp. 84:20-87:10.

101.     All of the works now alleged by HTM to have been infringed are claimed by HTM to be

unique translations of preexisting public domain works originally authored in foreign languages;

i.e., derivative works.  <u>See</u> Panteleimon Depo. at p. 283:20-284:7.  <u>See also</u> Gregory Affidavit ¶

13.

102.     Archbishop Gregory contributed to the preparation of many of the derivative works in

which HTM now claims copyright, by authoring icon drawings that are included in the literary

works in dispute.  <u>See, e.g.</u>, Panteleimon Depo. at pp. 108:24-119:11.

103.     Archbishop Gregory has never been compensated for any of his icon work that HTM has

used in their publications.  <u>See</u> Isaac Depo. at pp. 61:20-62:9, Panteleimon Depo. at pp. 169:19-

170:20.

104.     Archbishop Gregory has never been compensated for any of his icon paintings used by HTM, or for any painted icons made available for sale by HTM over the past several decades. See Isaac Depo. at pp. 61:20-62:9, Panteleimon Depo. at pp. 169:19-170:20.

105.     Archbishop Gregory's painted icon works constitute at least 6% of the total number of distinct icons that HTM offers for sale to obtain income.  See Panteleimon Depo. at pp. 127:12-130:2, 134:7-12, 174:21-175:12.

106.     The current abbot of HTM, see Isaac Depo. at p. 9:19-21, admitted that the sales by HTM of icons painted by Archbishop Gregory result in "about 30 percent of the icons that have been sold by [HTM] over 30 years." See Isaac Depo. at pp. 61:20-62:3.

107.     Archbishop Gregory has never charged fees related to any of the material that was posted on his website which HTM now alleges was infringing.  See Gregory Affidavit ¶ 6.

108.     HTM claims that its copyrighted literary works have been infringed by the use of limited portions of material from the literary works that Archbishop Gregory included for a short time on his website.  That website, www.trueorthodoxy.info, went up on February 8th of 2005. See Peter Depo. at p. 70:12-13; Doc. 12-2, Aff. Pachomius at 3, ¶12.  Apart from the St. Isaac work left up in error (which was posted to the site sometime in 2005), see Peter Depo. at p. 69:1-70:24, the alleged infringed material was posted to Archbishop Gregory's website in August 2007.  See Peter Depo. at p 159:23-160:21.  Approximately five months later, on January 9, 2008, HTM provided notice to the Defendant of the alleged infringement -- by serving him with the Complaint.

109.     When the Complaint was served, Archbishop Gregory promptly removed what he understood at that time to be any allegedly infringing material from his website.  See Isaac Depo.

at p. 30:10-16 and 37:5-8; Gregory Depo. at p. 189:3-12; Peter Depo. at pp. 124:17-125:1, 160:22-161:18.

110.     Metropolitan Hilarion of the Russian Orthodox Church Outside of Russia ("ROCOR") was born on January 6, 1948, in Spirit River, Canada, to parents who had immigrated to Canada in 1929 from the village of Obenizha in Volyhn, Ukraine.  In 1967, when Metropolitan Hilarion was 19 years old, he entered a ROCOR seminary -- the Holy Trinity Theological Seminary in Jordanville, New York.  On graduating from the Seminary in 1972, Metropolitan Hilarion entered the ROCOR Holy Trinity Monastery as a novice.  Thereafter, Metropolitan Hilarion was tonsured a rassaphore monk in 1974, ordained a hierodeacon in 1975, and ordained a hieromonk in 1976.  Also in 1976, Metropolitan Hilarion received a Master's degree in Slavic studies and Russian literature from Syracuse University, and Metropolitan Hilarion was working simultaneously as editor of the English-language version of the magazine Orthodox Life, and as a typesetter for the Holy Trinity Monastery press.  See Affidavit of Metropolitan Hilarion ¶ 2.

111.     On December 10, 1984, His Eminence Metropolitan Philaret (Voznesensky, +1985) and nine other bishops officiated Metropolitan Hilarion's consecration to the episcopacy.  As Bishop of Manhattan, Metropolitan Hilarion was also responsible for the parishes of Pennsylvania. Additionally, Metropolitan Hilarion was appointed the Deputy Secretary of the Synod of Bishops by the Council of Bishops.  In 1995, Metropolitan Hilarion was given the title Bishop of Washington, and thereafter Metropolitan Hilarion was elevated to the rank of archbishop and appointed Ruling Bishop of the Diocese of Sydney, Australia and New Zealand.  See Hilarion Affidavit ¶ 3.

112.     In 2003, Metropolitan Hilarion was awarded the right to wear the diamond cross.  During the Council of Bishops of the Russian Orthodox Church Outside of Russia in 2006, Metropolitan

Hilarion was appointed First Deputy President of the Synod of Bishops. In 2008, following the repose of His Eminence Metropolitan Laurus, Metropolitan Hilarion was elected First Hierarch of the Russian Orthodox Church Outside of Russia and Metropolitan of Eastern America and New York, a post Metropolitan Hilarion has filled while continuing to be Ruling Bishop of the Diocese of Australia and New Zealand. See Hilarion Affidavit ¶ 4.

113.    Over the years, Metropolitan Hilarion has held a position of responsibility in the administrative center of the ROCOR, and as a result Metropolitan Hilarion has been an active participant in main events of ROCOR history. Metropolitan Hilarion is familiar with the history, statutes, regulations, and decrees of the ROCOR, as well as the Canons of the Orthodox Church. See Hilarion Affidavit ¶ 5.

114.    When then monk Gregory left the monastery, HTM was disappointed in him and HTM could no longer produce and sell as many icons as it had before monk Gregory left HTM. See Isaac Depo. at pp. 65:5-66:3.

115.    HTM members continue to hold hard feelings against Archbishop Gregory, see Isaac Depo. at p. 67:9-13, and continue to harbor particular dislike for what is posted on Archbishop Gregory's website about Church matters. See Id. at pp. 151:6-19, 152:20-153:4, 153:17-155:20; and Gregory Depo. at pp. 164:16-165:4. See also Gregory Affidavit ¶¶ 5-8.

116.    Orthodox Christians are governed by a written set of Canons called the "Rudder." See Ephraim Depo. at pp. 20:14-21:1, 21:12-22:5; Panteleimon Depo. at pp. 36:17-24, 41:13-42:2; Pachomius Depo. at pp. 248:18-249:4; and Hilarion Affidavit ¶ 10. See also Isaac Depo. at p. 159.20-24. The Rudder is a collection of the Apostolic Canons, along with the Canons and the decisions of the seven Ecumenical Councils of the Orthodox Church, and local councils that

were ratified by the Ecumenical Councils.  <u>See</u> Panteleimon Depo. at p. 35:3-9 and Hilarion Affidavit ¶ 10.

117.    None of the Canons can be ignored, including the edict that Orthodox Christians are not to sue each other in civil court.  <u>See</u> Hilarion Affidavit ¶ 10; Isaac Depo. at p. 24.14-19; and Panteleimon Depo. at pp. 43:23-44:7 and 53:2-9.  Archbishop Gregory is acknowledged to be a fellow Christian.  <u>See</u> Isaac Depo. at p. 150.21-151:5.

118.    Orthodox Christian <u>*monks*</u> also are governed by  the "Rudder," as acknowledged by the current Abbot of HTM, in the following exchange:

> Q.  Even so, there are many canons in The Rudder that address monastic life, correct?
> A.  Correct.
>             MR. KELLER:  Objection.
> Q.  And those canons instruct the orthodox on the proper relationship between monasteries, members of a monastery, abbots, and the bishops of the church, correct?
>             MR. KELLER:  Objection.
> A.  Correct.

<u>See</u> Isaac Depo. at pp. 72:17-73:1.

119.    The bishops of the Church are "supposed to uphold the canons of the church," and that includes the bishops having the right and obligation to intervene and correct problems at a monastery.  <u>See</u> Isaac Depo. at pp. 80:23-81:19.  Prior to the Decree (from the mid-1960s until 1987), HTM was under the jurisdiction of ROCOR.  <u>See</u> Hilarion Affidavit ¶ 9.  Members of HTM were aware that the written law of the Rudder governed the conduct and actions of the HTM brotherhood before coming under the rule of the ROCOR bishops.  <u>See</u> Panteleimon Depo. at pp. 88:16-89:5.

120.    Metropolitan Ephraim, head of the Holy Orthodox Church of North America ("HOCNA") of which HTM is now affiliated, and diocesan bishop for HTM, <u>see</u> Panteleimon at

pp. 202:2-205:12, admits to authority over and responsibility regarding the current goods and property of HTM, see Ephraim at p. 134:11-134:24.

121.    On or about December 28, 2007, HTM filed a Complaint against Archbishop Gregory alleging that HTM is the owner of the copyrights of the Works and that the Archbishop infringed HTM's copyrights to such Works.

122.    In his Answer And Affirmative Defenses Archbishop Gregory denied that that HTM owned the copyrights to the Works and denied HTM's claims of copyright infringement. Archbishop Gregory also raised, among others, the affirmative defenses that the dispute is a Church matter and that the Works were works made for hire for the Russian Orthodox Church in America.

123.    Over the years, Archbishop Gregory has obtained material from St. Nectarios Press.  See Gregory Depo. at p. 84:7-11.  Among those materials obtained from St. Nectarios Press is Deposition Exhibit 23, one version of the "Supplicatory Service to the Mother of God."  See Gregory Depo. at pp. 155:6-157:14.  Deposition Exhibit 24 is another version of the same thing, also obtained from St. Nectarios Press.  See Gregory Depo. at pp. 157:15-22.

124.    Archbishop Gregory relies upon the liturgical works, including the "Horologion made by Jordanville, the Russian Monastery."  See Gregory Depo. at pp. 104:3-5, 114:17-115:15. That is true for the Octoëchos, as well.  See Gregory Depo. at pp. 113:10-115:15.  For the "Dismissal and Kontakia and Megalynaria," Archbishop Gregory relies on a work given to him by a translator named Father John Lewis of ROCOR from Florida.  See Gregory Depo. at pp. 119:1-121:21, 122:19-123:19, 124:11-125:11.  Father John Lewis may also have given Archbishop Gregory a copy of the Octoëchos, the Menaion, and other works.  See Gregory Depo. at pp. 135:2-138:22, 140:8-141:19, 142:10-25; Peter Depo. at pp. 42:12-43:21.

125.    Father John Lewis's church is called "Holy Theotokos Monastery." <u>See</u> Gregory Depo. at p. 123:8-12.

126.    Pertaining to the works in dispute in this case, as noted by HTM's Abbot Emeritus, "There is no way that you can translate something from another language into English and not use the same words when it's the same words." <u>See</u> Panteleimon Depo. at p. 108:14-18. <u>See also</u> Panteleimon Depo. at pp. 123:19-125:3, 292:2-293:4.

127.    There are a limited number of ways that the Greek of ancient Church works can be translated into English.  <u>See</u> Panteleimon Depo. at p. 294:3-9.

128.    Common phrases in the Psalter and other alleged works "will always be translated the same."  <u>See</u> Panteleimon Depo. at p. 122:3-9.  These kinds of phrases in the ancient works alleged to have been translated by HTM "Can't be translated differently." <u>Id.</u>  The reason for this state of affairs regarding translation is that "there's just so many ways you can translate something, and there's -- that's good English."  <u>See</u> Panteleimon Depo. at pp. 287:4-288:4.

129.    Except for the St. Isaac work, only a single page of Archbishop Gregory's website provided the links to the material that HTM alleges infringed its copyright from August 2007 to January 2008.  <u>See</u> Pachomius Depo. at p. 47:7-24.  The Plaintiff has not claimed that every document posted on Archbishop Gregory's extensive website is infringing.

130.    All allegedly infringing material was examined during a Fed. R. Civ. P. 30(b)(6) deposition of Monk Pachomius.  <u>See</u> Pachomius Depo. at p. 6:7-16.  Monk Pachomius is the person at HTM who polices copyright issues.  <u>See</u> Panteleimon Depo. at pp. 172:23-173:4; Isaac Depo. at 59:23-60:9.  Monk Pachomius is the person who initiated this present lawsuit of HTM against Archbishop Gregory.  <u>See</u> Isaac Depo. at 167:23-168:10; Pachomius Depo. at p.13:20-24.  The following deposition exhibits referenced immediately below have been authenticated as

true copies of material that was on Archbishop Gregory's website, and were either noted by HTM's representative as being (or not actually being) a subject of this suit. HTM has determined that the following deposition exhibits do _not_ infringe on any HTM copyright:

    a. Depo. Ex. 58, "Exultation of the Precious and Life-Giving Cross." <u>See</u> Pachomius Depo. at p. 61:20-62:10.

    b. Depo. Ex. 59, "Synodicon of the Holy Orthodox Church." <u>See</u> Pachomius Depo. at p. 65:6-15.

    c. Depo. Ex. 70, "Prosphora Recipe." <u>See</u> Pachomius Depo. at pp. 80:16-81:6.

    d. Depo. Ex. 84, "What is the Orthodox Faith?" <u>See</u> Pachomius Depo. at pp. 82:19-83:8.

    e. Depo. Ex. 85, "What is the Orthodox Church?" <u>See</u> Pachomius Depo. at p. 83:9-15.

    f. Depo. Ex. 107, "Exorcisms." <u>See</u> Pachomius Depo. at p. 76.4-16.

    g. Depo. Ex. 109, "Pre-Communion Prayers." <u>See</u> Pachomius Depo. at p. 78:15-23.

131. The posting of the material on the website that HTM alleges infringed its copyright was for nonprofit educational purposes. <u>See</u> Gregory Affidavit ¶¶ 5-6.

132. It was the intention, when the website material was posted, to only post material that did not come from any copyrighted sources. <u>See</u> Depo. Peter at pp. 71:8-14, 105:16-20, 159:23-160:21.

133. Even the prior posting of one of the homilies from the Ascetical Homilies of Saint Isaac was not posted intentionally. <u>See</u> Peter Depo. at pp. 126:8-127:16.

134.    The posting of the material on the website that HTM alleges infringed its copyright was not done directly by the Defendant, and he was unaware of details regarding the actual material being posted on his website.  <u>See</u> Gregory Depo. at pp. 199:21-200:13, 222:4-223:6.

135.    The person who posted the material on Archbishop Gregory's website was not aware of any copyright claim in the material posted, and promptly removed the material as soon as he was notified of the alleged claims of copyright infringement.  <u>See</u> Peter Depo. at 159:23-161:18.

136.    The use of the Psalter in the material posted on the website is "a small part thereof."  <u>See</u> Peter Depo. at p. 142:16-20.

137.    The current abbot of the Plaintiff, HTM, does not believe any fair use could ever be made of the works in dispute.  <u>See</u> Isaac Depo. at 174:19-175:6.

138.    HTM was not created to make a profit.  <u>See</u> Panteleimon Depo. at p. 173:18-20. <u>See also</u> Ephraim at. p. 88:2-8.


<u>Plaintiff's Proposed Facts, Disputed By Defendant</u>

1.    The Horologion Work also contains original material, namely, text composed by Monastery members including Metropolitan Ephraim, which was not translated from a source text.  (See Ephraim at ¶ 8.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is conclusory in that the material referenced is not identified.  Until the material is identified with specificity, it is not possible to examine it and determine the validity or invalidity of the statement made.

2.    At the time of its translation by HTM, there was no other existing English translation of the Dismissal Hymns, with the exception of the hymns for the great feasts.  (See Ephraim at ¶ 11.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is    incorrect and disputed.

All the different services are available and considered common property of the Church.  See

Gregory Depo. at p. 119:16-121:21, 213:1-9; Peter Depo. at pp. 42:12-43:21.  See also Gregory

Affidavit ¶ 15.

3.      The Dismissal Hymns Work also contains original material, namely, text composed by

Monastery members including Metropolitan Ephraim, which was not translated from a source

text.  (See Ephraim at ¶ 12.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is conclusory in that the

material referenced is not identified.  Until the material is identified with specificity, it is not

possible to examine it and determine the validity or invalidity of the statement made.

4.      At the time of its translation by HTM, there was no other existing English translation of

the Octoëchos weekday services. (See Ephraim at ¶ 14.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is    incorrect and disputed.

All the different services are available and considered common property of the Church.  See

Gregory Depo. at p. 119:16-121:21, 213:1-9; Peter Depo. at pp. 42:12-43:21.  See also Gregory

Affidavit ¶ 15.

5.      English language psalms that were reproduced on the Defendant's Website were taken

from the Monastery's Psalter Work.  During his deposition Defendant testified:

> Q.   Okay.  And apart from the 50th Psalm
> that's been our example of the last few minutes, are
> there other psalms or con -- portions of the HTM
> Psalter that also appear on your website?
> A.   Probably 142, which is in -- which is in
> the vespers.  Portions of it, yes.
> Q.   Portions of it, of Psalm 142?  Any other
> psalms?
> A.   Psalms, I don't -- I don't know.  But
> wherever there's a psalm in the service, it's our

practice to use the one of The Psalter that has been part of the Russian Church and accepted by our bishops.

> Q.  Which is the ATM -- which is the HTM version?
> A.  Yes.
> Q.  So in fact, if I see anything on your website that is from The Psalter --
> A.  You can assume that it's –
> Q.  The HTM version of The Psalter?
> A.  Right.
> Q.  Not someone else's version of The Psalter?
> A.  Oh, yes.  It's someone else's, too.

 (*See* Dkt. 46-6 at 97:7-98:5.)

DEFENDANT OBJECTS TO THIS STATEMENT  at regards the phrase "were taken from."  If changed to "are, in many instances, identical to" then there would not be any objection.  There were pre-existing versions of the various works that HTM alleges are copyrightable, and those pre-existing versions were used by HTM.  See Panteleimon Depo. at p. 298:2-7.  Those pre-existing versions are foundational to the various works that HTM alleges are copyrightable.  See Panteleimon Depo. at pp. 105:24-106:12.

6.      Metropolitan Ephraim was the primary translator of the Monastery's unpublished Dismissal Hymns Work.  (See Ephraim at ¶ 21.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

7.      Some of these megalynaria portions reflect original compositions composed by Metropolitan Ephraim. (See Ephraim at ¶ 21.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is conclusory in that the material referenced is not identified.  Until the material is identified with specificity, it is not possible to examine it and determine the validity or invalidity of the statement made.

8.     Metropolitan Ephraim was one of the primary translators of the Monastery's unpublished Octoëchos Work.  (See Ephraim at ¶ 21.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

9.     The Monastery is a non-profit corporation of Massachusetts with no parent company. (See Pachomius at ¶ 33.)

DEFENDANT OBJECTS TO THIS STATEMENT:  There is no true corporate form – there is not distinction between the corporation and the monastic brotherhood.  See Panteleimon Depo. at p.48:9-16, 57:13-58:11; Isaac Depo. at p. 99:10-23; Ephraim Depo. at p. 75.3-18.

10.    The Monastery is not, nor has it ever been, owned by ROCOR or by any particular church or bishops within the Orthodox faith.  (See Pachomius at ¶ 34.)

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Affidavit of Metropolitan Hilarion, passim.

11.    At different times since its inception, the Monastery has been spiritually affiliated and in communion with various bishops within the Orthodox faith, including at one time with the bishops of ROCOR.  (See Pachomius at ¶ 35.)

DEFENDANT OBJECTS TO THIS STATEMENT:  Objection is primarily to the diminutive use of the word "spiritual." This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Affidavit of Metropolitan Hilarion, passim.

12.    The Monastery began its spiritual affiliation with the bishops of ROCOR in 1965.  (See Pachomius at ¶ 36.)

DEFENDANT OBJECTS TO THIS STATEMENT: Objection is primarily to the diminutive use of the word "spiritual." This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Affidavit of Metropolitan Hilarion, passim.

13.     The Monastery ceased commemorating the bishops of ROCOR, thereby ending its spiritual affiliation, in December 1986. (See Pachomius at ¶ 37.)

DEFENDANT OBJECTS TO THIS STATEMENT: Objection is primarily to the diminutive use of the word "spiritual." This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Affidavit of Metropolitan Hilarion, passim.

14.     Since its inception, the Monastery has worked on translating certain religious texts from Greek into English. (See Pachomius at ¶ 39; Ephraim at ¶ 3.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

15.     Father Ephraim was himself a translator on all of the Works, as well the primary translator for the Monastery's Dismissal Hymns Work. He also created portions of original text for the Dismissal Hymns Work, that is, text that was of his own independent creation, not from translation of a source text. (See Ephraim at ¶ 21.)

DEFENDANT OBJECTS TO THIS STATEMENT: The statement is conclusory in that the material referenced is not identified. Until the material is identified with specificity, it is not possible to examine it and determine the validity or invalidity of the statement made.

16.     Father Ephraim primarily decided what works would be translated by the Monastery, in consultation with the Abbot and subject to his blessing. (See Ephraim at ¶ 18.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

17.     Other members of the Monastery, not involved with the Monastery's translation program, undertook other jobs within the Monastery to ensure the functioning of the Monastery and of the translation program.  (See Ephraim at ¶ 20.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

18.     ROCOR did not decide what works were to be translated by the Monastery.  (See Ephraim at ¶ 22.))

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Affidavit of Metropolitan Hilarion, passim.

19.     ROCOR did not request that certain works be translated by the Monastery. (See Ephraim at ¶ 23.))

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Affidavit of Metropolitan Hilarion, passim.

20.     ROCOR did not oversee the Monastery's translation program. (See Ephraim at ¶ 24.))

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Affidavit of Metropolitan Hilarion, passim.

21.     ROCOR did not perform any of the translation for the Works, and did not contribute any original text to the Works. (See Ephraim at ¶ 25.))

DEFENDANT OBJECTS TO THIS STATEMENT:  Preexisting ROCOR works and efforts were used by HTM.  For example, Abbot Emeritus Panteleimon admits that the HTM work on

the Psalter "had as a starting point Brenton's translation of the Septuagint," see Panteleimon Depo. at p. 106:2-4, and also used the prior works of Father Lazarus Moore and Father Gelsinger, see Panteleimon Depo. at pp. 106:15-108:13.

22. ROCOR did not review or edit the Works, either during creation or prior to publication. (See Ephraim at ¶ 26; see Pachomius at ¶ 51.))

DEFENDANT OBJECTS TO THIS STATEMENT: This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Affidavit of Metropolitan Hilarion, passim.

23. The Monastery has never assigned the copyright in the Works to anyone, including to ROCOR. (See Pachomius at ¶ 44.)

DEFENDANT OBJECTS TO THIS STATEMENT: This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Affidavit of Metropolitan Hilarion, passim.

24. The Monastery never intended to create a trust and assign the copyrights in the Works to a trustee to hold in trust for the benefit of ROCOR, nor has any such trust or assignment been established or made by the Monastery. (See Pachomius at ¶ 45.)

DEFENDANT OBJECTS TO THIS STATEMENT: This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Affidavit of Metropolitan Hilarion, passim.

25. The Monastery is not aware of the ROCOR "Monastic Statutes" and "Monastic Regulations" and "Monastic Decree on Property and Finances" relied on by the Defendant in this lawsuit being shown or given to the Monastery by ROCOR, until they were produced by the Defendant during this lawsuit. (See Pachomius at ¶¶ 48-50 ; Ephraim at ¶¶ 32-34.)

DEFENDANT OBJECTS TO THIS STATEMENT AS WORDED:  The proposition stated is at odds with facts.  See, e.g.,  Affidavit of Metropolitan Hilarion, passim.

26.     During the years that Metropolitan Ephraim and others at the Monastery were working on the creation of the Monastery's English translation of the Collected Dismissal Hymns, Metropolitan Ephraim provided a photocopy of the work-in-progress to a select group of our Orthodox parishes, specifically some of our English-speaking Orthodox parishes, including St. Nectarios parish in Seattle, WA.  Until that time, liturgies were primarily conducted in the native language of the congregants, for example, Greek or Russian.  With the rise of more English-speaking congregations, there was a greater need for liturgies to be conducted in English, and a corresponding need for English translations of the important Orthodox liturgical texts.  During this period, Metropolitan Ephraim sent a photocopy of the in-progress Collected Dismissal Hymns Work to a total of approximately 12 parishes.  This was done in part to allow these parishes to conduct services in English using our translations and provide feedback that the Monastery could then use to determine whether style or syntax changes should be made for purposes of creating a linguistically pleasing English-language liturgical text.  Metropolitan Ephraim reviewed the document introduced in this case under Deposition Exhibit 110, and it refers to the Monastery's Collected Dismissal Hymns Work.  It reflects the fact that Metropolitan Ephraim remained in contact with this group with respect to revisions HTM was making to the in-progress translation of the Collected Dismissal Hymns Work and that Metropolitan Ephraim would occasionally send them errata to the translation showing what changes the Monastery had decided to make.  The Monastery did not require the parishes to pay for the copy of the Dismissal Hymns they received from us.  Additionally, Metropolitan Ephraim explicitly informed the recipients that the copy was for their own personal use and not to copy it or

distribute or sell it to anyone else. It is possible that copies were made by these approximately 12 recipients, despite Metropolitan Ephraim's instructions to the contrary, but if so it was done without the Monastery's knowledge or permission. (*See* Supplemental Declaration of Metropolitan Ephraim at ¶ 1.)

DEFENDANT'S OBJECTION:

<u>Defendant's Proposed Facts, Disputed By Plaintiff</u>

1. <mark>The Monastery's 30(b)(6) witness testified that as of the day of the deposition,</mark> HTM <mark>could not</mark> specify "a monetary quantifiable estimate of harms, damages, and losses" that HTM would attribute to the alleged infringement. <u>See</u> Pachomius Depo. at pp. 242:14-243:5.

PLAINTIFF'S COMMENT: Unless this highlighted addition is not made, HTM will dispute the accuracy of this fact.

2. HTM became affiliated with the religious institution ROCOR in the mid-1960's. As a monastery of ROCOR, HTM came under the rule of the bishops of ROCOR at that time and was subject to all the Canons of the Orthodox Church <mark>as well as to all of the statutes, regulations, and decrees of the ROCOR</mark>. <u>See</u> Panteleimon Depo. at p. 234:3-239:5 and Exhibits 95-97 thereto.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion, where the question of whether HTM was subject to the terms of these documents, to the extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

3. In January of 1986, allegations of immoral conduct were brought against certain of the monks of HTM, including the then abbot Archimandrite Panteleimon (Metropoulos) and

Hieromonk Isaac, causing each to be relieved of their positions of authority.  <u>See</u>

Panteleimon Depo. at p. 234:3-239:5 and Exhibits 95-97 thereto.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense.

4.  These events and the actions of the ROCOR in response have been memorialized in

various writings, including a number of resolutions signed by the then First Hierarch of

the ROCOR, Metropolitan Vitaly.  Exhibits 95-97 attached to the Hilarion Affidavit are

authentic copies of resolutions signed by Metropolitan Vitaly, that Metropolitan Hilarion

has personal knowledge that the findings and determinations recited therein are the

findings and determinations of the ROCOR regarding the matters addressed therein.  <u>See</u>

Hilarion Affidavit ¶ 6 and Exhibits 95-97 thereto.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense.

5.  HTM demanded a trial before an ecclesiastical court.  <u>See</u> Panteleimon Depo. at pp.

249:14-250:17.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense

6.  Metropolitan Hilarion is also aware that, after the disciplinary proceedings were instituted

against the monks of HTM, but before the disciplinary proceedings were completed, the

monks of HTM purported to secede from ROCOR on December 12, 1986.  Metropolitan

Hilarion wrote Hieromonk Justin of HTM about these actions on December 25, 1986.  An

authentic copy of that letter is attached to the Hilarion Affidavit as Exhibit 98.[2]

Metropolitan Hilarion is of the opinion that is stated in that letter is true and accurate.

---

[2]      The December 25, 1986 letter from the Synod of Bishops of the ROCOR to Rev.
Hieromonk Justin stated in pertinent part that "*On December 12 of this year His Eminence
received a letter signed by Monk Ephraim, in which he states that by a unanimous vote of the
brotherhood the monastery has seceded from the jurisdiction of the Russian Orthodox Church
Outside of Russia ...*") (emphasis added).

<u>See</u> Hilarion Affidavit ¶ 7 and Panteleimon Depo. at pp. 243:23-244:12 and Exhibit 98 thereto.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense

7.  In or about February 1987 the Synod of Bishops of ROCOR issued a Decree against the monks of HTM (hereinafter referred to as "Decree") finding that HTM's announcement that "... *the brotherhood of Holy Transfiguration Monastery had unanimously decided to quit the jurisdiction of the Russian Orthodox Church Outside of Russia . .* [constituted] *a grave violation of the sacred canons of the Church, as an attempt to avoid the results of the final decision in the case of Archimandrite Panteleimon and his colleagues, which would have been laid down by an ecclesiastical court on the basis of the merits of the accusations lodged against them. It is also a fleeing from their ecclesiastical hierarchy*." As a consequence, the *Decree* pronounced that Archimandrite Panteleimon and his followers had "*initiated a schism*" and engaged in "*illicit, anticanonical actions*" which justified the punishments set forth in the ecclesiastical canons. The *Decree* then went on to (1) confirm the suspensions of Archimandrite Panteleimon and Hieromonk Isaac, and (2) suspending all the clergymen who followed the alleged departure for having engaged in schism, a canonical crime. <u>See</u> Panteleimon Depo. at pp. 254:16 and 258:11 and Exhibits 99 and 100 thereto and Hilarion Affidavit ¶ 8 and Exhibits 99 and 100 thereto.

PLAINTIFF'S NOTE: disputed as immaterial to any claim or defense

8.  Abbot Emeritus Panteleimon, founder of HTM, believes that Archbishop Gregory acted as a whistleblower to church authorities regarding occurrences of sexual molestation and abuse within HTM. <u>See</u> Panteleimon Depo. at pp. 259:17-260:7.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense

9. The Canons of the Orthodox Church forbid an abbot from taking someone in a monastery under vows of obedience to the abbot and having sexual contact with that person. <u>See</u> Isaac Depo. at p. 143:8-14. When the Defendant, then monk Gregory, learned that then Abbot Panteleimon was engaging in sexual activity with monks he "had to report it to the bishops according to the canon law." <u>See</u> Gregory Depo. at pp. 314:22-315:22.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense.

10. An investigation followed, but then Abbot Panteleimon took HTM out of ROCOR before an ecclesiastical court could hold a trial to address the matter. <u>See</u> <u>Id.</u> at pp. 316:21-318:7.

PLAINTFF'S NOTE: Disputed as immaterial to any claim or defense

11. Archbishop Gregory and Sheridan Books are the only parties ever sued by HTM for copyright infringement. <u>See</u> Isaac Depo. at p. 58:6-11.

PLAINTIFF'S NOTE: If this change is not made, HTM will dispute this fact as inaccurate.

12. HTM reports that it will treat others differently than Archbishop Gregory, even if HTM believes that others have engaged in infringement similar to what they allege against Archbishop Gregory, because HTM'S response to perceived infringement "depends on the person." <u>See</u> Isaac Depo. at p. 56:18-22.

PLAINTIFF'S NOTE: Disputed as inaccurate, where this portion of deposition testimony discusses HTM's response to acts not actors

13. HTM would maintain this present action against Defendant Archbishop Gregory even if it were shown that the infringement that HTM alleges was done innocently. <u>See</u> Isaac Depo. at p. 170:1-13. For other individuals, HTM has allowed the use of its works "*without royalties*, as long as they give acknowledgment that it's [HTM's] copyright, that

[HTM] translated; [HTM's] the translators." See Panteleimon Depo. at pp. 172:23-173:4.
The current Abbot of HTM believes that "Archbishop Gregory thinks he's he king of the
world." See Isaac Depo. at pp. 172:23-173:4.

PLAINTIFF'S NOTE: If this change is not made, HTM will dispute this fact as inaccurate

14. Among the Canons of the Rudder, is the following Apostolic Canon:

> Let the bishop have the care of all the goods of the Church and let him administer
> them as under the inspection of God. But he must not alienate any of them or
> give the things which belong to God to his own relations. If they be poor let him
> relieve them as poor but let him not under that pretence sell the goods of the
> Church.

See Hilarion Affidavit ¶ 11. In like fashion, part of another Apostolic Canon states "We ordain
that the bishop have authority over the goods of the Church." These and many other Canons of
the Rudder firmly establish that all of the possessions and property of a monastery (and indeed
all church property) are owned by the ruling bishop (or bishops) for the sake of the Orthodox
Church. See Hilarion Affidavit ¶ 11. See also Gregory Depo. at pp. 304:24-305:18, 306:14-
306:20.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion of this proposed

fact, where the question of whether HTM was subject to the terms of this documents, to the

extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not

a factual conclusion.

In addition to the Rudder, ROCOR monasteries are governed and bound by the Statutes for
Monasteries of the Russian Orthodox Church Outside Russia. An authentic copy of those
statutes is attached to and labeled Exhibit 82 to the Hilarion Affidavit. As noted on that
exhibit, these statutes were in existence and adopted by the Synod of Bishops of the ROCOR

on November 12, 1959.  ==As a ROCOR monastery, HTM was bound by those statutes.==  <u>See</u>

Hilarion Affidavit ¶ 12.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion, where the question

of whether HTM was subject to the terms of these documents, to the extent Defendant alleges

they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

15. As set forth in the Statutes for Monasteries of the Russian Orthodox Church Outside

Russia, as a ROCOR monastery HTM was under the canonical supervision and

jurisdiction of the ROCOR Synod of Bishops (Section 5), was established with the

blessing of the Ruling Bishop of that area of the country, was to always be in the

jurisdiction of the Synod of Bishops of the ROCOR (Section 6), and when HTM left the

jurisdiction of the ROCOR, its possessions and property were to be handed over to the

diocese subject to the Synod of Bishops of ROCOR (Section 16).  <u>See</u> Hilarion Affidavit

¶ 13.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, where the question

of whether HTM was subject to the terms of these documents, to the extent Defendant alleges

they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

16. Additionally, ROCOR monasteries in particular are governed and bound by the

Regulations of the Russian Orthodox Church Outside Russia (hereinafter referred to as

"Monastic Regulations").  An authentic copy of those regulations is attached to the

Hilarion Affidavit and labeled Exhibit 91 to the Hilarion Affidavit.[3]  As noted on that

---

[3]        The Regulations of the Russian Orthodox Church Outside Russia (hereinafter referred to
as "Monastic Regulations") provide that:
     a.        All organs of Church administration must subject their acts to scrutiny and control
        according to the prescribed chain of authority (Reg. 5 and 6);

exhibit, these regulations were in existence since the mid-1950s and adopted in their

current form by the Synod of Bishops of the ROCOR in 1964. ==As a ROCOR monastery,==

==HTM was bound by those regulations.== See Hilarion Affidavit ¶ 14.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion, where the

question of whether HTM was subject to the terms of these documents, to the extent

Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a

factual conclusion.

17. As set forth in the Regulations of the Russian Orthodox Church Outside Russia, as a

ROCOR monastery, HTM had to subject their acts to scrutiny and control according to

the prescribed chain of authority, and the ROCOR Synod of Bishops had specific

jurisdiction over the publishing of books by HTM, over translations and publications,

over matters concerning church property in the monastery, and income for the

maintenance of the Synod was to be generated from, among other things, a percentage

from the sale of spiritual literature. Also, as set forth in the regulations, the First Hierarch

always has the right to administer monasteries directly subject to him, and the Diocesan

Bishop had the authority to administer and dispose of monastic property and to supervise

---

b.    the ROCOR Synod of Bishops has specific jurisdiction over the publishing of books (Reg. 29.J);

c.    the Synod has jurisdiction over translations and publications (Reg. 29.K);

d.    the Synod has jurisdiction over matters concerning church property in monasteries (Reg. 29.X);

e.    income for the maintenance of the Synod is to be generated from, among other things, a percentage from the sale of spiritual literature (Reg. 32.H);

f.    the First Hierarch has the right to administer monasteries directly subject to him (Reg. 37.M); and

g.    the Diocesan Bishop has the authority to administer and dispose of monastic property and to supervise all other church property in the diocese (Reg. 47.R).

See Depo. Ex. 91 attached to and referenced by the Hilarion Affidavit.

all other church property in the diocese -- which would include HTM.  See Hilarion

Affidavit ¶ 15.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, where the question

of whether HTM was subject to the terms of these documents, to the extent Defendant alleges

they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

18. Further, by Decree of the Holy Sobor of the Russian Orthodox Church on Church

Property and Finances, it was clearly provided that ecclesiastical institutions holding

property manage it in accordance with ecclesiastical regulations, the decisions of the All-

Russian Church Sobor and the orders of the Supreme Ecclesiastical Authority.  Exhibit

90 to the Hilarion Affidavit which is an authentic copy of that Decree on Church Property

and Finances.  As noted thereon, this Decree has been in effect in the ROCOR since

1918.  See Hilarion Affidavit ¶ 16.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this fact, where the question of whether

HTM was subject to the terms of these documents, to the extent Defendant alleges they

constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

19. Ecclesiastical property or sacred property includes translations of Orthodox teachings,

services, and Scriptures.  Such works belong to the Orthodox Church and not a

monastery.  Any such translations made by members of HTM while within the

jurisdiction of the ROCOR belong to the Orthodox Church and not to HTM or any

members of HTM.  Pursuant to the written Canons, Statutes, and Regulations (all of

which predated and were well known prior to the decision of HTM to join with and come

under the jurisdiction of the ROCOR in the mid-1960s), it was well known and accepted

that any such works were being made for the benefit of the Orthodox Church and

belonged to the Orthodox Church. Ownership of all such translations was by the diocesan bishop and to be held in trust for the Orthodox Church as a whole. See Hilarion Affidavit ¶ 17 and Panteleimon Depo. pp. 91:5-92:7 and 318:10-319:19 and Plaintiff's Rebuttal Expert Report of Reverend Alexander Rentel attached **hereto as Attachment ##** at p. 15 ("It is traditional for sacred items, for example icons, to be considered to be owned by the church. Thus if a monastery severs its ties with a church, it is traditional for that monastery to relinquish its icons to the church").

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, to the extent it constitutes unsupported opinion, not fact and/or a legal conclusion as to ownership of HTM's property, including its copyrights, by ROCOR.

20. Any works of translation or other spiritual literature prepared by HTM or any member of HTM after HTM joined with and came under the jurisdiction of the ROCOR in the mid-1960s, and prior to 1987, are owned by the ROCOR and not by anyone else. See Hilarion Affidavit ¶ 18. It important for the sacred things of the Church to be provided to the people of the Church, and that includes the works in dispute in this case. See Panteleimon Depo. at p. 114:5-24. The translations are sacred writings. Id. at p. 318:10-17.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, to the extent it constitutes unsupported opinion, not fact and/or a legal conclusion as to ownership of HTM's property, including its copyrights, by ROCOR.

21. A committee existed within ROCOR to approve translations of the literary works of the Orthodox Church. See Panteleimon Depo. at pp. 317:10-318:5. See also Depo. Exhibit 91 referenced in the Hilarion Affidavit, at Reg. 29.j (ROCOR Synod of Bishops has

specific jurisdiction over the publishing of books), Reg. 29.k (the Synod has jurisdiction over translations and publications), Reg. 29.x (the Synod has jurisdiction over matters concerning church property in monasteries).

PLAINTIFF'S NOTE: HTM disputes the highlighted portion as an inaccurate restatement of the testimony of Father Panteleimon, who testified that he would not be surprised if there was a committee within ROCOR that was involved in the work being done by a non-HTM employee, who made translations from the Slavonic language, not Greek.

22. HTM asserts that works in dispute were prepared by members residing in HTM, and were prepared within the scope of each members' obedience to the monastery hierarchy; so, because the works were made by members over whom HTM could direct the manner and means by which the works were prepared, that is one of the reasons that HTM asserts corporate ownership of the disputed works.  See Isaac Depo. at pp. 82:22-84:3, 84:4-15, 112:19-113:19; Pachomius Depo. at pp. 180:17-182:18, 183:17-184:14.

PLAINTIFF'S NOTE: If this change is not made, HTM will dispute this fact as inaccurate restatement of the deponents' testimony

23. From the mid-1960s, and prior to 1987, ROCOR had complete control over the manner and means of preparation of the works by HTM because HTM joined with and came under the jurisdiction of ROCOR, and all of the disputed works were prepared in the course and scope of HTM's (and each of its members') subordinate relationship to ROCOR.  See Hilarion Affidavit ¶¶ 9-18.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate opinion unsupported by any evidence of record

24. The specific reason the disputed works were prepared was to benefit the congregants of ROCOR, and the Orthodox Church as a whole, and as a part of the ROCOR, HTM also paid monthly dues for the upkeep of the Church.  See Panteleimon Depo. at pp. 97:6-19, 98:16-99:13, 149:1-16.  The ROCOR superiors directed their subordinates at HTM to prepare the disputed works and distribute them to the faithful of the Orthodox Church as a whole, and the disputed works are property held by the ROCOR bishops in trust for the Orthodox Church.  See Gregory Depo. at 339:4-17.  See also Panteleimon Depo. at pp. 317:10-318:9; Depo. Exhibit 91 referenced in the Hilarion Affidavit, at Reg. 29.j (ROCOR Synod of Bishops has specific jurisdiction over the publishing of books), Reg. 29.k (the Synod has jurisdiction over translations and publications), Reg. 29.x (the Synod has jurisdiction over matters concerning church property in monasteries).

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate opinion unsupported by any evidence of record and/or legal conclusion to the extent it relies upon documents that Defendant purports constitute a contract that binds HTM

25. HTM attests that sacred things of the Church should be provided to the people of the Church, and that includes the works in dispute in this case.  See Panteleimon Depo. at p. 114:5-24.  The translations are sacred writings.  Id. at p. 318:10-17.  Upon their secession from ROCOR, HTM only returned to ROCOR their antimension, a piece of cloth, signed by the ruling bishop that is opened when performing the Orthodox liturgy.  See Panteleimon Depo. at pp. 93:15-94:24.

PLAINTIFF'S NOTE: HTM disputes the highlighted portions as inaccurate restatements of the deposition transcript

26. <mark>During the time HTM was under investigation</mark> and after HTM left ROCOR, HTM took actions with regard to publication and copyright registration of translations that HTM admits were prepared at the monastery while HTM was under the rule of the ROCOR bishops.

PLAINTIFF'S NOTE: HTM disputes the highlighted portion of this proposed fact as immaterial where it is not relevant to any claim or defense, and moreover as inaccurate where HTM has published and registered the copyright in its works from 1975 up through the present, both during and after it was in communion with ROCOR (*see* exhibits to Complaint).

    a.  *The Great Horologion*

        i.  <u>Formally Published</u> - October 15, 1997 (¶ 9 of the Plaintiff's Complaint)

          PLAINTIFF'S NOTE: HTM's copyright registration reflects the work's "Publication" date; "formal" publication has no meaning, and if this change is not made throughout this section, to su-subpart "i" of subparts "a-g" of this section, HTM will dispute as inaccurate.

        ii.  <u>Copyright Registration</u> – December 3, 1997 (¶ 11 of the Plaintiff's Complaint)

    b.  *Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year*

        i.  <u>Formally Published</u> -  Never (¶ 13 of the Plaintiff's Complaint)

        ii.  <u>Copyright Registration</u> – December 10, 1987 (¶ 15 of the Plaintiff's Complaint)

    c.  *Pentecostarion*

        i.  <u>Formally Published</u> – May 23, 1990 (¶ 17 of the Plaintiff's Complaint)

        ii.  <u>Copyright Registration</u> – June 24, 1986 (¶ 19 of the Plaintiff's Complaint)

    d.  *A Prayer Book for Orthodox Christians*

      i. <u>Formally Published</u> – July 1, 1988 (¶ 21 of the Plaintiff's Complaint)

      ii. <u>Copyright Registration</u> – November 16, 1988 (¶ 23 of the Plaintiff's Complaint)

   e. *Octoёchos*

      i. <u>Formally Published</u> – Never (¶ 25 the Plaintiff's Complaint)

      ii. <u>Copyright Registration</u> – June 24, 1986 (¶ 27 of the Plaintiff's Complaint)

   f. *The Psalter*

      i. <u>Formally Published</u> – May 17, 1974 (¶ 29 of the Plaintiff's Complaint)

      ii. <u>Copyright Registration</u> – ==March 31, 1975 (Dkt. 56-7)==; February 24, 1986 (¶ 31 of the Plaintiff's Complaint)

        PLAINTIFF'S NOTE: HTM registered its Psalter work twice, see Dkt. 56-7; and if the highlighted change is not made HTM will dispute this fact as inaccurate

   g. *The Ascetical Homilies of Saint Isaac the Syriac*

      i. <u>Formally Published</u> – November 25, 1985 (¶ 33 of the Plaintiff's Complaint)

      ii. <u>Copyright Registration</u> – January 3, 1986 (¶ 35 of the Plaintiff's Complaint).

27. As set forth below, as set forth in the Plaintiff's Complaint, the dates of publication and/or copyright registration show that the following works were created at HTM after HTM came under ROCOR jurisdiction and prior to the monks' purported December 1986 secession from ROCOR:

PLAINTIFF'S NOTE: PLAINTIFF'S NOTE: HTM's copyright registration reflects the work's "Publication" date; "formal" publication has no meaning, and if this change is not made

throughout this section, to su-subpart "i" of subparts "a-g" of this section, HTM will dispute as inaccurate.

.

    a.  *Pentecostarion* – created prior to copyright being registered on <u>June 24, 1986</u> (¶ 19 of the Plaintiff's Complaint);

    b.  *Octoëchos* – created prior to copyright being registered on <u>June 24, 1986</u> (¶ 27 of the Plaintiff's Complaint);

    c.  *The Psalter* -  created prior to being published on <u>May 17, 1974</u> (¶ 29 of the Plaintiff's Complaint); and

    d.  *The Ascetical Homilies of Saint Isaac the Syriac* – created prior to being published on <u>November 25, 1985</u> (¶ 33 of the Plaintiff's Complaint).

28. Additionally (aside from the admissions of HTM in the complaint), testimony and other evidence shows that almost all of the alleged works were prepared in substantial form while HTM was a monastery of ROCOR and – for some of the works – prior to 1978. Indeed publication by distribution occurred during this time period, as well.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the remainder of this section, below, to the extent that HTM's copyright registration reflects the works' "Creation" year and "prepared" has no meaning, and to the extent the proposed facts are inaccurate and not supported by any evidence of record, and to the extent they purport to offer a legal conclusion that certain actions resulted in a "publication" of HTM's works under 17 U.S.C. (or in defendant's lexicon they were "published by distribution"), they are inappropriate as proposed facts.

    a.  *The Great Horologion*

i. <u>Prepared</u> – Prior to informal distribution prior to 1987.

ii.       <u>Published by Distribution</u> – ***<u>Prior to 1987</u>***.  <u>See</u> Isaac Depo. at pp. 125:23-127:10, 127:11-21; Panteleimon Depo. at pp. 155:1-157:13.

a. *Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year*

    i. <u>Prepared</u> – Before 1975, before distribution.  <u>See</u> Pachomius Depo. at pp. 205:20-206:7.  <u>See also</u> Depo. Ex. 110.  <u>See also</u> Pachomius Depo. at pp. 202:21-203:10, 204:16-19 (authenticating Metropolitan Ephraim's handwriting when he was a monk at HTM.)

    ii.       <u>Published by Distribution</u> - Sent out to "Friends in Christ" ***<u>before 1975</u>***.  <u>See</u> Pachomius Depo. at pp. 205:20-206:7.  <u>See also</u> Depo. Ex. 110. And continuing "up until the mid '80s."  <u>See</u> Panteleimon Depo. at p. 149:6-16.

b. *Pentecostarion*

    i. <u>Prepared</u> – Before 1975, before distribution.  <u>See</u> Pachomius Depo. at pp. 205:20-206:7.  <u>See also</u> Depo. Ex. 110.  <u>See also</u> Pachomius Depo. at pp. 202:21-203:10, 204:16-19 (authenticating Metropolitan Ephraim's handwriting when he was a monk  at HTM.)  <u>See also</u> Depo. Ex. 12 at p. 10 (e.g., "Since then, copies of that draft translation of the Pentecostarion have been in circulation.")

    ii.       <u>Published by Distribution</u> - Sent out to "Friends in Christ" ***<u>before 1975</u>***.  <u>See</u> Pachomius Depo. at pp. 205:20-206:7.  <u>See also</u> Depo. Ex. 110. <u>See also</u> Depo. Ex. 12 at p. 10 (e.g., "Since then, copies of that draft

translation of the Pentecostarion have been in circulation.")  And continuing "up until the mid '80s."  <u>See</u> Panteleimon Depo. at p. 149:6-16.

    *c.  A Prayer Book for Orthodox Christians*

        i. <u>Prepared</u> – Prior to informal distribution prior to 1987.

        ii.      <u>Published by Distribution</u> – ***<u>Prior to 1987</u>***.  <u>See</u> Isaac Depo. at pp. 125:23-127:10, 127:11-21; Panteleimon Depo. at pp. 155:1-157:13.

    *d.  Octoëchos*

        i. <u>Prepared</u> – Prior to informal distribution prior to 1987.

        ii.      <u>Published by Distribution</u> – ***<u>Prior to 1987</u>***.  <u>See</u> Isaac Depo. at pp. 125:23-127:10, 127:11-21; Panteleimon Depo. at pp. 155:1-157:13.

    *e.  The Psalter*

        i. <u>Prepared</u> - created prior to being formally published on ***<u>May 17, 1974</u>*** (¶ 29 of the Plaintiff's Complaint);

        ii.      <u>Published</u> – At least by formal publication, if not before.

    f.   The Ascetical Homilies of Saint Isaac the Syriac

        i. <u>Prepared</u> - created prior to being formally published on ***<u>November 25, 1985</u>*** (¶ 33 of the Plaintiff's Complaint);

        ii.      <u>Published by Distribution</u> - At least by formal publication, if not before.

29. The works prepared before 1978 (while HTM was under the rule of the ROCOR bishops) that HTM claims have been infringed by the material posted on Archbishop Gregory's website are:  *Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year* (before 1975), *Pentecostarion* (before 1975), and *The Psalter* (before 1975).

PLAINTIFF'S NOTE: HTM disputes this proposed fact as inaccurate where there is no

evidence offered to support a creation date of these works that differs from what is indicated

on the HTM copyright registration certificates

30. Over the years, St. Nectarios Press has published and distributed material to the public in

which HTM is now claiming copyright -- and St. Nectarios Press has done so without

putting a copyright notice on those works.  <u>See</u> Isaac Depo. at pp. 121:10-123:24.  <u>See</u>

<u>also, e.g.</u>, Depo. Exs. 23 and 24.  St. Nectarios Press published these works that were

prepared by HTM with HTM's blessing.  <u>See</u> Panteleimon Depo. at pp. 159:23-161:6.  In

one such publication distributed without any copyright notice, Abbot Emeritus of HTM

wrote:

> With great spiritual joy we present this translation of the Small
> Supplicatory Canon (Paraclesis) to the Mother of God, prepared
> from the original Greek by the fathers of Holy Transfiguration
> Monastery in Boston.
>     Praying that this contribution will enable more to chant this
> most edifying and soul-profiting service in the English language,
> both in common and private devotions during the Fifteen-day fast
> for the Dormition of the Holy Mother of God in August, and "in
> every tribulation, and in sorrow of soul," **_we piously submit this_**
> **_translation to the godly Orthodox Christians_** and ask for their
> prayers.
>
>                             Priestmonk Panteleimon
>                              of the Holy Mountain
>                              and Synodia in Christ

Depo. Ex. 24 at 6th page of the exhibit (emphasis added).

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting a legal conclusion, and to

the extent it is disputed.  *See* Declaration of Eric Keller, Exhibits 1 and 2.

31. St. Nectarios Press has a close working relationship with HTM.  <u>See</u> Gregory Depo. at

pp. 156:18-157:14.  By means of Depo. Ex. 23 and 24, it appears that (at a minimum) the

following Psalms have passed into the public domain: **Psalm 50** (<u>see</u> Depo. Ex. 23 at 11th page, hand-numbered "9"; <u>see also</u> Depo. Ex. 24 at 12th page, with bottom-of-page number "5"); **verse 1 of Psalm 104** (<u>see</u> Depo. Ex. 23 at 5th page, hand-numbered "3"; <u>see also</u> Depo. Ex. 24 at 11th page, with bottom-of-page number "4"); **verses 10 and 22 of Psalm 117** (<u>see</u> Depo. Ex. 23 at 5th page, hand-numbered "3"; <u>see also</u> Depo. Ex. 24 at 11th page, with bottom-of-page number "4"); **Psalm 142** (<u>see</u> Depo. Ex. 23 at 4th page, hand-numbered "2"; <u>see also</u> Depo. Ex. 24 at 10th page, with bottom-of-page number "3").

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting a legal conclusion, and to the extent it is disputed. *See* Declaration of Eric Keller, Exhibits 1 and 2.

32. Other publications distributed by St. Nectarios press likewise placed translations of HTM into the public domain. <u>See, e.g.</u>, **Attachment ## hereto**, "The Service of Small Compline and the Ahathist Hymn."

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting a legal conclusion

33. Apart from distribution of HTM material into the public domain by St. Nectarios Press, the various services of the Orthodox Church have been shared amongst Orthodox clergy for years. All the different services are available and considered common property of the Church. <u>See</u> Gregory Depo. at p. 213:1-9; Peter Depo. at pp. 42:12-43:21.

PLAINTIFF'S NOTE: HTM disputes this fact as constituting a legal conclusion, and unsupported opinion

34. As pertains to the disputed Works that are the subject of this lawsuit, the Horologion, the Octoëchos, the Dismissal Hymns, the Prayer Book, and the Pentecostarion were all sent out for people to make use of in their churches prior to any publication. <u>See</u> Isaac Depo.

at p. 127:11-21.  See also Id. at pp. 125:23-127:10; Panteleimon Depo. at pp. 155:1-157:13.

PLAINTIFF'S NOTE: HTM disputes this fact as constituting a legal conclusion to the extent it purports to conclude that HTM published its works before it published its works.

35. HTM admits that The Collected Dismissal Hymns, deposition exhibits 33, 34, and 36 through 46 the troparia (dismissal hymns and kontakia), that HTM claims as copyrightable works, were distributed as early as 1974 into the public domain.  See Pachomius Depo. at pp. 205:20-206:7; Panteleimon Depo. at p. 149:1-5.  See also Depo. Ex. 110.  These materials were distributed without any copyright notice.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate to the extent it misstates deposition testimony, and as constituting a legal conclusion to the extent it purports to conclude that any of HTM's works are in the public domain

36. HTM has allowed what they allege to be their works to be published in the New Jordanville Prayer Book.  See Pachomius Depo. at pp. 226:9-227:13.  The New Jordanville Prayer Book is the successor to Jordanville's Old Prayer Book – which is in the public domain. See Gregory Affidavit ¶ 12.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate restatement of deposition testimony, and as legal conclusion to the extent it purports to state as fact that by licensing its works, or by allowing its works to appear in conjunction with other material that may be in the public domain, that HTM has therefore put its own works into the public domain

37. The Pentecostarion was distributed in the public domain in the same fashion as the troparia (dismissal hymns and kontakia).  See  Depo. Ex. 12 at p. 10 (e.g., "Since then,

copies of that draft translation of the Pentecostarion have been in circulation.")  <u>See also</u> Panteleimon Depo. at 146:22-149:5, 153:2-154:8.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate to the extent it misstates deposition testimony, and as constituting a legal conclusion to the extent it purports to conclude that any of HTM's works are in the public domain

38. Many religious materials have been circulated among the Orthodox clergy for years – none of which bear a copyright notice – and which became source material for the Archbishop Gregory's website and HTM allegations of copyright infringement.  <u>See, e.g.</u>, Gregory Depo. at pp. 119:16-121:21.  <u>See also</u> Gregory Affidavit ¶ 15.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate and unsupported by any documentary evidence of record, as unsupported opinion, and as constituting a legal conclusion to the extent it purports to conclude that any of HTM's works are in the public domain, due to unauthorized distribution or infringement by others not under HTM's control.

39. HTM does not claim copyright in common phrases.  <u>See</u> Panteleimon Depo. at pp. 295:11-296:1.

PLAINTIFF'S NOTE: HTM disputes this fact as offering (an inaccurate) legal conclusion as to what HTM's copyright protects

40. There were pre-existing versions of the various works that HTM alleges are copyrightable, and those pre-existing versions were used by HTM.  <u>See</u> Panteleimon Depo. at p. 298:2-7.  Those pre-existing versions are foundational to the various works that HTM alleges are copyrightable.  <u>See</u> Panteleimon Depo. at pp. 105:24-106:12. Abbot Emeritus Panteleimon notes that he was one of four translators of the Psalter work in which HTM claims copyright.  <u>See</u> Panteleimon Depo. at p. 105:10-23.  Abbot

Emeritus Panteleimon admits that the HTM work on the Psalter "had as a starting point Brenton's translation of the Septuagint," <u>see</u> Panteleimon Depo. at p. 106:2-4, and also used the prior works of Father Lazarus Moore and Father Gelsinger, <u>see</u> Panteleimon Depo. at pp. 106:15-108:13.

PLAINTIFF'S NOTE: Disputed as inaccurate restatement of deposition testimony and to the extent it seeks to offer a legal conclusion that HTM's works are derivative works of pre-existing English language works.

41. HTM has not clearly specified what portions of Archbishop Gregory's website material it believes infringe its alleged copyrighted work. Simple comparison of each page of Archbishop Gregory's website material to each page of HTM's alleged copyrighted works would generate at least 7,120,966 comparisons. Even making such comparisons would not yield any certain knowledge of precisely which portions of Archbishop Gregory's website material HTM asserts are an infringement on which specific portions of HTM's allegedly copyrightable work. For example, the Psalter is one alleged work of HTM that resembles the form of Psalms included within material posted on the website. HTM acknowledged that the version of the Psalter which it alleges has been infringed upon is not a novel translation in the same sense as it describes the St. Isaac work as being novel. <u>See</u> Pachomius Depo. at pp. 109:19-110:8. The Psalms included within the disputed material posted on the website are the following:

PLAINTIFF'S NOTE: HTM disputes the highlighted portion of this proposed fact as an inaccurate restatement of deposition testimony, and also disputes this proposed fact to the extent it purports to be a legal conclusion as to originality of HTM's Psalter Work. Additionally, HTM disputes the entire remainder of this paragraph (subparas a-dd) as

immaterial, inaccurate, unsupported by properly authenticated evidentiary material, comprising legal argument and conclusions as to substantial similarity of the defendant's works to HTM's works, unsupported opinion, and at the very least as being inappropriate for a proposed fact document, where HTM has yet to file its Motion for Summary Judgment identifying samples of defendant's infringement, which may or may not reflect any of the quotations included by defendant below.

    a. Psalm 2.  Depo. Ex. 57 at 13 (one verse).  This verse in the website material matches what is claimed by HTM as its copyrightable work "*The Lord said unto Me:  Thou art My Son, this day have I begotten Thee.*"

        i. ***As regards prior works*** the HTM form of the verse (with minor punctuation and capitalization differences) is ***identical to*** the verse as it appears in the 1906 Hapgood Service Book (p. 175 "*The Lord said unto me, Thou art my Son, this day have I begotten thee*"), and in the 1885 English Revised Versions ("*The LORD said unto me, Thou art my son; This day have I begotten thee*").  The HTM form of the verse is ***virtually identical to*** the verse as it appears in the 1535 Coverdale Psalms ("the Lord hath said unto me, Thou art my Son, this day have I begotten thee"), the 1560 Geneva Bible ("the Lord hathe said unto me, Thou art my Sonne: this day have I begotten thee" versus ), the 1611 King James Bible ("the LORD hath said unto me, Thou art my Son; this day have I begotten thee"), the 1752 Douay-Rheims ("The Lord hath said to me:  Thou art my son, this day have I begotten thee"), and the 1851 Brenton translation of

the Septuagint ("the Lord said to me, Thou art my Son, to-day have I begotten thee").

b. Psalm 3.  Depo. Exs. 50 at 53, 51 at 18.  This Psalm in the website material has a one word difference at verse 8 from what is claimed by HTM as its copyrightable work, and (unlike the HTM form) repeats verse 6 at the end of the Psalm.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 3 as it appears at pages 45-46 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u> **Attachment ## hereto.**  Also, **t**he HTM form of the verses is ***virtually identical to*** Psalm 3 as it appears in the 1851 Brenton translation (largely some word ordering and substitution), and even more closely matches the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary).  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 3 as it appears in the 1611 King James (AV), the 1939 Psalter by Oesterley, and what appears on page 18 of the 1906 Hapgood - Service Book and pages 12-13 of the 1936 Masters Orthodox Private Devotions.

c. Psalm 4.  Depo. Ex. 50 at 24.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 4 as it appears at page 192 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright

notice.  See **Attachment ## hereto.**  Also, **t**he HTM form of the verses is ***virtually identical to*** Psalm 4 as it appears in the 1851 Brenton translation (again, word ordering and substitution).  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 4 as it appears in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff, the 1966 Psalter of Archimandrite Lazarus Moore, and what appears on page 148 of the 1906 Hapgood - Service Book.

d.  Psalm 5.  Depo. Ex. 51 at 45.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 5 as it appears at page 81 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  See **Attachment ## hereto.**  Also, **t**he HTM form of the verses is ***very similar to*** Psalm 5 as it appears in the 1851 Brenton translation, and the 1857 translation of the Psalms by Francis Patrick Kenrick.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 5 as it appears in the 1611 King James (AV), the 1752 Douay-Rheims, and the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.

e.  Psalm 6.  Depo. Ex. 50 at 24.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 6 as it appears at page 192 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u>  **Attachment ## hereto.**  Also, **t**he HTM form of the verses is ***very similar to*** Psalm 6 as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick, and the HTM form of the verses also bears ***similarity*** to how the verses appear in the 1535 Coverdale Psalms, with variations very close to the 1966 Psalter of Archimandrite Lazarus Moore. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 6 as it appears in the 1752 Douay-Rheims, and the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.

f. Psalm 8.  Depo. Ex. 54 at 7 and 13 (two verses).  These two verses in the website material match the corresponding portions of what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the two verses (with minor punctuation and capitalization differences) is ***identical to*** the verses as appears in the 1851 Brenton translation, and as the verses appears at page 96 (first few sentences of "Selected Psalm Verses") in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice, <u>see</u>  **Attachment ## hereto**.  Also, apart from the two verses that appeared in the website material, the HTM form of the Psalm as a whole is extremely ***similar to*** Psalm 8 as it appears

in the 1851 Brenton translation, and as that Psalm appears in the 1966 Psalter of Archimandrite Lazarus Moore. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 8 as it appears in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.

g. Psalm 9. Depo. Ex. 57 at 50 (one verse). The one verse in the website material matches the corresponding portion of what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the one verse is ***identical to*** the verse as it appears at page 59 (at "Stichos") in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. <u>See</u> **Attachment ## hereto.** It is also ***very similar*** to how the verse appears at page 30 of the 1906 Hapgood Service Book. <u>Also, apart from the one verse that appeared in the website material</u>, the HTM form of the Psalm as a whole is extremely ***similar to*** Psalm 9 as it appears in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 9 as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick, and the 1966 Psalter of Archimandrite Lazarus Moore.

h. Psalm 12. Depo. Ex. 50 at 25. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 12 as it appears at pages 192-193 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u> **Attachment ## hereto.**  It is bears ***great similarity*** to how Psalm 12 appears in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 12 as it appears in the 1860 Congleton Psalms, at pages 148-149 ("PSALM XIII") of the 1906 Hapgood Service Book.

i. Psalm 18.  Depo. Ex. 57 at 53 (one verse).  The one verse in the website material matches the corresponding portion of what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the one verse is ***identical to*** the verse as it appears at page 98 (first sentence, "Selected Psalm Verses) in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u> **Attachment ## hereto.**  It is also ***virtually identical*** to how the verse appear at pages 181, 248, and 249 of the 1906 Hapgood Service Book.  <u>Also, apart from the one verse that appeared in the website material</u>, the HTM form of the Psalm as a whole is extremely ***similar to*** Psalm 18 as it appears in the 1535 Coverdale Psalms (denominated Psalm 19), the 1851 Brenton translation (also denominated Psalm 19), and the 1966 Psalter of Archimandrite Lazarus Moore.

j. Psalm 19. Depo. Ex. 50 at 51. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 19 as it appears at page 43 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. See **Attachment ## hereto.** And the HTM form of Psalm 19 bears ***great similarity, with many phrases that precisely match*** how Psalm 19 appears in the 1535 Coverdale Psalms (denominated Psalm 20), the 1611 King James (AV, and also denominated Psalm 20), the 1752 Douay-Rheims translation, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff, and the 1966 Psalter of Archimandrite Lazarus Moore.

k. Psalm 20. Depo. Ex. 50 at 51. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 20 as it appears at pages 43-44 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. See **Attachment ## hereto.** And the HTM form of Psalm 20 is ***virtually identical to*** the Psalm as it appears in the 1851 Brenton translation (largely some word ordering and substitution, and denominated there as Psalm 21), as also is the case with the 1857 translation of the Psalms by Francis Patrick Kenrick.

l.  Psalm 22.  Depo. Ex. 108 at 78.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto**.

m.  Psalm 24.  Depo. Ex. 50 at 25.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 24 as it appears at page 193 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  See **Attachment ## hereto.**  Also, **t**he HTM form of the verses is ***very similar to*** the Psalm as it appears (denominated "XXV") in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary).  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 24 as it appears in the 1752 Douay-Rheims, and as the Psalm appears in the 1851 Brenton translation (denominated there as Psalm 25).

n.  Psalm 25.  Depo. Ex. 108 at 92.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. ***As regards prior works***, except for two words difference in the entire Psalm, the HTM form of the verses is ***identical to*** the verse as it appears in

a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto**.

o.  Psalm 26.  Depo. Ex. 69 at 38 (two verses).  These verses in the website material ("*The Lord is my light and my salvation; whom then shall I fear?  The Lord is the strength of my life; of whom then shall I be afraid?*") have two words difference ("salvation" versus HTM's "saviour," and "strength" versus HTM's "defender") from what is claimed by HTM as its copyrightable work.  In contrast to the HTM work, the website material is ***identical to*** the verses as they appear in the 1535 Coverdale Psalms (denominated there as Psalm 27) and at page 282 of the 1906 Hapgood Service Book, and also (except for the word "then") to the verses as they appear in the 1611 King James (AV), the 1885 Revised Version, and at pages 183 and 473 of the 1906 Hapgood Service Book.

   i. ***As regards prior works***, apart from the two verses that appeared in the website material, the HTM form of the Psalm as a whole is ***extremely similar to*** the Psalm (denominated as Psalm 27) as it appears in the 1851 Brenton translation and the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff, and the HTM form also is ***very similar*** to the Psalm as it appears in the 1966 Psalter of Archimandrite Lazarus Moore.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of the Psalm as it appears in the 1752 Douay-Rheims.

p.  Psalm 30.  Depo. Ex. 50 at 27.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. *__As regards prior works__* the HTM form of the verses is *__identical to__* Psalm 30 as it appears at page 193-194 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u> **Attachment ## hereto.**  Also, **t**he HTM form of the verses is *__very similar to__* the Psalm as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick.  And the HTM form *__contains phrases that precisely match__* distinct wording of verses and portions of verses of Psalm 30 as it appears in the 1752 Douay-Rheims, and as the Psalm appears in the 1939 Psalter by Oesterley (denominated there as Psalm 31).

q.  Psalm 31.  Depo. Ex. 65 at 21.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. *__As regards prior works__* the HTM form of the verses is *__identical to__* Psalm 31 as it appears at page 113 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u> **Attachment ## hereto.**  Also, **t**he HTM form of the verses is *__very similar to__* the Psalm as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick.  And the HTM form *__contains phrases that precisely match__* distinct wording of verses and portions of verses of Psalm 31 as it appears in the 1966 Psalter of Archimandrite Lazarus Moore.

r.  Psalm 33.  Depo. Ex. 60 at 88 (two partial verses).  These partial verses in the website material ("I *will bless the Lord at all times" and "shall be deprived of any good thing*") have one words difference – missing "not" as in "shall not be" –

64

from what is claimed by HTM as its copyrightable work. However, this is _**identical to**_ what appears in the 1977 Priest's Service Books -- Vespers, Midnight Service, Matins, and All-night Vigil, and that portion tracks the other material included as part of Depo. Ex. 60.

      i. _**As regards prior works**_, apart from the two partial verses that appeared in the website material, the HTM form of the Psalm as a whole is _**identical to**_ Psalm 33 as it appears at page 188-189 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. See **Attachment ## hereto.** Also, **t**he HTM form of the verses is _**virtually the same**_ as the Psalm as it appears (denominated "XXXIV") in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary), and _**close to**_ what appears in the 1966 Psalter of Archimandrite Lazarus Moore. And the HTM form _**contains phrases that precisely match**_ distinct wording of verses and portions of verses of Psalm 24 as it appears in the 1851 Brenton translation (denominated there as Psalm 34).

s.   Psalm 37. Depo. Exs. 50 at 54, 51 at 18. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. _**As regards prior works**_ the HTM form of the verses is _**identical to**_ Psalm 37 as it appears at page 46 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. <u>See</u> **Attachment ## hereto.** Also, **t**he HTM form of the verses is

_**very similar to**_ the Psalm as it appears (denominated Psalm 38) in the 1851 Brenton translation, and _**shares much with**_ the 1966 Psalter of Archimandrite Lazarus Moore.  And the HTM form _**contains phrases that precisely match**_ distinct wording of verses and portions of verses of Psalm 37 as it appears in the 1752 Douay-Rheims, and as the Psalm appears in the 1857 translation of the Psalms by Francis Patrick Kenrick.

t.  Psalm 50.  Depo. Exs. 47 at 3, 48 at 3, 50 at 35 and 64, 51 at 31, 53 at 6, 54 at 15 (partial of one verse), 57 at 27 (one verse), 61 at 29, 62 at 26, 63 at 30, 64 at 26, 67 at 2.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. _**As regards prior works**_ the HTM form of the verses is _**identical to**_ Psalm 50 as it appears on pages 107 and 200 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  <u>See</u>  **Attachment ## hereto.**  Also, **t**he HTM form of the verses is _**virtually identical to**_ the Psalm as it appears (denominated Psalm 51) in the 1851 Brenton translation, and _**has strong similarities**_ with the 1857 translation of the Psalms by Francis Patrick Kenrick (denominated "LI").  And the HTM form _**contains phrases that precisely match**_ distinct wording of verses and portions of verses of Psalm 50 as it appears in the 1752 Douay-Rheims, the 1611 King James (AV), the 1885 Revised Version, and the 1966 Psalter of Archimandrite Lazarus Moore.

u.  Psalm 62.  Depo. Exs. 50 at 55, 51 at 20.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work; except that – at the

end of the Psalm in the website material – additional material is added that does not appear in the work claimed by HTM, but does appear also in the ROCOR Horologion translated by Rassaphor-monk Laurence.

  i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 62 as it appears at page 46-47 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. <u>See</u> **Attachment ## hereto.** Also, **t**he HTM form of the verses is ***similar to*** the Psalm as it appears (denominated "LXIII") in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary). And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 62 as it appears in the 1752 Douay-Rheims, and as the Psalm appears in the 1851 Brenton translation (denominated there as Psalm 63).

v. Psalm 65. Depo. Ex. 57 at 52 (one verse). The one verse in the website material matches the corresponding portion of what is claimed by HTM as its copyrightable work.

  i. ***As regards prior works*** the HTM form of the one verse is ***identical to*** the verse in Psalm 65 as it appears at page 25 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. <u>See</u> **Attachment ## hereto.** <u>Also, apart from the one verse that appeared in the website material</u>, the HTM form of the

Psalm as a whole is ***identical to*** the verse in Psalm 65 as it appears at page 25 in the ROCOR Horologion translated by Rassaphor-monk Laurence.

w. Psalm 69. Depo. Exs. 50 at 40, 67 at 4. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 69 as it appears on page 28, 123, 191-192, 203 and 212 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. <u>See</u> **Attachment ## hereto.** Also, **t**he HTM form of the verses is ***has strong similarities*** with the Psalm as it appears (denominated Psalm 70) in the 1851 Brenton translation, with the 1857 translation of the Psalms by Francis Patrick Kenrick, and with the 1611 King James (AV). And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 69 as it appears in the 1535 Coverdale Psalms (denominated Psalm 70), and the 1906 Hapgood Service Book at pages 147-148.

x. Psalm 90. Depo. Exs. 50 at 28, 108 at 53. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***very similar to*** Psalm 90 as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice, <u>see</u> **Attachments ## and ## hereto,** and with Psalm 91 as it appears in the 1851 Brenton translation. And the HTM form ***contains phrases that precisely match***

distinct wording of verses and portions of verses of Psalm 90 as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick.

y.  Psalm 92.  Depo. Ex. 108 at 90.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 92 as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto**.

z.  Psalm 100.  Depo. Ex. 51 at 47, 108 at 57.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

   **i.** ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 100 as it appears at page 82 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  See  **Attachment ## hereto.**  The HTM form also is ***very similar to*** Psalm 100 as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick, and to Psalm 101 at it appears in the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 90 as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto.**

aa. Psalm 110.  Depo. Ex. 57 at 50 and 54 (two verses), 108 at 86.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto**.

bb. Psalm 131.  Depo. Ex. 108 at 83.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto**.

cc. Psalm 132.  Depo. Ex. 108 at 88.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

      i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in a work created by David F. Abramtsov and that was published in 1954 without any copyright notice.  See **Attachments ## and ## hereto**.

dd. Psalm 145.  Depo. Exs. 61 at 145, 62 at 111, 63 at 157, 64 at 123.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. *As regards prior works* the HTM form of the verses is ***identical to*** Psalm 145 as it appears on page 125-126 in the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. See **Attachment ## hereto.** Also, **t**he HTM form of the verses is ***has strong similarities*** with the Psalm as it appears in the 1857 translation of the Psalms by Francis Patrick Kenrick. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 145 as it appears in the 1611 King James (AV) (denominated Psalm 46).

42. As can be shown with the Psalter, comparisons can be made between all the other works in which HTM claims copyright and ==preexisting works that have been in the Orthodox Church for some time==. See Depo. Ex. 30; Gregory Depo. at pp. 182:17-183:11.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as opinion unsupported by evidence of record, for example, the impreciseness of defendant's reference to "preexisting works" with no further specificity and no citation to where these alleged preexisting works may be hiding in the record.

43. Apart from the Psalms that were on the website, it is Archbishop Gregory's perception that the other material HTM complains of does not come from HTM sources. See Gregory Depo. at pp. 97:23-98:5, 100:5-101:1, 103.11-24, 104:3-5. A comparison of the works posted on the website that HTM alleges were infringing from August 2007 until removed January 2008, shows that the majority of these works are not at all similar to the alleged works in which HTM claims copyright. See Peter Depo. at 139:4-159:16. The Psalter is an exception. See Gregory Depo. at p. 97:7-98:5.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting unsupported opinion testimony as to "defendant's perception" of events, that is unsupported by any evidence of record, and also as constituting a legal conclusion where it purports to judge the substantial similarity of the accused works to HTM's works.

44. Some of the material on the website complained of by HTM is material that Archbishop Gregory and others compiled from public domain sources. See Depo. Gregory at pp. 204:20-207:6, 210:20-211:5, 211:22-213:9, 213:15-216:13. One such work, "Akathist to the Theotokos," has been a continuing work in progress by Archbishop Gregory for decades. See Depo. Gregory at pp. 205:14-206:15, 216:21-219:17.

PLAINTIFF NOTE: HTM disputes this fact as inaccurate and offering a legal conclusion as to materials that are allegedly in the "public domain", and regarding documents that have not been authenticated and which themselves may constitute infringements of HTM's works.

45. About the time that suit was filed against Archbishop Gregory, HTM represented that the only material alleged to infringe HTM's copyright were: Depo. Exs. 33, 34, 36-57, 60-65, 67, and 71. See Doc. 12-2, Aff. Pachomius at 3-6, ¶¶ 12-16.

PLAINTIFF'S NOTE: Disputed where. Dkt. 12-2 is the prior settlement agreement between the parties.

46. At a deposition taken almost two years after HTM filed suit, HTM added concerns about Depo. Ex. 66, 68, 69, 106, and 108. Previously this material was described as "does not appear to comprise copyrighted material owned by the Monastery." See Doc. 12-2, Aff. Pachomius at 6, ¶ 16.

PLAINTIFF'S NOTE: Disputed as inaccurate where Dkt. 12-2 is the prior settlement agreement between the parties

47. Monk Pachomius authenticated the following deposition exhibits as true copies of material that was on Archbishop Gregory's website, and which HTM claims infringed its copyright. Separately, the person who placed this content on Archbishop Gregory's website, Father Peter, <u>see</u> Peter Depo. at pp. 66:10-68:8, 69:9-70:18, 72:17-19, 73:13-74:23, identified the non-HTM sources the material was taken from to post on Archbishop Gregory's website.

PLAINTIFF'S NOTE, HTM disputes the entirety of subparts a-kk of this proposed facts as inaccurate restatements of the deposition testimony.

    a. Depo. Ex. 33, "January troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

    b. Depo. Ex. 34, "February troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

    c. Depo. Ex. 36, "March troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

    d. Depo. Ex. 37, "April troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter

Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

e.   Depo. Ex. 38, "May troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

f.   Depo. Ex. 39, "June troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

g.   Depo. Ex. 40, "July troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

h.   Depo. Ex. 41, "August troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

i.   Depo. Ex. 42, "September troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Peter Depo. at pp. 61:17-62:10.

j.  Depo. Ex. 43, "October troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Peter Depo. at pp. 61:17-62:10.

k.  Depo. Ex. 44, "November troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Peter Depo. at pp. 61:17-62:10.

l.  Depo. Ex. 45, "December troparia to the saints." <u>See</u> Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Peter Depo. at pp. 61:17-62:10.

m.  Depo. Ex. 46, "Pentecostarion Period." <u>See</u> Pachomius Depo. at p. 157:4-11.  This website material came from Holy Theotokos Monastery.  <u>See</u> Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Peter Depo. at pp. 61:17-62:10.

n.  Depo. Ex. 47, "Home Prayer Rule." <u>See</u> Pachomius Depo. at pp. 223:4-224:9.  This website material comes from services and texts that have been passed throughout the church for years.  <u>See</u> Peter Depo. at pp. 80:19-82:20; Gregory Depo. at pp. 210:20-211:5, 211:22-213:9.

o.  Depo. Ex. 48, "Home Prayer Rule (with Jesus Prayer)." <u>See</u> Pachomius Depo. at pp. 223:4-224:9.  This website material comes from services and texts that have

been passed throughout the church for years.  <u>See</u> Peter Depo. at pp. 80:19-82:20; Gregory Depo. at pp. 210:20-211:5, 211:22-213:9.

p.   Depo. Ex. 49, "Akathist to the Theotokos." <u>See</u> Pachomius Depo. at p. 229:5-229:15.  This material was a work compiled over decades by Archbishop Gregory.  <u>See</u> Peter Depo. at pp. 83:19-84:14.  <u>See also</u> Depo. Gregory at pp. 205:14-206:15, 216:21-219:17.

q.   Depo. Ex. 50, "Divine Service Book for Home Use." <u>See</u> Pachomius Depo. at pp. 217:20-218:17.  This website material was a compilation of various public domain service books in the Orthodox Church.  <u>See</u> Peter Depo. at. pp. 84:17-86:8.

r.   Depo. Ex. 51, "All Night Vigil for Kliros." <u>See</u> Pachomius Depo. at  pp. 229:16-230:8.  The Jordanville Prayer Book contains the equivalent of what might be called an all night vigil book.  <u>See</u> Peter Depo. at. pp. 103:20-104:8.

s.   Depo. Ex. 52, "The Octoëchos." <u>See</u> Pachomius Depo. at p. 50:23-51:5.  The sources for this website material were primarily ancient pages that had been passed around the Orthodox Church for decades.  <u>See</u> Peter Depo. at pp. 58:1-59:11, 59:23-60:6.  It most likely has multiple authors from multiple sources.  <u>See</u> Peter Depo. at pp. 61:17-62:10.

t.   Depo. Ex. 53, "Supplicatory Canon to the Theotokos." <u>See</u> Pachomius Depo. at pp. 58:19-59:5.  The source of this website material was St. Nectarios Press.  <u>See</u> Peter Depo. at pp. 92:13-93:20.  <u>See also</u> Depo. Ex. 23 and 24.

u.  Depo. Ex. 54, "Palm Sunday." <u>See</u> Pachomius Depo. at p. 59:6-60:4.  The source of this website material is unknown.  <u>See</u> Peter Depo. at pp. 93:24-94:13.

v.  Depo. Ex. 55, "Pascha." <u>See</u> Pachomius Depo. at p. 60:7-60:20.  The precise source is unknown.  <u>See</u> Peter Depo. at pp. 148:1-149:1.

w.  Depo. Ex. 56, "Pentecost." <u>See</u> Pachomius Depo. at pp. 60:23-61:5.  The precise source is unknown.  <u>See</u> Peter Depo. at pp. 148:1-149:1.

x.  Depo. Ex. 57, "Nativity." <u>See</u> Pachomius Depo. at p. 61:9-16.  The source of this material was public domain documents that were understood to not be works in which HTM or any other person claimed copyright.  <u>See</u> Peter Depo. at pp. 149:5-13, 159:23-160:21.

y.  Depo. Ex. 60, "All Night Vigil." <u>See</u> Pachomius Depo. at pp. 66:13-67:3.  The original source of this website material was a service book put out by Jordanville Monastery.  <u>See</u> Peter Depo. at pp. 102:4-103:19.

z.  Depo. Ex. 61, "Divine Liturgy of St. John Chrysostom." <u>See</u> Pachomius Depo. at p. 67:7-16.  The source of this website material was a service book put out by Jordanville Monastery.  <u>See</u> Peter Depo. at pp. 106:17-107:2, 107:16-109:7.

aa. Depo. Ex. 62, "Divine Liturgy of St. John Chrysostom (Without a Deacon)." <u>See</u> Pachomius Depo. at pp. 67:21-68:10.  The source of this website material was a service book put out by Jordanville Monastery.  <u>See</u> Peter Depo. at pp. 106:17-107:2, 107:16-109:7.

bb. Depo. Ex. 63, "Divine Liturgy of St. Basil the Great." <u>See</u> Pachomius Depo. at pp. 68:15-69:7.  The source of this website material was a service book put out by Jordanville Monastery and the 1906 Hapgood Service Book.  <u>See</u> Peter Depo. at pp. 111:10-113:2, 114:12-114:23.

cc. Depo. Ex. 64, "Divine Liturgy of St. Basil the Great (Without a Deacon)." <u>See</u> Pachomius Depo. at p. 69:13-23.  The source of this website material was a service book put out by Jordanville Monastery and the 1906 Hapgood Service Book.  <u>See</u> Peter Depo. at pp. 111:10-113:2, 114:12-114:23.

dd. Depo. Ex. 65, "Holy Baptism." <u>See</u> Pachomius Depo. at p. 70:2-11.  The source for this website material was a reworking of the 1906 Hapgood Service Book.  <u>See</u> Peter Depo. at pp. 114:24-115:8.

ee. Depo. Ex. 66, "Betrothal and Holy Matrimony." <u>See</u> Pachomius Depo. at p. 70:14-22.   The source of this material was public domain documents that were understood to not be works in which HTM or any other person claimed copyright.  <u>See</u> Peter Depo. at pp. 151:24-152:11, 159:23-160:21.

ff. Depo. Ex. 67, "Prayers for Purity." <u>See</u> Pachomius Depo. at pp. 77:18-78:1.  The source of this website material was a bound printed book published by Father Anthony Gavalas from Astoria, New York.  <u>See</u> Peter Depo. at. 117:12-118:8.

gg. Depo. Ex. 68, "After Communion Prayers." <u>See</u> Pachomius Depo. at p. 79:12-19.  The source for this website material was the Jordanville prayer book.  <u>See</u> Peter Depo. at 118:23-119:17.

hh. Depo. Ex. 69, "Tonsure Service." <u>See</u> Pachomius Depo. at pp. 79:22-80:9.  The source of this website material was a book published by somebody in England.  <u>See</u> Peter Depo. 120:5-121:6.  HTM has complained about the use of 12 sentences on page 2 of Depo. Ex. 69, two verses of Psalm 27 appearing on page 38.  <u>See</u> Pachomius Depo. at pp. 239:2-241:1.

ii. Depo. Ex. 71, "Homily on Faith, Repentance, Love, and Fear of God by St. Isaac of Syria." <u>See</u> Pachomius Depo. at p. 84:2-8. It is believed that a novice monk obtained this material that was posted to the website from unknown internet sources. <u>See</u> Peter Depo. at p. 69:1-70:24.

jj. Depo. Ex. 106, "Meal Time Prayers." <u>See</u> Pachomius Depo. at pp. 51:13-23, 53:21-56:8. The source of this material was public domain documents that were understood to not be works in which HTM or any other person claimed copyright. <u>See</u> Peter Depo. at pp. 159:23-160:21.

**kk.** Depo. Ex. 108, "Euchologion." <u>See</u> Pachomius Depo. at pp. 72:3-73:9, 73:15-74:2, 75:14-18. This is a work created by David F. Abramtsov and that was published in 1954 without any copyright notice. <u>See</u> **Attachments ## and ## hereto.**

48. An examination of the material posted on the website, compared with what HTM claims are its copyrightable works, does not show any considerable equivalence. <u>See</u> Gregory Affidavit ¶ 17.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as legal conclusion where it purports to conclude whether the accused works are substantially similar to HTM's works.

49. The posting of the material on the website that HTM alleges infringed its copyright was to allow persons to access English language versions of ancient writings that have been in the Orthodox Church for hundreds of years (and in some instances, like the Psalter, extant for thousands of years.) <u>See</u> Gregory Affidavit ¶¶ 13.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as immaterial where it is not relevant to any claim or defense.

50. No great or prominent portions of the website material correspond to works that HTM alleges have been infringed.  See Gregory Affidavit ¶¶ 14.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as immaterial where it is not relevant to any claim or defense, and also as constituting a legal conclusion where it asserts that defendant's works are not substantially similar to HTM's works.

51. For years, the Psalter, Horologion, Vespers, Orthros, Menaion, Triodion, Pentecostarion, Apolytikia, Kontakia, and other hymns and works in which HTM claims copyright (and regarding which HTM has brought this lawsuit against Archbishop Gregory) have been made publicly available free-of-charge on the internet at the following websites:  "The Divine Music Project,"  http://www.stanthonysmonastery.org/music/Index.html; "The Dynamic Horologion & Psalter," http://orthodox.seasidehosting.st/home; and the "Protection of the Mother of God Church," http://www.pomog.org/.  These works are in most instances downloadable as free pdfs or are otherwise printable or electronically storable.  These websites posting the material in which HTM claims copyright state that they are doing so with the permission of HTM.  See also Gregory Affidavit ¶¶ 9-11.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as immaterial where it is not related to any claim or defense, and as constituting (an inaccurate) legal conclusion that copyrighted works are no longer protected by copyright if they are licensed or appear on the Internet.

52. Neither as a whole, nor individually, can HTM specify any "monetary quantifiable estimate of harms, damages, and losses" that HTM would attribute to the alleged infringement.  See Pachomius Depo. at pp. 242:14-243:5.  See also Pachomius Depo. at pp. 118:16-119:4, 121:3-9, 140:7-23, 144:4-12, 144:20-145:3, 145:11-19, 146:4-13, 146:22-147:5, 147:12-17, 147:24-148:7, 148:14-23, 149:8-15, 149:22-150:7, 150:14-22,

158:15-160:6, 167:8-19, 169:11-171:2, 184:15-23, 185:18-186:3, 186:9-188:13, 189:15-191:9, 197:16-198:8.

PLAINTIFF'S NOTE: HTM disputes this fact as immaterial where it is not relevant to any claim or defense, and also as inaccurate where it misstates deposition testimony to exclude the fact that the deponent testified with his familiarity as to damages "as of [the day of the deposition]" and not forever, as defendant's proposed fact suggests

Dated: June 21, 2010            /s/ Amy L. Brosius
                                      Amy L. Brosius (BBO# 656521)
                                      Eric J. Keller (BBO# 670275)
                                      Fish & Richardson P.C.
                                      225 Franklin Street
                                      Boston, MA 02110
                                      p: (617) 542-5070
                                      F: (617) 542-8906
                                      Attorneys for Plaintiff
                                      Society of the Holy Transfiguration
                                      Monastery, Incorporated

# CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on this 21st day of

June.

/s/ Eric J. Keller
Eric J. Keller