SOCIETY OF THE HOLY
TRANSFIGURATION MONASTERY,
INCORPORATED,

        Plaintiff,

v.

ARCHBISHOP GREGORY OF DENVER,
COLORADO,

        Defendant.

Civil action No. 07-12387RGS

---

## CORRECTED JOINT STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to the Court's May 17th scheduling order, Plaintiff Society of the Holy

Transfiguration Monastery, Incorporated (the "Monastery") and Defendant, Archbishop Gregory

("Defendant"), submit the following Corrected Joint Statement of Material Undisputed Facts as

to which there is no genuine issue to be tried. This document is intended to replace the

documents filed at Dkt. 81 and 83.

### The Parties' Stipulated Facts

1.      The Monastery published a work entitled Psalter According to the Seventy (the "Psalter

        Work") in March 1975. (*See* Declaration of Father Pachomius, filed on 6/18/2010, Dkt.

        73 (hereinafter "Pachomius") at ¶ 2.)

2.      The Monastery registered the published version of this Psalter Work with the U.S.

        Copyright Office in May 1975, and the Copyright Office issued Certificate of

Registration No. A 637792 for the work.  (*See* Dkt. 56-7 (Certificate of Registration); *see also* Pachomius at ¶¶ 3-4, Exhibit 1[1] (Copy of Registered Work).)

3.     The Monastery registered the same published version of the Psalter Work with the U.S. Copyright Office again in February 1986, and the Copyright Office issued Certificate of Registration No. TX 1 761 132 for the work.  (*See* Dkt. 1-7 (Certificate of Registration); *see also* Pachomius at ¶ 3.)

4.     Members of the Monastery worked on the creation of this Psalter Work.  (See Declaration of Metropolitan Ephraim, filed on 6/18/2010, Dkt. 74 (hereinafter "Ephraim") at ¶ 4.)

5.      The Monastery published a work entitled A Prayer Book for Orthodox Christians (the "Prayer Book Work") in July 1988. (*See* Pachomius at ¶ 5.)

6.     The Monastery registered the published version of this Prayer Book Work with the U.S. Copyright Office in November 1988, and the Copyright Office issued Certificate of Registration No. TX 2 455 908 for the work.  (*See* Dkt 1-5 (Certificate of Registration), *see also* Pachomius at ¶¶ 6-7, Exhibit 2 (Copy of Registered Work).)

7.     Members of the Monastery worked on the creation of this Prayer Book Work.  (*See* Ephraim at ¶ 4.)

8.     The Monastery published a work entitled The Great Horologion (the "Horologion Work") in October 1997. (*See* Pachomius, ¶ 8.)

9.     The Monastery registered the published version of this Horologion Work with the U.S. Copyright Office in December 1997, and the Copyright Office issued Registration

---

[1]     Numbered exhibits in this statement refer to exhibits attached to Declarations and Affidavits filed with the Court on or after June 17, 2010 and which are referenced by Declarant name.

Certificate No. TX 4-757-802 for the work.. (*See* Dkt. 1-2 (Certificate of Registration), *see also* Pachomius at ¶¶ 9-10, Exhibit 3 (Copy of Registered Work).)

10. Members of the Monastery worked on the creation of this Horologion Work. (*See* Ephraim at ¶ 4.)

11. The Monastery registered the unpublished version of this Pentecostarion Work with the U.S. Copyright Office in June 1986 and the Copyright Office issued Certificate of Registration No. TXu 243 197 for the work. (*See* Dkt. 1-4 (Certificate of Registration), *see also* Pachomius at ¶¶ 12-13, Exhibit 4 (Copy of Registered Work).)

12. Members of the Monastery worked on the creation of this Pentecostarion Work. (See Ephraim at ¶ 4.)

13. The Monastery subsequently published its Pentecostarion Work in 1990. (*See* Pachomius at ¶¶ 14-15, Exhibit 5 (Copy of Published Work).

14. The Monastery completed a work entitled Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year (the "Dismissal Hymns Work") in 1980. (*See* Pachomius at ¶ 16.)

15. The Monastery registered the unpublished version of its Dismissal Hymns Work with the U.S. Copyright Office in December 1987 and the Copyright Office issued Certificate of Registration No. TXu 309 242 for this work. (*See* Dkt. 1-3 (Certificate of Registration), *see also* Pachomius at ¶¶ 17-18, Exhibit 6 (Copy of Registered Work).)

16. Members of the Monastery worked on the creation of this Dismissal Hymns Work. (See Ephraim at ¶ 4.)

17. The Monastery completed a work entitled The Octoëchos (the "Octoëchos Work") in 1982. (*See* Pachomius at ¶ 19.)

18. The Monastery registered the unpublished version of its Octoëchos Work with the U.S. Copyright Office in June 1986, and the Copyright Office issued Certificate of Registration No. TXu 243 214 for the work. (*See* Dkt. 1-6 (Certificate of Registration), *see also* Pachomius at ¶¶ 20-21, Exhibit 7 (Copy of Registered Work).)

19. Members of the Monastery worked on the creation of this Octoëchos Work. (See Ephraim at ¶ 4.)

20. Defendant is one of the founders of Dormition Skete, founded in 1979, and Defendant resides on the premises of Dormition Skete immediately outside of Buena Vista, Colorado. (*See* Dkt. 46-6 at 19:9-20:1 (Archbishop Gregory deposition transcript); *see also* Dkt. 19-2 at ¶ 3.)

21. Dormition Skete has a library containing books, and Defendant has access to the books in the Dormition Skete library. (*See* Dkt. 46-6 at 67:18-68:1, 69:10-71:6 (Archbishop Gregory deposition transcript.)

22. Defendant is the Registrant of the domain name trueorthodoxy.info (hereinafter the "Website") and Dormition Skete is listed as the Registrant Organization for the domain name. (*See* Dkt. 1-9 (Copy of Whois Record for Trueorthodoxy.info); Dkt. 7-3 at ¶ 8 (Affidavit of Archbishop Gregory).)

23. Defendant admits he bears responsibility for and has authority over the content that appears on the Website. (*See* Dkt. 7-3 at ¶ 9 (Affidavit of Archbishop Gregory filed in support of Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P.12); *see also* Dkt. 46-6 at 166:7-169:6 (Deposition of Archbishop Gregory).)

24. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "01_Troparia_Jan.pdf". (*See* Dkt. 46-6 at 166:7- 169:6

(Archbishop Gregory deposition transcript); *see also* Declaration of Amy L. Brosius, filed on 6/17/2010, Dkt. 72 (hereinafter "Brosius") at ¶ 4, Exhibit 1.)

25.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "02_Troparia_Feb.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 5, Exhibit 2.)

26.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name 03_Troparia_Mar.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 6, Exhibit 3.)

27.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "04_Troparia_April.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 7, Exhibit 4.)

28.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "05_Troparia_May". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 8, Exhibit 5.)

29.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "06_Troparia_June.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 9, Exhibit 6.)

30.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "07_Troparia_July.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 10, Exhibit 7.)

31.    Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "08_Troparia_August.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 11, Exhibit 8.)

32.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name 09_Troparia_Sept.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 12, Exhibit 9.)

33.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "10_Troparia_Oct.pdf." (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 13, Exhibit 10.)

34.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "11_Troparia_Nov.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 14, Exhibit 11.)

35.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "12_Troparia_Dec.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 15, Exhibit 12.)

36.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name  "PENTECOSTARION-DISMISSAL_HYMNS_AND_KONTAKIA.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 16, Exhibit 13.)

37.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "HomePrayerRule-NoJesusPrayer.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 17, Exhibit 14.)

38.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name  "HomePrayerRule.pdf".  (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 18, Exhibit 15.)

39. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "Akathist-Theotokos.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 19, Exhibit 16.)

40. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "DivineServiceBookForHomeUse.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 20, Exhibit 17.)

41. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "All_Night_Vigil_for_Kliros.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 21, Exhibit 18.)

42. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "Octoechos.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 22, Exhibit 19.)

43. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "SupplicatoryCanonToTheotokos.pdf". (*See* Dkt 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 23, Exhibit 20.)

44. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "PalmSundayBooklet.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 24, Exhibit 21.)

45. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "PaschaBooklet.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 25, Exhibit 22.)

46.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "PentecostBooklet.pdf." (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 26, Exhibit 23.)

47.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "NativityBooklet.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 27, Exhibit 24.)

48.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "All_Night_Vigil_for_Clergy.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 28, Exhibit 25.)

49.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyForClergy-WithDeacon-Hierarchal.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 29, Exhibit 26.)

50.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyForClergy-WithoutDeacon.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 30, Exhibit 27.)

51.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyofStBasil-WithDeacon-Hierarchal.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 31, Exhibit 28.)

52.     Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "DivineLiturgyofStBasil-WithoutDeacon.pdf". (*See* Dkt. 46-6

at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 32, Exhibit 29.)

53. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "HolyBaptism.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 33, Exhibit 30.)

54. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "Betrothal-HolyMatrimony.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 34, Exhibit 31.)

55. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "PrayersForPurity.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 35, Exhibit 32.)

56. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "AfterCommunionPrayers.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 36, Exhibit 33.)

57. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "TonsureService.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 37, Exhibit 34.)

58. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "MealTimePrayers.pdf ". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 38, Exhibit 35.)

59. Defendant allowed a document to be reproduced onto the Website in or about August 2007 under the file name "SmallBookofNeeds.pdf". (*See* Dkt. 46-6 at 166:7- 169:6 (Archbishop Gregory deposition transcript); *see also* Brosius at ¶ 39, Exhibit 36.)

60. Mother Mariam is a member of the board of Dormition Skete and also serves as secretary and vice president of Dormition Skete. (*See* Dkt. 46-6 at 28:2-32:16, 39:23-41:2 (Archbishop Gregory deposition transcript), *see also* Brosius at ¶ 40, Exhibit 37).

61. Mother Mariam resides at Holy Apostles Covent, in a building adjacent to the Dormition Skete buildings on land that Dormition Skete owns. (*See* Dkt. 46-6 at 28:2-32:16, 39:23-41:2 (Archbishop Gregory deposition transcript).)

62. Holy Apostles Convent has a library of books. (*See id.* at 255:15-25 (Archbishop Gregory deposition transcript).)

63. Defendant has, on at least one occasion, been allowed to access the Holy Apostles Convent library. (*See id*. at 256:1-257:24 (Archbishop Gregory deposition transcript).)

64. Defendant has, on at least one occasion, borrowed books from the Holy Apostles Convent library. (*See id*.).

65. Defendant had a copy of the Monastery's Psalter Work in his possession prior to August 2007. (*See id*. at 79:10-25, 82:11-21, 86:24-87:8 (Archbishop Gregory deposition transcript), *see also* Brosius at ¶ 41, Exhibit 38 (Archbishop Gregory's response to Request for Admission No. 6.)).

66. English language psalms that were reproduced on the Defendant's Website are, in many instances, identical to the Monastery's Psalter Work. During his deposition Defendant testified:

> Q. Okay. And apart from the 50th Psalm that's been our example of the last few minutes, are there other psalms or con -- portions of the HTM Psalter that also appear on your website?
> A. Probably 142, which is in -- which is in the vespers. Portions of it, yes.
> Q. Portions of it, of Psalm 142? Any other

psalms?

A. Psalms, I don't -- I don't know. But wherever there's a psalm in the service, it's our practice to use the one of The Psalter that has been part of the Russian Church and accepted by our bishops.

Q. Which is the ATM -- which is the HTM version?

A. Yes.

Q. So in fact, if I see anything on your website that is from The Psalter --

A. You can assume that it's –

Q. The HTM version of The Psalter?

A. Right.

Q. Not someone else's version of The Psalter?

A. Oh, yes. It's someone else's, too.

(*See* Dkt. 46-6 at 97:7-98:5.)

67. Defendant has a copy of the Monastery's Prayer Book Work in his possession. (*See* Dkt. 46-6 at 104:15-106:20, 155:11-159:1)).

68. Defendant has at least two copies of the Monastery's Horologion Work in his possession. (*See id.* at 73:18-74:5, 101:16-103:4, 147:8-149:22).)

69. Defendant believes that the two volumes of the Monastery's Horologion Work were donated to Dormition Skete and believes this may have taken place around the same time that Mother Mariam, of Holy Apostles Convent, purchased a copy of the Monastery's Menaion work. (*See id.* at 73:18-74:5, 101:16-103:4, 147:8-149:22).)

70. Mother Mariam ordered a copy of the Monastery's Menaion work from the Monastery in September 2005. (*See* Pachomius at ¶¶ 22-23, Exhibit 8 (2005 invoice.)

71. Mother Mariam also ordered two copies of the Monastery's Horologion Work in 2005 from St. Nectarios Press, a parish bookstore located in Seattle, WA that distributes the

Monastery's Works, and third party published works. (*See id*. at ¶¶25-26, Exhibit 9 (2005 invoices)).

72.     Defendant has in the past asked Mother Mariam of Holy Apostles Convent to order books for him from St. Nectarios Press.  (*See* Dkt. 46-6 at 83:21-84:11, 258:23-259:4).)

73.     Defendant has a copy of the published version of the Monastery's Pentecostarion Work in his possession, and produced a copy of that work to the Monastery during discovery in this case, in two sections under file names "Pentecostarion Part 1 -- 1990 -- HTM.pdf" and "Pentecostarion Part 2 -- 1990 -- HTM.pdf".  (*See* Dkt. 46-6 at 73:18-74:5, 87:9-89:7, 98:6-20, 128:18-129:21), *see also* Brosius at ¶ 42, Exhibit 39 (Deposition Exhibits 12 and 13, combined).)

74.     During discovery in this case, Defendant produced documents to the Monastery comprised of English language dismissal hymns separated in twelve sections, one for each month of the year under the file names:

Menaion January est. 1980.pdf
Menaion February.pdf
Menaion March est. 1980.pdf
Menaion April est. 1980.pdf
Menaion May est. 1980.pdf
Menaion June est. 1980.pdf
Menaion July est. 1980.pdf
Menaion August est. 1980.pdf
Menaion September est. 1980.pdf
Menaion October est. 1980.pdf
Menaion November est. 1980.pdf
Menaion December est. 1980.pdf

(*See* Dkt. 46-6 at 119:16-123:19, 124:11-24, 142:8-143:24), *see also* Brosius at ¶ 43, Exhibit 40 (combined dismissal hymns document produced by Defendant).)

75. During his deposition, Defendant examined one of these documents ("Menaion April est. 1980.pdf") and testified that this document is an unbound "loose-leaf" document that is typically stored on the chanting stands in the church at Dormition Skete. (*See* Dkt. 46-6 at 119:16-123:19, 124:11-24, 142:8-143:24; *see also* Brosius at ¶ 43.)

76. Defendant acquired this document sometime in the 1980s. (*See* Dkt. 46-6 at 119:16-123:19, 124:11-24, 142:8-143:24).)

77. Some of the handwriting and handwritten edits on this document is that of Metropolitan Ephraim, a member of the Monastery. (*See* Ephraim at ¶ 30.)

78. Some portions of the document produced by Defendant are "megalynaria" to certain saints. (*See* Brosius at ¶ 43, Exhibit 40.)

79. During discovery in this case, Defendant produced documents to the Monastery comprised of an English language religious text in two parts under the filenames "Octoechos -- part one -- 1980.pdf" and "Octoechos -- part two -- 1980.pdf". (*See* Dkt. 46-6 at 124:25-125:11, 134:24-141:19, *see also* Brosius at ¶ 44, Exhibit 41 (copy of Octoëchos document produced by Defendant, Deposition Exhibits 17 and 18, combined).)

80. During his deposition, Defendant examined these documents, and testified that they comprise an unbound "loose-leaf" document, which is typically stored on the chanting stands in the church at Dormition Skete. (*See* Dkt. 46-6 at 124:25-125:11, 134:24-141:19.)

81. Defendant acquired this document sometime in the 1980s. (*See* Dkt. 46-6 at 24:25-125:11, 134:24-141:19.)

82.     Some of the handwriting and handwritten edits on this document is that of Metropolitan Ephraim, a member of the Monastery. (*See* Ephraim at ¶ 31.)

83.     Archbishop Gregory has two copies of the Monastery's twelve volume Menaion work in his possession.  These volumes of the Monastery's Menaion work were given to Dormition Skete by Mother Mariam at Holy Apostles Convent.  (*See* Dkt. 46-6 at 73:18-74:5, 83:21-84:11, 85:10-86:19, 130:12-131:20, 144:20-145:9, 265:23-267:22).

84.     Mother Mariam purchased one set of the Monastery's Menaion work from the Monastery in September 2005 and two sets in April 2007.  (*See* Pachomius at ¶¶ 27-28, Exhibit 10 (September 2005 and April 2007 HTM Invoices)).

85.     In the past, the Monastery has received requests from third parties to reproduce certain portions of its works, and has given permission in some circumstances, and in cases where the Monastery was of the opinion that the Monastery's copyright was not duly recognized, the Monastery requested and obtained acknowledgment of the Monastery's copyright.  Many of these permissions were requested and granted after the Monastery ceased its affiliation with ROCOR in 1986.  (*See* Dkt. 56-12 through 56-19; *see also* Pachomius at ¶ 29-30,  Exhibit 11 (Orthodox Life).)

86.     The Monastery was founded in 1960 by seven individual adherents of the Eastern Orthodox faith.  (*See* Pachomius at ¶ 31.)

87.     The Monastery was not founded by ROCOR, or at ROCOR's request.  (*See id*. at ¶ 32.)

88.     Certain members of the Monastery participated in the creation of the six works that are the subject of the present motion for summary judgment (hereinafter collectively, the "Works").  (*See* Ephraim at ¶ 4.)

89. Metropolitan Ephraim, for many years, oversaw the Monastery's translation program, in consultation with the Abbot and subject to his blessing. (*See* Ephraim at ¶¶ 17-18.)

90. The translation process took place at the Monastery's residence in Brookline, Massachusetts, by those members who were skilled at reading and writing both Greek and English. (*See id*. at ¶ 19.)

91. ROCOR did not pay the Monastery to create or publish any of the Works. (*See id*. at ¶ 27.)

92. Sale of the Monastery's published Works is one of the sources of income for the Monastery. (*See id*. at ¶ 28; *see also* Pachomius at ¶ 43.)

93. On occasion throughout the years, the Monastery has provided portions of its Works to English-speaking Orthodox parishes. This was done in part to obtain feedback on the style of the translations so that the Monastery could determine whether style or syntax changes should be made for purposes of creating a linguistically pleasing English-language liturgical text. (*See* Ephraim at ¶ 29.)

94. The Plaintiff, Society of the Holy Transfiguration Monastery, Inc. (hereinafter "HTM") is a religious group whose members are, as of the time of this filing, loosely affiliated with a specific faction of a church organization in Greece. See Doc. 78-2, Panteleimon Depo. at p. 27:14-17, 203:5-11, 204:7-205:12.

95. HTM was established in the early 1960's, see Doc. 78-2, Panteleimon Depo. at p. 63:1-7, under authority from the Holy Mountain of Athos in Greece, see Doc. 78-2, Panteleimon Depo. at pp. 8:23-9:1.

96. HTM has documented that it was founded to "forever perpetuate religious worship, services, sacraments, and teachings in full accordance and unity with the doctrines, ritual,

common law, faith, practice, discipline, tradition, and usages of the Orthodox church, and for the carrying out of the said purpose and intent to maintain a monastic organization **which will be adherent and obedient to the orthodox ecclesiastical jurisdiction and authority of the Holy Mountain, Athos**. . . .” <u>See</u> Doc. 78-2, Panteleimon Depo. at pp. 73:2-74:6 and Deposition Exhibit 87 thereto (emphasis added). There is no distinction between the HTM corporation and the monastic brotherhood. <u>See</u> Doc. 78-2, Panteleimon Depo. at p.48:9-16, 57:13-58:11; Doc. 78-4, Isaac Depo. at p. 99:10-23; Doc. 78-3, Ephraim Depo. at p. 75.3-18.

97. HTM changed affiliation to the Russian Orthodox Church Outside Russia (hereinafter “ROCOR”) by the mid-1960’s, which meant practically that HTM came under the rule of the bishops of ROCOR instead of the Bishop of Constantinople (the Ecumenical Patriarch). <u>See</u> Doc. 78-2, Panteleimon Depo. at pp. 76:23-77:8,82:17-83:24; Doc. 78-4, Isaac Depo. at pp. 95:15-95:24.

98. Defendant, Archbishop Gregory is a former member of HTM. Archbishop Gregory received blessing from ROCOR to leave HTM in order to form a small monastic skete. <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 84:12-19.

99. In 1979, Archbishop Gregory began building Dormition Skete in an austere and isolated location in the Rocky Mountains Colorado, 9,000 feet above sea level. Dormition Skete is dedicated to the painting of traditional Byzantine Orthodox icons for churches and for private use. Archbishop Gregory has continued the same work for more than thirty years. <u>See</u> Doc. 76, Affidavit of Archbishop Gregory ¶¶ 1-4.

100. HTM objected to Archbishop Gregory founding an independent and separate monastery, but was required to accept Archbishop Gregory leaving HTM "because we recognize[d] the Orthodox hierarchy." See Doc. 78-2, Panteleimon Depo. at pp. 84:20-87:10.

101. All of the works now alleged by HTM to have been infringed are claimed by HTM to be unique translations of preexisting public domain works originally authored in foreign languages; i.e., derivative works. See Doc. 78-2, Panteleimon Depo. at p. 283:20-284:7. See also Doc. 76, Gregory Affidavit ¶ 13.

102. While at the Monastery, Archbishop Gregory contributed to the preparation of many of the derivative works in which HTM now claims copyright, by authoring icon drawings/paintings that are included in the literary works in dispute. See, e.g., Doc. 78-2, Panteleimon Depo. at pp. 108:24-119:11.

103. Archbishop Gregory has never been compensated for any of his icon work that HTM has used in their publications. See Doc. 78-4, Isaac Depo. at pp. 61:20-62:9, Doc. 78-2, Panteleimon Depo. at pp. 169:19-170:20.

104. Archbishop Gregory has never been compensated for any of his icon paintings used by HTM, or for any painted icons made available for sale by HTM over the past several decades. See Doc. 78-4, Isaac Depo. at pp. 61:20-62:9, Doc. 78-2, Panteleimon Depo. at pp. 169:19-170:20.

105. Archbishop Gregory's painted icon works constitute at least 6% of the total number of distinct icons that HTM offers for sale to obtain income. See Doc. 78-2, Panteleimon Depo. at pp. 127:12-130:2, 134:7-12, 174:21-175:12.

106. The current abbot of HTM, see Doc. 78-4, Isaac Depo. at p. 9:19-21, admitted that the sales by HTM of icons painted by Archbishop Gregory result in "about 30 percent of the

icons that have been sold by [HTM] over 30 years." <u>See</u> Doc. 78-4, Isaac Depo. at pp. 61:20-62:3.

107.    Archbishop Gregory has never charged fees related to any of the material that was posted on his website which HTM now alleges was infringing. <u>See</u> Doc. 76, Gregory Affidavit ¶ 6.

108.    HTM claims that its copyrighted literary works have been infringed by the use of limited portions of material from the literary works that Archbishop Gregory included for a short time on his website. That website, <u>www.trueorthodoxy.info,</u> went up on February 8th of 2005. <u>See</u> Doc. 59-7, Peter Depo. at p. 70:12-13; Doc. 12-2, Aff. Pachomius at 3, ¶12. Apart from the St. Isaac work left up in error (which was posted to the site sometime in 2005), <u>see</u> Doc. 59-7, Peter Depo. at p. 69:1-70:24, the alleged infringed material was posted to Archbishop Gregory's website in August 2007. <u>See</u> Doc. 59-7, Peter Depo. at p 159:23-160:21. Approximately five months later, on January 9, 2008, HTM provided notice to the Defendant of the alleged infringement -- by serving him with the Complaint.

109.    When the Complaint was served, Archbishop Gregory promptly removed what he understood at that time to be any allegedly infringing material from his website. <u>See</u> Doc. 78-4, Isaac Depo. at p. 30:10-16 and 37:5-8; Doc. 59-4, Gregory Depo. at p. 189:3-12; Doc. 59-7, Peter Depo. at pp. 124:17-125:1, 160:22-161:18.

110.    HTM's 30(b)(6) witness testified that as of the day of the deposition, HTM could not specify "a monetary quantifiable estimate of harms, damages, and losses" that HTM would attribute to the alleged infringement. <u>See</u> Doc. 78-5, Pachomius Depo. At pp. 242:14-243:5.

111.    Metropolitan Hilarion of the Russian Orthodox Church Outside of Russia ("ROCOR") was born on January 6, 1948, in Spirit River, Canada, to parents who had immigrated to Canada in 1929 from the village of Obenizha in Volyhn, Ukraine. In 1967, when Metropolitan Hilarion was 19 years old, he entered a ROCOR seminary -- the Holy Trinity Theological Seminary in Jordanville, New York. On graduating from the Seminary in 1972, Metropolitan Hilarion entered the ROCOR Holy Trinity Monastery as a novice. Thereafter, Metropolitan Hilarion was tonsured a rassaphore monk in 1974, ordained a hierodeacon in 1975, and ordained a hieromonk in 1976. Also in 1976, Metropolitan Hilarion received a Master's degree in Slavic studies and Russian literature from Syracuse University, and Metropolitan Hilarion was working simultaneously as editor of the English-language version of the magazine Orthodox Life, and as a typesetter for the Holy Trinity Monastery press. See Doc. 79, Affidavit of Metropolitan Hilarion ¶ 2.

112.    On December 10, 1984, His Eminence Metropolitan Philaret (Voznesensky, +1985) and nine other bishops officiated Metropolitan Hilarion's consecration to the episcopacy. As Bishop of Manhattan, Metropolitan Hilarion was also responsible for the parishes of Pennsylvania. Additionally, Metropolitan Hilarion was appointed the Deputy Secretary of the Synod of Bishops by the Council of Bishops. In 1995, Metropolitan Hilarion was given the title Bishop of Washington, and thereafter Metropolitan Hilarion was elevated to the rank of archbishop and appointed Ruling Bishop of the Diocese of Sydney, Australia and New Zealand. See Doc. 79, Hilarion Affidavit ¶ 3.

113.    In 2003, Metropolitan Hilarion was awarded the right to wear the diamond cross. During the Council of Bishops of the Russian Orthodox Church Outside of Russia in 2006,

Metropolitan Hilarion was appointed First Deputy President of the Synod of Bishops. In 2008, following the repose of His Eminence Metropolitan Laurus, Metropolitan Hilarion was elected First Hierarch of the Russian Orthodox Church Outside of Russia and Metropolitan of Eastern America and New York, a post Metropolitan Hilarion has filled while continuing to be Ruling Bishop of the Diocese of Australia and New Zealand. See Doc. 79, Hilarion Affidavit ¶ 4.

114. Over the years, Metropolitan Hilarion has held a position of responsibility in the administrative center of the ROCOR, and as a result Metropolitan Hilarion has been an active participant in main events of ROCOR history. Metropolitan Hilarion is familiar with the history, statutes, regulations, and decrees of the ROCOR, as well as the Canons of the Orthodox Church. See Doc. 79, Hilarion Affidavit ¶ 5.

115. When then monk Gregory left the monastery, HTM was disappointed in him and HTM could no longer produce and sell as many icons as it had before monk Gregory left HTM. See Doc. 78-4, Isaac Depo. at pp. 65:5-66:3.

116. HTM members continue to hold hard feelings against Archbishop Gregory, see Doc. 78-4, Isaac Depo. at p. 67:9-13, and continue to harbor particular dislike for what is posted on Archbishop Gregory's website about Church matters. See Id. at pp. 151:6-19, 152:20-153:4, 153:17-155:20; and Doc. 59-4, Gregory Depo. at pp. 164:16-165:4. See also Doc. 76, Gregory Affidavit ¶¶ 5-8.

117. Archbishop Gregory and Sheridan Books, his publisher of "The Life of Saint Andrew the Fool-For-Christ of Constantinople" work are the only persons ever sued by HTM for copyright matters. See Doc. 78-4, Isaac Depo. at p. 58:6-11.

118. HTM would maintain this present action against Defendant Archbishop Gregory even if it were shown that the infringement that HTM alleges was done innocently. <u>See</u> Doc. 78-4, Isaac Depo. at p. 170:1-13. For other individuals, HTM has allowed the use of its works "without royalties, as long as they give acknowledgment that its [HTM's] copyright, that [HTM] translated; [HTM's] the translators." <u>See</u> Doc. 78-2, Panteleimon Depo. at pp. 172:23-173:4. The current Abbot of HTM believes that "Archbishop Gregory thinks he's the king of the world." <u>See</u> Doc. 78-4, Isaac Depo. at pp. 172:23-173:4.

119. Orthodox Christians are governed by a written set of Canons called the "Rudder." <u>See</u> Doc. 78-3, Ephraim Depo. at pp. 20:14-21:1, 21:12-22:5; Doc. 78-2, Panteleimon Depo. at pp. 36:17-24, 41:13-42:2; Doc. 78-5, Pachomius Depo. at pp. 248:18-249:4; and Doc. 79, Hilarion Affidavit ¶ 10. <u>See also</u> Doc. 78-4, Isaac Depo. at p. 159.20-24. The Rudder is a collection of the Apostolic Canons, along with the Canons and the decisions of the seven Ecumenical Councils of the Orthodox Church, and local councils that were ratified by the Ecumenical Councils. <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 35:3-9 and Doc. 79, Hilarion Affidavit ¶ 10.

120. None of the Canons can be ignored, including the edict that Orthodox Christians are not to sue each other in civil court. <u>See</u> Doc. 79, Hilarion Affidavit ¶ 10; Doc. 78-4, Isaac Depo. at p. 24.14-19; and Doc. 78-2, Panteleimon Depo. at pp. 43:23-44:7 and 53:2-9. Archbishop Gregory is acknowledged to be a fellow Christian. <u>See</u> Doc. 78-4, Isaac Depo. at p. 150.21-151:5.

121. Orthodox Christian <u>*monks*</u> also are governed by the "Rudder," as acknowledged by the current Abbot of HTM, in the following exchange:

> Q. Even so, there are many canons in The Rudder that
> address monastic life, correct?
> A. Correct.
>     MR. KELLER: Objection.
> Q. And those canons instruct the orthodox on the
> proper relationship between monasteries, members of a
> monastery, abbots, and the bishops of the church, correct?
>     MR. KELLER: Objection.
> A. Correct.

See Doc. 78-4, Isaac Depo. at pp. 72:17-73:1.

122.    The bishops of the Church are "supposed to uphold the canons of the church," and that

includes the bishops having the right and obligation to intervene and correct problems at

a monastery. See Doc. 78-4, Isaac Depo. at pp. 80:23-81:19. Prior to the Decree (from

the mid-1960s until 1987), HTM was under the jurisdiction of ROCOR. See Doc. 79,

Hilarion Affidavit ¶ 9. Members of HTM were aware that the written law of the Rudder

governed the conduct and actions of the HTM brotherhood before coming under the rule

of the ROCOR bishops. See Doc. 78-2, Panteleimon Depo. at pp. 88:16-89:5.

123.    HTM asserts that works in dispute were prepared by members residing in HTM, and were

prepared within the scope of each members' obedience to the monastery hierarchy; so,

because the works were made by members over whom HTM could direct the manner and

means by which the works were prepared, that is one of the reasons that HTM asserts

corporate ownership of the disputed works. See Doc. 78-4, Isaac Depo. at pp. 82:22-

84:3, 84:4-15, 112:19-113:19; Doc. 78-5, Pachomius Depo. at pp. 180:17-182:18,

183:17-184:14.

124.    Metropolitan Ephraim, head of the Holy Orthodox Church of North America

("HOCNA") of which HTM is now affiliated, and diocesan bishop for HTM, see Doc.

78-2, Panteleimon Depo. at pp. 202:2-205:12, admits to authority over and responsibility

regarding the current goods and property of HTM, <u>see</u> Doc. 78-3, Ephraim Depo. at p. 134:11-134:24.

125. On or about December 28, 2007, HTM filed a Complaint against Archbishop Gregory alleging that HTM is the owner of the copyrights of the Works and that the Archbishop infringed HTM's copyrights to such Works.

126. In his Answer And Affirmative Defenses Archbishop Gregory denied that that HTM owned the copyrights to the Works and denied HTM's claims of copyright infringement. Archbishop Gregory also raised, among others, the affirmative defenses that the dispute is a Church matter and that the Works were works made for hire for the Russian Orthodox Church in America.

127. Archbishop Gregory relies upon the liturgical works, including the "Horologion made by Jordanville, the Russian Monastery." <u>See</u> Doc. 59-4, Gregory Depo. at pp. 104:3-5, 114:17-115:15. That is true for the Octoëchos, as well. <u>See</u> Doc. 59-4, Gregory Depo. at pp. 113:10-115:15. For the "Dismissal and Kontakia and Megalynaria," Archbishop Gregory relies on a work given to him by a translator named Father John Lewis of ROCOR from Florida. <u>See</u> Doc. 59-4, Gregory Depo. at pp. 119:1-121:21, 122:19-123:19, 124:11-125:11. Father John Lewis may also have given Archbishop Gregory a copy of the Octoëchos, the Menaion, and other works. <u>See</u> Doc. 59-4, Gregory Depo. at pp. 135:2-138:22, 140:8-141:19, 142:10-25; Doc. 59-7, Peter Depo. at pp. 42:12-43:21.

128. Father John Lewis's church is called "Holy Theotokos Monastery." <u>See</u> Doc. 59-4, Gregory Depo. at p. 123:8-12.

129. Pertaining to the works in dispute in this case, as noted by HTM's Abbot Emeritus, "There is no way that you can translate something from another language into English

and not use the same words when it's the same words." See Doc. 78-2, Panteleimon Depo. at p. 108:14-18. See also Doc. 78-2, Panteleimon Depo. at pp. 123:19-125:3, 292:2-293:4.

130. There are a limited number of ways that the Greek of ancient Church works can be translated into English. See Doc. 78-2, Panteleimon Depo. at p. 294:3-9.

131. Common phrases in the Psalter and other alleged works "will always be translated the same." See Doc. 78-2, Panteleimon Depo. at p. 122:3-9. These kinds of phrases in the ancient works alleged to have been translated by HTM "Can't be translated differently." Id. The reason for this state of affairs regarding translation is that "there's just so many ways you can translate something, and there's -- that's good English." See Doc. 78-2, Panteleimon Depo. at pp. 287:4-288:4.

132. Except for the St. Isaac work, only a single page of Archbishop Gregory's website provided the links to the material that HTM alleges infringed its copyright from August 2007 to January 2008. See Doc. 78-5, Pachomius Depo. at p. 47:7-24. The Plaintiff has not claimed that every document posted on Archbishop Gregory's extensive website is infringing.

133. All allegedly infringing material was examined during a Fed. R. Civ. P. 30(b)(6) deposition of Monk Pachomius. See Doc. 78-5, Pachomius Depo. at p. 6:7-16. Monk Pachomius is the person at HTM who polices copyright issues. See Doc. 78-2, Panteleimon Depo. at pp. 172:23-173:4; Doc. 78-4, Isaac Depo. at 59:23-60:9. Monk Pachomius is the person who initiated this present lawsuit of HTM against Archbishop Gregory. See Doc. 78-4, Isaac Depo. at 167:23-168:10; Doc. 78-5, Pachomius Depo. at p.13:20-24. The following deposition exhibits referenced immediately below have been

authenticated as true copies of material that was on Archbishop Gregory's website, and were either noted by HTM's representative as being (or not actually being) a subject of this suit. HTM has determined that the following deposition exhibits do _not_ infringe on any HTM copyright:

a. Depo. Ex. 58, "Exultation of the Precious and Life-Giving Cross." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 61:20-62:10.

b. Depo. Ex. 59, "Synodicon of the Holy Orthodox Church." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 65:6-15.

c. Depo. Ex. 70, "Prosphora Recipe." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 80:16-81:6.

d. Depo. Ex. 84, "What is the Orthodox Faith?" <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 82:19-83:8.

e. Depo. Ex. 85, "What is the Orthodox Church?" <u>See</u> Doc. 78-5, Pachomius Depo. at p. 83:9-15.

f. Depo. Ex. 107, "Exorcisms." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 76.4-16.

g. Depo. Ex. 109, "Pre-Communion Prayers." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 78:15-23.

134. The posting of the material on the website that HTM alleges infringed its copyright was for nonprofit educational purposes. <u>See</u> Doc. 76, Gregory Affidavit ¶¶ 5-6.

135. It was the intention, when the website material was posted, to only post material that did not come from any copyrighted sources. <u>See</u> Depo. Peter at pp. 71:8-14, 105:16-20, 159:23-160:21.

136. Even the prior posting of one of the homilies from the Ascetical Homilies of Saint Isaac was not posted intentionally.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 126:8-127:16.

137. The posting of the material on the website that HTM alleges infringed its copyright was not done directly by the Defendant, and he was unaware of details regarding the actual material being posted on his website.  <u>See</u> Doc. 59-4, Gregory Depo. at pp. 199:21-200:13, 222:4-223:6.

138. The person who posted the material on Archbishop Gregory's website was not aware of any copyright claim in the material posted, and promptly removed the material as soon as he was notified of the alleged claims of copyright infringement.  <u>See</u> Doc. 59-7, Peter Depo. at 159:23-161:18.

139. The use of the Psalter in the material posted on the website is "a small part thereof." <u>See</u> Doc. 59-7, Peter Depo. at p. 142:16-20.

140. The current abbot of the Plaintiff, HTM, does not believe any fair use could ever be made of the works in dispute.  <u>See</u> Doc. 78-4, Isaac Depo. at 174:19-175:6.

141. HTM was not created to make a profit.  <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 173:18-20. <u>See also</u> Doc. 78-3, Ephraim Depo. at. p. 88:2-8.

142. St. Nectarios Church aka St. Nectarios Press published a booklet containing the Monastery's "Service of the Little Supplicatory Canon to the Most Holy Mother of God" work in 1970.  (*See* Declaration of Nina Seco, filed on 7/23/2010, Dkt. 89 (hereinafter "Seco") at ¶ 5, Exhibit 1.)

143. St. Nectarios Church aka St. Nectarios Press published a booklet containing the Monastery's "Service of the Small Supplicatory Canon to the Most Holy Mother of God" work in 1979. (*See id*. at ¶ 6, Exhibit 2.)

144. St. Nectarios Church aka St. Nectarios Press published a booklet containing the Monastery's "Service of the Small Compline and the Akathist Hymn" work in 1982. (*See id.* at ¶ 7, Exhibit 3.)

145. A book entitled "An Abridged Euchologion" edited by Rev. David F. Abramtsov was published in 1954. (*See* Declaration of Emily R. Florio, filed on 7/23/2010, Dkt. 90 (hereinafter "Florio") at ¶ 5, Exhibit 1.)

<u>**Plaintiff's Proposed Facts, Disputed By Defendant**</u>

1. The Horologion Work also contains original material, namely, text composed by Monastery members including Metropolitan Ephraim, which was not translated from a source text. (*See* Ephraim at ¶ 8.)

   DEFENDANT OBJECTS TO THIS STATEMENT: The statement is conclusory in that the material referenced is not identified. Until the material is identified with specificity, it is not possible to examine it and determine the validity or invalidity of the statement made.

2. At the time of its translation by HTM, there was no other existing English translation of the Dismissal Hymns, with the exception of the hymns for the great feasts. (*See* Ephraim at ¶ 11.)

   DEFENDANT OBJECTS TO THIS STATEMENT: The statement is incorrect and disputed. All the different services are available and considered common property of the Church. <u>See</u> Doc. 59-4, Gregory Depo. at p. 119:16-121:21, 213:1-9; Doc. 59-7, Peter Depo. at pp. 42:12-43:21. <u>See also</u> Doc. 76, Gregory Affidavit ¶ 15.

3.     The Dismissal Hymns Work also contains original material, namely, text composed by Monastery members including Metropolitan Ephraim, which was not translated from a source text.  (*See* Ephraim at ¶¶ 12, 21.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is conclusory in that the material referenced is not identified.  Until the material is identified with specificity, it is not possible to examine it and determine the validity or invalidity of the statement made.

4.     At the time of its translation by HTM, there was no other existing English translation of the Octoëchos weekday services. (*See* Ephraim at ¶ 14.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is incorrect and disputed.  All the different services are available and considered common property of the Church.  See Doc. 59-4, Gregory Depo. at p. 119:16-121:21, 213:1-9; Doc. 59-7, Peter Depo. at pp. 42:12-43:21.  See also Doc. 76, Gregory Affidavit ¶ 15.

5.     Metropolitan Ephraim was the primary translator of the Monastery's unpublished Dismissal Hymns Work.  (*See* Ephraim at ¶ 21.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

6.     Some of these megalynaria portions reflect original compositions composed by Metropolitan Ephraim. (*See* Ephraim at ¶ 21.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is conclusory in that the material referenced is not identified.  Until the material is identified with specificity, it is not possible to examine it and determine the validity or invalidity of the statement made.

7. Metropolitan Ephraim was one of the primary translators of the Monastery's unpublished Octoëchos Work. (*See* Ephraim at ¶ 21.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

8. The Monastery is a non-profit corporation of Massachusetts with no parent company. (*See* Pachomius at ¶ 33.)

DEFENDANT OBJECTS TO THIS STATEMENT: There is no true corporate form – there is not distinction between the corporation and the monastic brotherhood. See Doc. 78-2, Panteleimon Depo. at p.48:9-16, 57:13-58:11; Doc. 78-4, Isaac Depo. at p. 99:10-23; Doc. 78-3, Ephraim Depo. at p. 75.3-18.

9. The Monastery is not, nor has it ever been, owned by ROCOR or by any particular church or bishops within the Orthodox faith. (*See* Pachomius at ¶ 34.)

DEFENDANT OBJECTS TO THIS STATEMENT: This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

10. At different times since its inception, the Monastery has been spiritually affiliated and in communion with various bishops within the Orthodox faith, including at one time with the bishops of ROCOR. (*See* Pachomius at ¶ 35.)

DEFENDANT OBJECTS TO THIS STATEMENT: Objection is primarily to the diminutive use of the word "spiritual." This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

11.     The Monastery began its spiritual affiliation with the bishops of ROCOR in 1965.  (*See* Pachomius at ¶ 36.)

DEFENDANT OBJECTS TO THIS STATEMENT:  Objection is primarily to the diminutive use of the word "spiritual." This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Doc. 79, Affidavit of Metropolitan Hilarion, passim.

12.     The Monastery ceased commemorating the bishops of ROCOR, thereby ending its spiritual affiliation, in December 1986.  (*See* Pachomius at ¶ 37.)

DEFENDANT OBJECTS TO THIS STATEMENT:  Objection is primarily to the diminutive use of the word "spiritual." This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g.,  Doc. 79, Affidavit of Metropolitan Hilarion, passim.

13.     Since its inception, the Monastery has worked on translating certain religious texts from Greek into English.  (*See* Pachomius at ¶ 39; Ephraim at ¶ 3.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

14.      Father Ephraim was himself a translator on all of the Works, as well the primary translator for the Monastery's Dismissal Hymns Work.  He also created portions of original text for the Dismissal Hymns Work, that is, text that was of his own independent creation, not from translation of a source text.  (*See* Ephraim at ¶ 21.)

DEFENDANT OBJECTS TO THIS STATEMENT:  The statement is conclusory in that the material referenced is not identified.  Until the material is identified with specificity,

it is not possible to examine it and determine the validity or invalidity of the statement made.

15. Father Ephraim primarily decided what works would be translated by the Monastery, in consultation with the Abbot and subject to his blessing. (*See* Ephraim at ¶¶ 17-18.)

DEFENDANT OBJECTS IN THAT THIS IS A NEWLY ASSERTED PROPOSITION THAT IS STILL BEING INVESTIGATED.

16. Other members of the Monastery, not involved with the Monastery's translation program, undertook other jobs within the Monastery to ensure the functioning of the Monastery and of the translation program. (*See* Ephraim at ¶ 20.)

DEFENDANT OBJECTS TO THIS STATEMENT: The translation program was a minor part of the functioning of the Monastery. See Doc. 88, Supp. Decl. Bishop John, at 5, ¶ 3, and Doc. 88-3 thereto at 12-4-77 bulletin, page 3.

17. ROCOR did not decide what works were to be translated by the Monastery. (*See* Ephraim at ¶ 22.))

DEFENDANT OBJECTS TO THIS STATEMENT: This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

18. ROCOR did not request that certain works be translated by the Monastery. (*See* Ephraim at ¶ 23.))

DEFENDANT OBJECTS TO THIS STATEMENT: This description is at odds with facts regarding the relationship between ROCOR and HTM. See, e.g., Doc. 79 Affidavit of Metropolitan Hilarion, passim.

19.    ROCOR did not oversee the Monastery's translation program. (*See* Ephraim at ¶ 24.))

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g., Doc. 79 Affidavit of Metropolitan Hilarion, passim.

20.    ROCOR did not perform any of the translation for the Works, and did not contribute any original text to the Works. (*See* Ephraim at ¶ 25.))

DEFENDANT OBJECTS TO THIS STATEMENT:  Preexisting ROCOR works and efforts were used by HTM.  For example, Abbot Emeritus Panteleimon admits that the HTM work on the Psalter "had as a starting point Brenton's translation of the Septuagint," see Doc. 78-2, Panteleimon Depo. at p. 106:2-4, and also used the prior works of Father Lazarus Moore and Father Gelsinger, see Doc. 78-2 Panteleimon Depo. at pp. 106:15-108:13.

21.    ROCOR did not review or edit the Works, either during creation or prior to publication. (*See* Ephraim at ¶ 26; *see also* Pachomius at ¶ 51.))

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

22.    The Monastery has never assigned the copyright in the Works to anyone, including to ROCOR.  (*See* Pachomius at ¶ 44; *see also* Ephraim at ¶ 35.)

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

23.     The Monastery never intended to create a trust and assign the copyrights in the Works to a trustee to hold in trust for the benefit of ROCOR, nor has any such trust or assignment been established or made by the Monastery.  (*See* Pachomius at ¶ 45.)

DEFENDANT OBJECTS TO THIS STATEMENT:  This description is at odds with facts regarding the relationship between ROCOR and HTM.  See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

24.     The Monastery is not aware of the ROCOR "Monastic Statutes" and "Monastic Regulations" and "Monastic Decree on Property and Finances" relied on by the Defendant in this lawsuit being shown or given to the Monastery by ROCOR, until they were produced by the Defendant during this lawsuit.  (*See* Pachomius at ¶¶ 48-50 ; Ephraim at ¶¶ 32-34.)

DEFENDANT OBJECTS TO THIS STATEMENT AS WORDED:  The proposition stated is at odds with facts.  See, e.g., Doc. 79, Affidavit of Metropolitan Hilarion, passim.

25.     During the years that Metropolitan Ephraim and others at the Monastery were working on the creation of the Monastery's English translation of the Collected Dismissal Hymns, Metropolitan Ephraim provided a photocopy of the work-in-progress to a select group of our Orthodox parishes, specifically some of our English-speaking Orthodox parishes, including St. Nectarios parish in Seattle, WA.  Until that time, liturgies were primarily conducted in the native language of the congregants, for example, Greek or Russian. With the rise of more English-speaking congregations, there was a greater need for liturgies to be conducted in English, and a corresponding need for English translations of the important Orthodox liturgical texts.  During this period, Metropolitan Ephraim sent a

photocopy of the in-progress Collected Dismissal Hymns Work to a total of approximately 12 parishes. This was done in part to allow these parishes to conduct services in English using our translations and provide feedback that the Monastery could then use to determine whether style or syntax changes should be made for purposes of creating a linguistically pleasing English-language liturgical text. Metropolitan Ephraim reviewed the document introduced in this case under Deposition Exhibit 110, and it refers to the Monastery's Collected Dismissal Hymns Work. It reflects the fact that Metropolitan Ephraim remained in contact with this group with respect to revisions HTM was making to the in-progress translation of the Collected Dismissal Hymns Work and that Metropolitan Ephraim would occasionally send them errata to the translation showing what changes the Monastery had decided to make. The Monastery did not require the parishes to pay for the copy of the Dismissal Hymns they received from us. Additionally, Metropolitan Ephraim explicitly informed the recipients that the copy was for their own personal use and not to copy it or distribute or sell it to anyone else. It is possible that copies were made by these approximately 12 recipients, despite Metropolitan Ephraim's instructions to the contrary, but if so it was done without the Monastery's knowledge or permission. (*See* Supplemental Declaration of Metropolitan Ephraim, filed on 6/21/2010, Dkt. 80 at ¶ 1.)

DEFENDANT'S OBJECTION: The above paragraph is odds with the fact throughout the Defendant's proposed facts that are disputed by the Plaintiff.

### **Defendant's Proposed Facts, Disputed By Plaintiff**

1.  HTM became affiliated with the religious institution ROCOR in the mid-1960's. As a monastery of ROCOR, HTM came under the rule of the bishops of ROCOR at that time

==and was subject to all the Canons of the Orthodox Church as well as to all of the statutes, regulations, and decrees of the ROCOR.==  <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 234:3-239:5 and Exhibits 95-97 thereto.  <u>See also</u> Doc. 88, Supp. Decl. Bishop John, at 5, ¶ 3, and Doc. 88-3 thereto at 12-25-77 bulletin, page 3 (noting that HTM received relics as an agent of ROCOR).

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion, where the question of whether HTM was subject to the terms of these documents, to the extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

2.      In January of 1986, allegations of immoral conduct were brought against certain of the monks of HTM, including the then abbot Archimandrite Panteleimon (Metropoulos) and Hieromonk Isaac, causing each to be relieved of their positions of authority.  <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 234:3-239:5 and Exhibits 95-97 thereto.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense.

3.      These events and the actions of the ROCOR in response have been memorialized in various writings, including a number of resolutions signed by the then First Hierarch of the ROCOR, Metropolitan Vitaly.  Doc. 79-4 through 79-6, Exhibits 95-97 attached to Doc. 79, the Hilarion Affidavit, are authentic copies of resolutions signed by Metropolitan Vitaly, that Metropolitan Hilarion has personal knowledge that the findings and determinations recited therein are the findings and determinations of the ROCOR regarding the matters addressed therein.  <u>See</u> Doc. 79, Hilarion Affidavit ¶ 6 and Exhibits 95-97 thereto.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense.

4.      HTM demanded a trial before an ecclesiastical court.  <u>See</u> Doc. 78-2, Panteleimon Depo. at pp. 249:14-250:17.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense

5.      Metropolitan Hilarion is also aware that, after the disciplinary proceedings were instituted against the monks of HTM, but before the disciplinary proceedings were completed, the monks of HTM purported to secede from ROCOR on December 12, 1986.  Metropolitan Hilarion wrote Hieromonk Justin of HTM about these actions on December 25, 1986.  An authentic copy of that letter is attached to the Doc. 79, Hilarion Affidavit as Exhibit 98, Doc. 79-7.[2]  Metropolitan Hilarion is of the opinion that what is stated in that letter is true and accurate.  <u>See</u> Doc. 79, Hilarion Affidavit ¶ 7 and Doc. 78-2, Panteleimon Depo. at pp. 243:23-244:12 and Exhibit 98 thereto.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense

6.      In or about February 1987, as confirmed by the Synod of Bishops, ROCOR issued a Decree against the monks of HTM (hereinafter referred to as "Decree") finding that HTM's announcement that "*... the brotherhood of Holy Transfiguration Monastery had unanimously decided to quit the jurisdiction of the Russian Orthodox Church Outside of Russia . . [constituted] a grave violation of the sacred canons of the Church, as an attempt to avoid the results of the final decision in the case of Archimandrite Panteleimon and his colleagues, which would have been laid down by an ecclesiastical court on the basis of the merits of the accusations lodged against them.  It is also a fleeing from their*

---

[2]      The December 25, 1986 letter from the Synod of Bishops of the ROCOR to Rev. Hieromonk Justin stated in pertinent part that "*On December 12 of this year His Eminence received a letter signed by Monk Ephraim, in which he states that by a unanimous vote of the brotherhood the monastery has seceded from the jurisdiction of the Russian Orthodox Church Outside of Russia ...*") (emphasis added).

*ecclesiastical hierarchy*."  As a consequence, the *Decree* pronounced that Archimandrite Panteleimon and his followers had "*initiated a schism*" and engaged in "*illicit, anticanonical actions*" which justified the punishments set forth in the ecclesiastical canons.  The *Decree* then went on to (1) confirm the suspensions of Archimandrite Panteleimon and Hieromonk Isaac, and (2) suspending all the clergymen who followed the alleged departure for having engaged in schism, a canonical crime.  See Doc. 78-2, Panteleimon Depo. at pp. 254:16 and 258:11 and Exhibits 99 and 100 thereto (used as exhibits to the Hilarion Affidavit, see Doc. 85, ¶ 3) and Doc. 79, Hilarion Affidavit ¶ 8 and Exhibits 99 and 100 thereto.  Doc. 79-8 and 79-9.

PLAINTIFF'S NOTE: disputed as immaterial to any claim or defense

7.      Abbot Emeritus Panteleimon, founder of HTM, believes that Archbishop Gregory acted as a whistleblower to church authorities regarding occurrences of sexual molestation and abuse within HTM.  See Doc. 78-2, Panteleimon Depo. at pp. 259:17-260:7.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense

8.      The Canons of the Orthodox Church forbid an abbot from taking someone in a monastery under vows of obedience to the abbot and having sexual contact with that person.  See Doc. 78-4, Isaac Depo. at p. 143:8-14.  When the Defendant, then monk Gregory, learned that then Abbot Panteleimon was engaging in sexual activity with monks he "had to report it to the bishops according to the canon law." See Doc. 78-1, Gregory Depo. at pp. 314:22-315:22.

PLAINTIFF'S NOTE: Disputed as immaterial to any claim or defense.

9.      An investigation followed, but then Abbot Panteleimon took HTM out of ROCOR before

an ecclesiastical court could hold a trial to address the matter.  See Id. at pp. 316:21-

318:7.

PLAINTFF'S NOTE: Disputed as immaterial to any claim or defense

10.     HTM reports that it will treat others differently than Archbishop Gregory, even if HTM

believes that others have engaged in infringement similar to what they allege against

Archbishop Gregory, because HTM'S response to perceived infringement "depends on

the person." See Doc. 78-4, Isaac Depo. at p. 56:18-22.

PLAINTIFF'S NOTE: Disputed as inaccurate, where this portion of deposition testimony

discusses HTM's response to acts not actors

11.     Among the Canons of the Rudder, is the following Apostolic Canon:

> Let the bishop have the care of all the goods of the Church and let
> him administer them as under the inspection of God.  But he must
> not alienate any of them or give the things which belong to God to
> his own relations.  If they be poor let him relieve them as poor but
> let him not under that pretence sell the goods of the Church.

See Doc. 79, Hilarion Affidavit ¶ 11.  In like fashion, part of another Apostolic Canon states

"We ordain that the bishop have authority over the goods of the Church." These and

many other Canons of the Rudder firmly establish that all of the possessions and property

of a monastery (and indeed all church property) are owned by the ruling bishop (or

bishops) for the sake of the Orthodox Church.  See Doc. 79, Hilarion Affidavit ¶ 11. See

also Doc. 78-1, Gregory Depo. at pp. 304:24-305:18, 306:14-306:20.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion of this proposed

fact, where the question of whether HTM was subject to the terms of this documents, to

the extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

12. In addition to the Rudder, ROCOR monasteries are governed and bound by the Statutes for Monasteries of the Russian Orthodox Church Outside Russia. An authentic copy of those statutes, Doc. 79-1, is attached to and labeled Exhibit 82 to Doc. 79, the Hilarion Affidavit. As noted on that exhibit, these statutes were in existence and adopted by the Synod of Bishops of the ROCOR on November 12, 1959. As a ROCOR monastery, HTM was bound by those statutes. See Doc. 79, Hilarion Affidavit ¶ 12.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion, where the question of whether HTM was subject to the terms of these documents, to the extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

13. As set forth in the Statutes for Monasteries of the Russian Orthodox Church Outside Russia, as a ROCOR monastery HTM was under the canonical supervision and jurisdiction of the ROCOR Synod of Bishops (Section 5), was established with the blessing of the Ruling Bishop of that area of the country, was to always be in the jurisdiction of the Synod of Bishops of the ROCOR (Section 6), and when HTM left the jurisdiction of the ROCOR, its possessions and property were to be handed over to the diocese subject to the Synod of Bishops of ROCOR (Section 16). See Doc. 79, Hilarion Affidavit ¶ 13.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, where the question of whether HTM was subject to the terms of these documents, to the extent Defendant

alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

14. Additionally, ROCOR monasteries in particular are governed and bound by the Regulations of the Russian Orthodox Church Outside Russia (hereinafter referred to as "Monastic Regulations"). An authentic copy of those regulations, Doc. 79-3, is attached to the Hilarion Affidavit and labeled Exhibit 91 to the Hilarion Affidavit.[3] As noted on that exhibit, these regulations were in existence since the mid-1950s and adopted in their current form by the Synod of Bishops of the ROCOR in 1964. As a ROCOR monastery, HTM was bound by those regulations. See Doc. 79, Hilarion Affidavit ¶ 14.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the highlighted portion, where the question of whether HTM was subject to the terms of these documents, to the extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

---

[3]    The Regulations of the Russian Orthodox Church Outside Russia (hereinafter referred to as "Monastic Regulations") provide that:

1.    All organs of Church administration must subject their acts to scrutiny and control according to the prescribed chain of authority (Reg. 5 and 6);

2.    the ROCOR Synod of Bishops has specific jurisdiction over the publishing of books (Reg. 29.J);

3.    the Synod has jurisdiction over translations and publications (Reg. 29.K);

4.    the Synod has jurisdiction over matters concerning church property in monasteries (Reg. 29.X);

5.    income for the maintenance of the Synod is to be generated from, among other things, a percentage from the sale of spiritual literature (Reg. 32.H);

6.    the First Hierarch has the right to administer monasteries directly subject to him (Reg. 37.M); and

7.    the Diocesan Bishop has the authority to administer and dispose of monastic property and to supervise all other church property in the diocese (Reg. 47.R).

See Depo. Ex. 91 (Doc. 79-3) attached to and referenced by Doc. 79, the Hilarion Affidavit.

15. As set forth in the Regulations of the Russian Orthodox Church Outside Russia, as a ROCOR monastery, HTM had to subject their acts to scrutiny and control according to the prescribed chain of authority, and the ROCOR Synod of Bishops had specific jurisdiction over the publishing of books by HTM, over translations and publications, over matters concerning church property in the monastery, and income for the maintenance of the Synod was to be generated from, among other things, a percentage from the sale of spiritual literature. Also, as set forth in the regulations, the First Hierarch always has the right to administer monasteries directly subject to him, and the Diocesan Bishop had the authority to administer and dispose of monastic property and to supervise all other church property in the diocese -- which would include HTM. <u>See</u> Doc. 79, Hilarion Affidavit ¶ 15.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, where the question of whether HTM was subject to the terms of these documents, to the extent Defendant alleges they constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

16. Further, by Decree of the Holy Sobor of the Russian Orthodox Church on Church Property and Finances, it was clearly provided that ROCOR ecclesiastical institutions holding property manage it in accordance with ecclesiastical regulations, the decisions of the All-Russian Church Sobor and the orders of the Supreme Ecclesiastical Authority. <u>See</u> Exhibit 90 to the Hilarion Affidavit, Doc. 79-2, which is an authentic copy of that Decree on Church Property and Finances. As noted thereon, this Decree has been in effect in the ROCOR since 1918. <u>See</u> Doc. 79, Hilarion Affidavit ¶ 16.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this fact, where the question of whether

HTM was subject to the terms of these documents, to the extent Defendant alleges they

constitute a binding contract, is disputed and subject to a legal, not a factual conclusion.

17.    Ecclesiastical property or sacred property includes translations of Orthodox teachings,

services, and Scriptures.    Such works belong to the Orthodox Church and not a

monastery.    Any such translations made by members of HTM while within the

jurisdiction of the ROCOR belong to the Orthodox Church and not to HTM or any

members of HTM.    Pursuant to the written Canons, Statutes, and Regulations (all of

which predated and were well known prior to the decision of HTM to join with and come

under the jurisdiction of the ROCOR in the mid-1960s), it was well known and accepted

that any such works were being made for the benefit of the Orthodox Church and

belonged to the Orthodox Church.    Ownership of all such translations was by the

diocesan bishop and to be held in trust for the Orthodox Church as a whole.  See Doc. 79,

Hilarion Affidavit ¶ 17 and Doc. 78-2, Panteleimon Depo. pp. 91:5-92:7 and 318:10-

319:19 and Plaintiff's Rebuttal Expert Report of Reverend Alexander Rentel, Doc. 85-1,

at p. 15 ("It is traditional for sacred items, for example icons, to be considered to be

owned by the church. Thus if a monastery severs its ties with a church, it is traditional for

that monastery to relinquish its icons to the church").

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, to the extent it

constitutes unsupported opinion, not fact and/or a legal conclusion as to ownership of

HTM's property, including its copyrights, by ROCOR.

18.    Any works of translation or other spiritual literature prepared by HTM or any member of

HTM after HTM joined with and came under the jurisdiction of the ROCOR in the mid-

1960s, and prior to 1987, are owned by the ROCOR and not by anyone else. <u>See</u> Doc. 79, Hilarion Affidavit ¶ 18. It important for the sacred things of the Church to be provided to the people of the Church, and that includes the works in dispute in this case. <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 114:5-24. The translations are sacred writings. <u>Id.</u> at p. 318:10-17.

PLAINTIFF'S NOTE: HTM disputes the accuracy of this proposed fact, to the extent it constitutes unsupported opinion, not fact and/or a legal conclusion as to ownership of HTM's property, including its copyrights, by ROCOR.

19.    <mark>A committee existed within ROCOR to approve translations of the literary works of the Orthodox Church.</mark> <u>See</u> Doc. 78-2, Panteleimon Depo. at pp. 317:10-318:5. <u>See also</u> Depo. Exhibit 91, Doc. 79-3, referenced in the Hilarion Affidavit, at Reg. 29.j (ROCOR Synod of Bishops has specific jurisdiction over the publishing of books), Reg. 29.k (the Synod has jurisdiction over translations and publications), Reg. 29.x (the Synod has jurisdiction over matters concerning church property in monasteries).

PLAINTIFF'S NOTE: HTM disputes the highlighted portion as an inaccurate restatement of the testimony of Father Panteleimon, who testified that he would not be surprised if there was a committee within ROCOR that was involved in the work being done by a non-HTM employee, who made translations from the Slavonic language, not Greek.

20.    From the mid-1960s, and prior to 1987, ROCOR had complete control over the manner and means of preparation of the works by HTM because HTM joined with and came under the jurisdiction of ROCOR, and all of the disputed works were prepared in the course and scope of HTM's (and each of its members') subordinate relationship to ROCOR. <u>See</u> Doc. 79, Hilarion Affidavit ¶¶ 9-18.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate opinion unsupported by any

evidence of record.

21.    The specific reason the disputed works were prepared was to benefit the congregants of

ROCOR, and the Orthodox Church as a whole, and as a part of the ROCOR, HTM also

paid monthly dues for the upkeep of the Church.  See Doc. 78-2, Panteleimon Depo. at

pp. 97:6-19, 98:16-99:13, 149:1-16.  The ROCOR superiors directed their subordinates at

HTM to prepare the disputed works and distribute them to the faithful of the Orthodox

Church as a whole, and the disputed works are property held by the ROCOR bishops in

trust for the Orthodox Church.  See Doc. 78-1, Gregory Depo. at 339:4-17.  See also Doc.

78-2, Panteleimon Depo. at pp. 317:10-318:9; Depo. Exhibit 91 (Doc. 79-3) referenced in

the Doc. 79, Hilarion Affidavit, at Reg. 29.j (ROCOR Synod of Bishops has specific

jurisdiction over the publishing of books), Reg. 29.k (the Synod has jurisdiction over

translations and publications), Reg. 29.x (the Synod has jurisdiction over matters

concerning church property in monasteries).

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate opinion unsupported by any

evidence of record and/or legal conclusion to the extent it relies upon documents that

Defendant purports constitute a contract that binds HTM

22.    HTM attests that sacred things of the Church should be provided to the people of the

Church, and that includes the works in dispute in this case.  See Doc. 78-2, Panteleimon

Depo. at p. 114:5-24.  The translations are sacred writings.  Id. at p. 318:10-17.  Upon

their secession from ROCOR, HTM only returned to ROCOR their antimension, a piece

of cloth, signed by the ruling bishop that is opened when performing the Orthodox

liturgy.  See Doc. 78-2, Panteleimon Depo. at pp. 93:15-94:24.

PLAINTIFF'S NOTE: HTM disputes the highlighted portions as inaccurate restatements of the

deposition transcript.

23. During the time HTM was under investigation and after HTM left ROCOR, HTM took

actions with regard to publication and copyright registration of translations that HTM

admits were prepared at the monastery while HTM was under the rule of the ROCOR

bishops.

PLAINTIFF'S NOTE: HTM disputes the highlighted portion of this proposed fact as immaterial

where it is not relevant to any claim or defense, and moreover as inaccurate where HTM

has published and registered the copyright in its works from 1975 up through the present,

both during and after it was in communion with ROCOR (*see* exhibits to Complaint).

    a. *The Great Horologion*

        i.      Formally Published - October 15, 1997 (¶ 9 of the Plaintiff's

        Complaint)

PLAINTIFF'S NOTE: HTM's copyright registration reflects the work's "Publication" date;

"formal" publication has no meaning, and if this change is not made throughout this

section, to subsubparts "i" of each subpart "a-g" of this section, HTM will dispute as

inaccurate.

        ii.     Copyright Registration – December 3, 1997 (¶ 11 of the Plaintiff's

        Complaint)

    b. *Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year*

        i.      Formally Published -  Never (¶ 13 of the Plaintiff's Complaint)

        ii.     Copyright Registration – December 10, 1987 (¶ 15 of the

        Plaintiff's Complaint)

*c. Pentecostarion*

    i.    <u>Formally Published</u> – May 23, 1990 (¶ 17 of the Plaintiff's Complaint)

    ii.    <u>Copyright Registration</u> – June 24, 1986 (¶ 19 of the Plaintiff's Complaint)

*d. A Prayer Book for Orthodox Christians*

    i.    <u>Formally Published</u> – July 1, 1988 (¶ 21 of the Plaintiff's Complaint)

    ii.    <u>Copyright Registration</u> – November 16, 1988 (¶ 23 of the Plaintiff's Complaint)

*e. Octoëchos*

    i.    <u>Formally Published</u> – Never (¶ 25 the Plaintiff's Complaint)

    ii.    <u>Copyright Registration</u> – June 24, 1986 (¶ 27 of the Plaintiff's Complaint)

*f. The Psalter*

    i.    <u>Formally Published</u> – May 17, 1974 (¶ 29 of the Plaintiff's Complaint)

    ii.    <u>Copyright Registration</u> – March 31, 1975 (Dkt. 56-7); February 24, 1986 (¶ 31 of the Plaintiff's Complaint)

*g. The Ascetical Homilies of Saint Isaac the Syriac*

    i.    <u>Formally Published</u> – November 25, 1985 (¶ 33 of the Plaintiff's Complaint)

ii.     <u>Copyright Registration</u> – January 3, 1986 (¶ 35 of the Plaintiff's Complaint).

24.     As set forth below, as set forth in the Plaintiff's Complaint, the dates of formal publication and/or copyright registration show that the following works were created at HTM after HTM came under ROCOR jurisdiction and prior to the monks' purported December 1986 secession from ROCOR:

PLAINTIFF'S NOTE: PLAINTIFF'S NOTE: HTM's copyright registration reflects the work's "Publication" date; "formal" publication has no meaning, and if this change is not made throughout this section, to sub-subparts "i" of each subpart "a-g" of this section, HTM will dispute as inaccurate.

a.  *Pentecostarion* – created prior to copyright being registered on <u>June 24, 1986</u> (¶ 19 of the Plaintiff's Complaint);

b.  *Octoëchos* – created prior to copyright being registered on <u>June 24, 1986</u> (¶ 27 of the Plaintiff's Complaint);

c.  *The Psalter* -  created prior to being formally published on <u>May 17, 1974</u> (¶ 29 of the Plaintiff's Complaint); and

d.  *The Ascetical Homilies of Saint Isaac the Syriac* – created prior to being formally published on <u>November 25, 1985</u> (¶ 33 of the Plaintiff's Complaint).

25.     Additionally (aside from the admissions of HTM in the complaint), testimony and other evidence shows that almost all of the alleged works were prepared in substantial form while HTM was a monastery of ROCOR and – for some of the works – prior to 1978. Indeed publication by distribution occurred during this time period, as well.

PLAINTIFF'S NOTE: HTM disputes the accuracy of the remainder of this section, below, to the extent that HTM's copyright registrations reflect the works' "Creation" year, and where "prepared" has no meaning, to the extent the proposed facts are inaccurate and not supported by any evidence of record, and to the extent they purport to offer a legal conclusion that certain actions resulted in a "publication" of HTM's works under 17 U.S.C. (or in defendant's lexicon they were "published by distribution"), they are inappropriate as proposed facts.

    a. *The Great Horologion*

        i. <u>Prepared</u> – Prior to informal distribution prior to 1987.

        ii. <u>Published by Distribution</u> – ***Prior to 1987***. <u>See</u> Doc. 78-4, Isaac Depo. at pp. 125:23-127:10, 127:11-21; Doc. 78-2, Panteleimon Depo. at pp. 155:1-157:13.

    b. *Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year*

        i. <u>Prepared</u> – Before 1975, before distribution. <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 205:20-206:7. <u>See also</u> Doc. 85-2, Depo. Ex. 110. <u>See also</u> Doc. 78-5, Pachomius Depo. at pp. 202:21-203:10, 204:16-19 (authenticating Metropolitan Ephraim's handwriting when he was a monk at HTM.)

        ii. <u>Published by Distribution</u> - Sent out to "Friends in Christ" ***before 1975***. <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 205:20-206:7. <u>See also</u> Doc. 85-2, Depo. Ex. 110. And continuing "up until the mid '80s." <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 149:6-16.

    c. *Pentecostarion*

i. <u>Prepared</u> – Before 1975, before distribution. <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 205:20-206:7. <u>See also</u> Doc. 85-2, Depo. Ex. 110. <u>See also</u> Doc. 78-5, Pachomius Depo. at pp. 202:21-203:10, 204:16-19 (authenticating Metropolitan Ephraim's handwriting when he was a monk at HTM.) <u>See also</u> Doc. 85-3, pages from Depo. Ex. 12 at p. 10 (e.g., "Since then, copies of that draft translation of the Pentecostarion have been in circulation.")

ii. <u>Published by Distribution</u> - Sent out to "Friends in Christ" ***<u>before 1975</u>***. <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 205:20-206:7. <u>See also</u> Doc. 85-2, Depo. Ex. 110. <u>See also</u> Doc. 85-3, pages from Depo. Ex. 12 at p. 10 (e.g., "Since then, copies of that draft translation of the Pentecostarion have been in circulation.") And continuing "up until the mid '80s." <u>See</u> Doc. 78-2, Panteleimon Depo. at p. 149:6-16.

d. *A Prayer Book for Orthodox Christians*

i. <u>Prepared</u> – Prior to informal distribution prior to 1987.

ii. <u>Published by Distribution</u> – ***<u>Prior to 1987</u>***. <u>See</u> Doc. 78-4, Isaac Depo. at pp. 125:23-127:10, 127:11-21; Doc. 78-2, Panteleimon Depo. at pp. 155:1-157:13.

e. *Octoëchos*

i. <u>Prepared</u> – Prior to informal distribution prior to 1987.

ii. <u>Published by Distribution</u> – ***<u>Prior to 1987</u>***. <u>See</u> Doc. 78-4, Isaac Depo. at pp. 125:23-127:10, 127:11-21; Doc. 78-2, Panteleimon Depo. at pp. 155:1-157:13.

*f.  The Psalter*

      i.      <u>Prepared</u> - created prior to being formally published on ***<u>May 17,</u>***

      ***<u>1974</u>*** (¶ 29 of the Plaintiff's Complaint);

      ii.      <u>Published</u> – At least by formal publication, if not before.

    g.  The Ascetical Homilies of Saint Isaac the Syriac

      i.      <u>Prepared</u> - created prior to being formally published on ***<u>November</u>***

      ***<u>25, 1985</u>*** (¶ 33 of the Plaintiff's Complaint);

      ii.      <u>Published by Distribution</u> - At least by formal publication, if not

      before.

26.  The works prepared before 1978 (while HTM was under the rule of the ROCOR bishops) that HTM claims have been infringed by the material posted on Archbishop Gregory's website are:  *Collected Dismissal Hymns, Kontakia, and Megalynaria for the Liturgical Year* (before 1975), *Pentecostarion* (before 1975), and *The Psalter* (before 1975).

PLAINTIFF'S NOTE: HTM disputes this proposed fact as inaccurate where there is no evidence offered to support a creation date of these works that differs from what is indicated on the HTM copyright registration certificates.

27.  Archbishop Gregory has had access to material at Dormition Skete that was believed for at least two decades to have been produced and distributed in its current form by St. Nectarios Press. <u>See</u> Doc. 88, Supp. Decl. Bishop John at 1, ¶ 1. That material includes Document 77-10, "Service of the Small Supplicatory Canon to the Most Holy Mother of God," which became Deposition Exhibit 23 in this case, Document 77-11, a different "Service of the Small Supplicatory Canon to the Most Holy Mother of God," which became Deposition Exhibit 24 in this case, and Document 77-12, the "Small Compline

and Akathist." While it is not known how these documents came to be in their current form, they have been in this form for at least two decades and arrived at Dormition Skete in that form. See Doc. 88, Supp. Decl. Bishop John at 1-3, ¶¶ (1)(a) – (1)(c).

PLAINTIFF'S NOTE: The documents relied on by Defendant (Dkt. 77-10, 77-11, and 77-12) were never published by St. Nectarios Church aka St. Nectarios Press in the forms submitted by Defendant. The documents submitted by Defendant have been substantially altered from their original published form, including having their copyright notification language removed. *See* Seco at ¶¶ 8-10.

28.    Over the years, St. Nectarios Press has published and distributed material to the public in which HTM is now claiming copyright -- and St. Nectarios Press has done so without putting a copyright notice on those works. See Doc. 88, Supp. Decl. Bishop John at 4-5, ¶ 2. See also Doc. 78-4, Isaac Depo. at pp. 121:10-123:24. St. Nectarios Press published these works that were prepared by HTM with HTM's blessing. See Doc. 78-2, Panteleimon Depo. at pp. 159:23-161:6. In one publication of HTM material distributed by St. Nectarios Press, Abbot Emeritus of HTM wrote:

> With great spiritual joy we present this translation of the Small Supplicatory Canon (Paraclesis) to the Mother of God, prepared from the original Greek by the fathers of Holy Transfiguration Monastery in Boston.
>
> Praying that this contribution will enable more to chant this most edifying and soul-profiting service in the English language, both in common and private devotions during the Fifteen-day fast for the Dormition of the Holy Mother of God in August, and "in every tribulation, and in sorrow of soul," ***we piously submit this translation to the godly Orthodox Christians*** and ask for their prayers.
>
> Priestmonk Panteleimon
> of the Holy Mountain
> and Synodia in Christ

Doc. 77-11, Depo. Ex. 24 at 6th page of the exhibit (emphasis added). This precise form of unique language appearing in the version of the "Service of the Small Supplicatory Canon to the Most Holy Mother of God," Document 77-11, which became Deposition Exhibit 24 in this case, has not been shown to exist in any document from St. Nectarios Press that bears a copyright notice – although similar language appears in a document that does have a copyright notice.

> PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting a legal conclusion, and to the extent the documents Defendant relies on (Deposition Exs. 23 and 24; Dkt. 77-10 and 77-11) were never published by St. Nectarios Church aka St. Nectarios Press in the form submitted by Defendant. Both of the documents submitted by Defendant have been substantially altered from their original published form, including having their copyright notification language removed. *See* Seco at ¶¶ 5-6, 8-9.

29. St. Nectarios Press has a close working relationship with HTM. <u>See</u> Doc. 59-4, Gregory Depo. at pp. 156:18-157:14. Although it is not certain that St. Nectarios Press sent out Depo. Ex. 23 and 24 without copyright notices, <u>see</u> Doc. 88, Suppl Decl. Bishop John at 1-3, if it did so, it appears that (at a minimum) the following Psalms have passed by that means into the public domain: **Psalm 50** (<u>see</u> Doc. 77-10, Depo. Ex. 23 at 11th page, hand-numbered "9"; <u>see also</u> Doc. 77-11, Depo. Ex. 24 at 12th page, with bottom-of-page number "5"); **verse 1 of Psalm 104** (<u>see</u> Doc. 77-10, Depo. Ex. 23 at 5th page, hand-numbered "3"; <u>see also</u> Doc. 77-11, Depo. Ex. 24 at 11th page, with bottom-of-page number "4"); **verses 10 and 22 of Psalm 117** (<u>see</u> Doc. 77-10, Depo. Ex. 23 at 5th page, hand-numbered "3"; <u>see also</u> Doc. 77-11, Depo. Ex. 24 at 11th page, with bottom-of-page number "4"); **Psalm 142** (<u>see</u> Doc. 77-10, Depo. Ex. 23 at 4th page, hand-numbered "2";

see also Doc. 77-11, Depo. Ex. 24 at 10th page, with bottom-of-page number "3"). Archbishop Gregory concedes that he does not have absolute knowledge of how Documents 77-10 through 77-12 looked when they were sent out by St. Nectarios Press for HTM, but these documents are in the form they arrived at Dormition Skete more than two decades ago. See Doc. 88, Suppl. Decl. Bishop John at 1-3.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting a legal conclusion, and to the extent the documents Defendant relies on (Deposition Exs. 23 and 24; Dkt. 77-10 and 77-11) were never published by St. Nectarios Church aka St. Nectarios Press in the form submitted by Defendant. Both of the documents submitted by Defendant have been substantially altered from their original published form, including having their copyright notification language removed. *See* Seco at ¶¶ 5-6, 8-9.

30. Even if deposition exhibits 23 and 24 were altered before arriving at Dormition Skete, other HTM material distributed by St. Nectarios press likewise placed translations of HTM into the public domain. See Doc. 88, Supp. Decl. Bishop John at 4-5, ¶ 2. This might also include Document 77-12, "The Service of Small Compline and the Ahathist Hymn." Archbishop Gregory concedes that he does not have absolute knowledge of how Document 77-12 looked when it was sent out by St. Nectarios Press for HTM, but the document is in the form it arrived at Dormition Skete more than two decades ago. See Doc. 88, Suppl. Decl. Bishop John at 1-3.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting a legal conclusion and to the extent that the document Defendant relies on (Dkt. 77-12) was never published by St. Nectarios Church aka St. Nectarios Press in the form submitted by Defendant. The document submitted by Defendant has been substantially altered from its original

published form, including having its copyright notification language removed.  *See* Seco at ¶¶ 7, 10.

31.    Apart from distribution of HTM material into the public domain by St. Nectarios Press, see, e.g., Doc. 88, Supp. Decl. Bishop John at 4-5, ¶ 2, the various services of the Orthodox Church have been shared amongst Orthodox clergy for years.  All the different services are available and considered common property of the Church.  See Doc. 59-4, Gregory Depo. at p. 213:1-9; Doc. 59-7, Peter Depo. at pp. 42:12-43:21.

PLAINTIFF'S NOTE: HTM disputes this fact as constituting a legal conclusion, and unsupported opinion, to the extent that Defendant is knowingly relying on examples of St. Nectarios Church aka St. Nectarios Press publications that were never published in the form submitted by Defendant.  The documents submitted by Defendant under Dkt Nos. 77-10, 77-11, and 77-12 have been substantially altered from their original published form, including having their copyright notification language removed  *See* Seco at ¶¶ 5-10.

32.    As pertains to the disputed Works that are the subject of this lawsuit, the Horologion, the Octoëchos, the Dismissal Hymns, the Prayer Book, and the Pentecostarion were all sent out for people to make use of in their churches prior to any formal publication.  See Doc. 78-4, Isaac Depo. at p. 127:11-21.   See also Id. at pp. 125:23-127:10; Doc. 78-2, Panteleimon Depo. at pp. 155:1-157:13.

PLAINTIFF'S NOTE: HTM disputes this fact as constituting a legal conclusion to the extent it purports to conclude that HTM published its works before it published its works. *See* Dkt. 74 at ¶ 29 (Ephraim Declaration); Dkt. 80 (Ephraim Supplemental Declaration).

33. HTM admits that The Collected Dismissal Hymns, Doc. 72-1 through 72-13, deposition exhibits 33, 34, and 36 through 46 the troparia (dismissal hymns and kontakia), that HTM claims as copyrightable works, were distributed as early as 1974 into the public domain. See Doc. 78-5, Pachomius Depo. at pp. 205:20-206:7; Doc. 78-2, Panteleimon Depo. at p. 149:1-5. See also Doc. 85-2, Depo. Ex. 110. These materials were distributed without any copyright notice.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate to the extent it misstates deposition testimony, and as constituting a legal conclusion to the extent it purports to conclude that any of HTM's works are in the public domain. *See* Dkt. 74 at ¶ 29 (Ephraim Declaration); Dkt. 80 (Ephraim Supplemental Declaration).

34. HTM has allowed what they allege to be their works to be published in the New Jordanville Prayer Book. See Doc. 78-5, Pachomius Depo. at pp. 226:9-227:13. The New Jordanville Prayer Book is the successor to Jordanville's Old Prayer Book – which is in the public domain. See Doc. 76, Gregory Affidavit ¶ 12.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate restatement of deposition testimony, and as legal conclusion to the extent it purports to state as fact that by licensing its works, or by allowing its works to appear in conjunction with other material that may be in the public domain, or by having had its works infringed, that HTM has therefore put its own works into the public domain.

35. The Pentecostarion was distributed in the public domain in the same fashion as the troparia (dismissal hymns and kontakia). See Doc. 85-3, Depo. Ex. 12 at p. 10 (e.g., "Since then, copies of that draft translation of the Pentecostarion have been in circulation.") See also Doc. 78-2, Panteleimon Depo. at 146:22-149:5, 153:2-154:8.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate to the extent it misstates deposition

testimony, and as constituting a legal conclusion to the extent it purports to conclude that

any of HTM's works are in the public domain.

36.     Many religious materials have been circulated among the Orthodox clergy for years –
none of which bear a copyright notice – and which became source material for the
Archbishop Gregory's website and HTM allegations of copyright infringement.  See, e.g.,
Doc. 59-4, Gregory Depo. at pp. 119:16-121:21.  See also Doc. 76, Gregory Affidavit ¶
15.

PLAINTIFF'S NOTE: HTM disputes this fact as inaccurate and unsupported by any

documentary evidence of record, as unsupported opinion, and as constituting a legal

conclusion to the extent it purports to conclude that any of HTM's works are in the public

domain, due to unauthorized distribution or infringement by others not under HTM's

control.

37.     HTM does not claim copyright in common phrases.  See Doc. 78-2, Panteleimon Depo. at
pp. 295:11-296:1.

PLAINTIFF'S NOTE: HTM disputes this fact as offering (an inaccurate) legal conclusion as to

what HTM's copyright protects

38.     There were pre-existing versions of the various works that HTM alleges are
copyrightable, and those pre-existing versions were used by HTM.  See Doc. 78-2,
Panteleimon Depo. at p. 298:2-7.  Those pre-existing versions are foundational to the
various works that HTM alleges are copyrightable.  See Doc. 78-2, Panteleimon Depo. at
pp. 105:24-106:12.  Abbot Emeritus Panteleimon notes that he was one of four translators
of the Psalter work in which HTM claims copyright.  See Doc. 78-2, Panteleimon Depo.

at p. 105:10-23. Abbot Emeritus Panteleimon admits that the HTM work on the Psalter "had as a starting point Brenton's translation of the Septuagint," <u>see</u> Doc. 78-2, Panteleimon Depo. at p. 106:2-4, and also used the prior works of Father Lazarus Moore and Father Gelsinger, <u>see</u> Doc. 78-2, Panteleimon Depo. at pp. 106:15-108:13.

PLAINTIFF'S NOTE: Disputed as inaccurate restatement of deposition testimony and to the extent it seeks to offer a legal conclusion that HTM's works are derivative works of pre-existing English language works.

39. HTM has not clearly specified what portions of Archbishop Gregory's website material it believes infringe its alleged copyrighted work. Simple comparison of each page of Archbishop Gregory's website material to each page of HTM's alleged copyrighted works would generate at least 7,120,966 comparisons. Even making such comparisons would not yield any certain knowledge of precisely which portions of Archbishop Gregory's website material HTM asserts are an infringement on which specific portions of HTM's allegedly copyrightable work. For example, the Psalter is one alleged work of HTM that resembles the form of Psalms included within material posted on the website. HTM acknowledged that the version of the Psalter which it alleges has been infringed upon is not a novel translation in the same sense as it describes the St. Isaac work as being novel. <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 109:19-110:8. The Psalms included within the disputed material posted on the website are the following:

PLAINTIFF'S NOTE: HTM disputes the highlighted portion of this proposed fact as an inaccurate restatement of deposition testimony, and also disputes this proposed fact to the extent it purports to be a legal conclusion as to originality of HTM's Psalter Work. Additionally, HTM disputes the entire remainder of this paragraph (subparas a-dd) as

immaterial, inaccurate, unsupported by properly authenticated evidentiary material, comprising legal argument and conclusions as to substantial similarity of the defendant's works to HTM's works, unsupported opinion, and at the very least as being inappropriate for a proposed fact document, where HTM has yet to file its Motion for Summary Judgment identifying samples of defendant's infringement, which may or may not reflect any of the quotations included by defendant below.

    a. Psalm 2.  Doc. 72-28, Depo. Ex. 57 at 13 (one verse).  This verse in the website material matches what is claimed by HTM as its copyrightable work "*The Lord said unto Me:  Thou art My Son, this day have I begotten Thee.*"

        i. ***As regards prior works*** the HTM form of the verse (with minor punctuation and capitalization differences) is ***identical to*** the verse as it appears in Doc. 77-6, Doc. 77-6, the 1906 Hapgood Service Book (p. 175 "*The Lord said unto me, Thou art my Son, this day have I begotten thee*"), and in Doc. 77-31, the 1885 English Revised Version Psalms ("*The LORD said unto me, Thou art my son; This day have I begotten thee*").  The HTM form of the verse is ***virtually identical to*** the verse as it appears in Doc. 77-1, the 1535 Coverdale Psalms ("the Lord hath said unto me, Thou art my Son, this day have I begotten thee"), Doc. 77-26, the 1560 Geneva Bible ("the Lord hathe said unto me, Thou art my Sonne:  this day have I begotten thee" versus ), the Doc. 77-31, the 1611 King James Bible ("the LORD hath said unto me, Thou art my Son; this day have I begotten thee"), Doc. 77-2, the 1752 Douay-Rheims ("The Lord hath said to me: Thou art my son, this day have I begotten thee"), and Doc. 77-3, the 1851

Brenton translation of the Septuagint ("the Lord said to me, Thou art my Son, to-day have I begotten thee").

b. Psalm 3. Doc. 72-17 and 72-18, Depo. Exs. 50 at 53, 51 at 18. This Psalm in the website material has a one word difference at verse 8 from what is claimed by HTM as its copyrightable work, and (unlike the HTM form) repeats verse 6 at the end of the Psalm.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 3 as it appears at pages 45-46 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, the HTM form of the verses is ***virtually identical to*** Psalm 3 as it appears in Doc. 77-3, the 1851 Brenton translation (largely some word ordering and substitution), and even more closely matches Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary). And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 3 as it appears in Doc. 77-31, the 1611 King James (AV), Doc. 77-7, the 1939 Psalter by Oesterley, and what appears on on page 18 of Doc. 77-6, the 1906 Hapgood - Service Book and pages 12-13 of Doc. 77-4, the 1936 Masters Orthodox Private Devotions.

c. Psalm 4. Doc. 72-17, Depo. Ex. 50 at 24. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 4 as it appears at page 192 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, the HTM form of the verses is ***virtually identical to*** Psalm 4 as it appears in Doc. 77-3, the 1851 Brenton translation (again, word ordering and substitution). And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 4 as it appears in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff, Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore, and what appears on on page 148 of Doc. 77-6, the 1906 Hapgood - Service Book.

d. Psalm 5. Doc. 72-18, Depo. Ex. 51 at 45. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 5 as it appears at page 81 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, the HTM form of the verses is ***very similar to*** Psalm 5 as it appears in Doc. 77-3, the 1851 Brenton translation, and Doc. 77-33, the 1857 translation of the Psalms by Francis Patrick Kenrick. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 5 as it appears in Doc. 77-31, the 1611 King James (AV), Doc. 77-2, the 1752

Douay-Rheims, and Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.

e.   Psalm 6.  Doc. 72-17, Depo. Ex. 50 at 24.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 6 as it appears at page 192 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  Also, **t**he HTM form of the verses is ***very similar to*** Psalm 6 as it appears in 77-33, the 1857 translation of the Psalms by Francis Patrick Kenrick, and the HTM form of the verses also bears ***similarity*** to how the verses appear in Doc. 77-1, the 1535 Coverdale Psalms, with variations very close to Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 6 as it appears in Doc. 77-2, the 1752 Douay-Rheims, and Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.

f.   Psalm 8.  Doc. 72-25, Depo. Ex. 54 at 7 and 13 (two verses).  These two verses in the website material match the corresponding portions of what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the two verses (with minor punctuation and capitalization differences) is ***identical to*** the verses as appears in Doc. 77-3, the 1851 Brenton translation, and as the verses

appears at page 96 (first few sentences of "Selected Psalm Verses") of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice, Also, apart from the two verses that appeared in the website material, the HTM form of the Psalm as a whole is extremely ***similar to*** Psalm 8 as it appears in Doc. 77-3, the 1851 Brenton translation, and as that Psalm appears in Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 8 as it appears in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff.

g. Psalm 9. Doc. 72-28, Depo. Ex. 57 at 50 (one verse). The one verse in the website material matches the corresponding portion of what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the one verse is ***identical to*** the verse as it appears at page 59 (at "Stichos") of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. It is also ***very similar*** to how the verse appears at page 30 of Doc. 77-6, the 1906 Hapgood Service Book. <u>Also, apart from the one verse that appeared in the website material</u>, the HTM form of the Psalm as a whole is extremely ***similar to*** Psalm 9 as it appears in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff. And the HTM form

*contains phrases that precisely match* distinct wording of verses and portions of verses of Psalm 9 as it appears in 77-33, the 1857 translation of the Psalms by Francis Patrick Kenrick, and Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.

h. Psalm 12. Doc. 72-17, Depo. Ex. 50 at 25. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. *As regards prior works* the HTM form of the verses is *identical to* Psalm 12 as it appears at pages 192-193 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. It is bears *great similarity* to how Psalm 12 appears in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff. And the HTM form *contains phrases that precisely match* distinct wording of verses and portions of verses of Psalm 12 as it appears in Doc. 77-6, the 1906 Hapgood Service Book.

i. Psalm 18. Doc. 72-28, Depo. Ex. 57 at 53 (one verse). The one verse in the website material matches the corresponding portion of what is claimed by HTM as its copyrightable work.

    i. *As regards prior works* the HTM form of the one verse is *identical to* the verse as it appears at page 98 (first sentence, "Selected Psalm Verses) of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. It is also *virtually identical* to how the verse appear at pages 181, 248, and 249

of Doc. 77-6, the 1906 Hapgood Service Book.  <u>Also, apart from the one verse that appeared in the website material</u>, the HTM form of the Psalm as a whole is extremely ***similar to*** Psalm 18 as it appears in Doc. 77-1, the 1535 Coverdale Psalms (denominated Psalm 19), Doc. 77-3, the 1851 Brenton translation (also denominated Psalm 19), and Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.

j.  Psalm 19.  Doc. 72-17, Depo. Ex. 50 at 51.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 19 as it appears at page 43 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  And the HTM form of Psalm 19 bears ***great similarity, with many phrases that precisely match*** how Psalm 19 appears in Doc. 77-1, the 1535 Coverdale Psalms (denominated Psalm 20), Doc. 77-31, the 1611 King James (AV, and also denominated Psalm 20), Doc. 77-2, the 1752 Douay-Rheims translation, Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff, and Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.

k.  Psalm 20.  Doc. 72-17, Depo. Ex. 50 at 51.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 20 as it appears at pages 43-44 of Doc. 76-2 through 76-6, the ROCOR

Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. And the HTM form of Psalm 20 is **_virtually identical to_** the Psalm as it appears in Doc. 77-3, the 1851 Brenton translation (largely some word ordering and substitution, and denominated there as Psalm 21), as also is the case with 77-33, the 1857 translation of the Psalms by Francis Patrick Kenrick.

l.   Psalm 22. Doc. 72-40, Depo. Ex. 108 at 78. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

     i. **_As regards prior works_** the HTM form of the verses is **_identical to_** the verse as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice. See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d). It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication. Defendant's copy contains pages that never appeared in the original

published volume and has had the original copyright notices removed. *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23. Psalm 22 never appeared in the original 1954 Abramtsov book. *Id.*

m. Psalm 24. Doc. 72-17, Depo. Ex. 50 at 25. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ___As regards prior works___ the HTM form of the verses is ___identical to___ Psalm 24 as it appears at page 193 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, **t**he HTM form of the verses is ___very similar to___ the Psalm as it appears (denominated "XXV") in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary). And the HTM form ___contains phrases that precisely match___ distinct wording of verses and portions of verses of Psalm 24 as it appears in Doc. 77-2, the 1752 Douay-Rheims, and as the Psalm appears in Doc. 77-3, the 1851 Brenton translation (denominated there as Psalm 25).

n. Psalm 25. Doc. 72-40, Depo. Ex. 108 at 92. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ___As regards prior works___, except for two words difference in the entire Psalm, the HTM form of the verses is ___identical to___ the verse as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in

1954 without any copyright notice.  See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d).  It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form.  This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication, Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed.  *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp.* Dkt. 77-14 – 77-23.  Psalm 25 never appeared in the original 1954 Abramtsov book.  *Id.*

o.  Psalm 26.  Doc. 72-38, Depo. Ex. 69 at 38 (two verses).  These verses in the website material ("*The Lord is my light and my salvation; whom then shall I fear? The Lord is the strength of my life; of whom then shall I be afraid?*") have two words difference ("salvation" versus HTM's "saviour," and "strength" versus HTM's "defender") from what is claimed by HTM as its copyrightable work.  In contrast to the HTM work, the website material is ***identical to*** the verses as they appear in Doc. 77-1, the 1535 Coverdale Psalms (denominated there as Psalm 27) and at page 282 of Doc. 77-6, the 1906 Hapgood Service Book, and also (except for the word "then") to the verses as they appear in Doc. 77-31, the 1611 King

James (AV), the 1885 Revised Version, and at pages 183 and 473 of Doc. 77-6, the 1906 Hapgood Service Book.

    i. ***As regards prior works***, apart from the two verses that appeared in the website material, the HTM form of the Psalm as a whole is ***extremely similar to*** the Psalm (denominated as Psalm 27) as it appears in Doc. 77-3, the 1851 Brenton translation and Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff, and the HTM form also is ***very similar*** to the Psalm as it appears in Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of the Psalm as it appears in Doc. 77-2, the 1752 Douay-Rheims.

p.  Psalm 30.  Doc. 72-17, Depo. Ex. 50 at 27.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 30 as it appears at page 193-194 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  Also, **t**he HTM form of the verses is ***very similar to*** the Psalm as it appears in 77-33, the 1857 translation of the Psalms by Francis Patrick Kenrick.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 30 as it appears in Doc. 77-2, the 1752 Douay-Rheims, and as the

Psalm appears in Doc. 77-7, the 1939 Psalter by Oesterley (denominated there as Psalm 31).

q. Psalm 31. Doc. 72-34, Depo. Ex. 65 at 21. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

  i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 31 as it appears at page 113 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, t**he** HTM form of the verses is ***very similar to*** the Psalm as it appears in 77-33, the 1857 translation of the Psalms by Francis Patrick Kenrick. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 31 as it appears in Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.

r. Psalm 33. Doc. 72-29, Depo. Ex. 60 at 88 (two partial verses). These partial verses in the website material ("I *will bless the Lord at all times" and "shall be deprived of any good thing*") have one words difference – missing "not" as in "shall not be" – from what is claimed by HTM as its copyrightable work. However, this is ***identical to*** what appears in the 1977 Priest's Service Books -- Vespers, Midnight Service, Matins, and All-night Vigil, and that portion tracks the other material included as part of Doc. 72-29, Depo. Ex. 60.

  i. ***As regards prior works***, apart from the two partial verses that appeared in the website material, the HTM form of the Psalm as a whole is ***identical to*** Psalm 33 as it appears at page 188-189 of Doc. 76-2 through 76-6, the

ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, the HTM form of the verses is ***virtually the same*** as the Psalm as it appears (denominated "XXXIV") in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary), and ***close to*** what appears in Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 24 as it appears in Doc. 77-3, the 1851 Brenton translation (denominated there as Psalm 34).

s. Psalm 37. Doc. 72-17 and Doc. 72-18, Depo. Exs. 50 at 54, 51 at 18. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

   i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 37 as it appears at page 46 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, the HTM form of the verses is ***very similar to*** the Psalm as it appears (denominated Psalm 38) in Doc. 77-3, the 1851 Brenton translation, and ***shares much with*** Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 37 as it appears in Doc. 77-2, the 1752 Douay-

Rheims, and as the Psalm appears in Doc. 77-34, the 1857 translation of the Psalms by Francis Patrick Kenrick.

t.  Psalm 50.  Doc. 72-14, Depo. Ex. 47 at 3, Doc. 72-15, Depo. Ex. 48 at 3, Doc. 72-17, Depo. Ex. 50 at 35 and 64, Doc. 72-18, Depo. Ex. 51 at 31, Doc. 72-24, Depo. Ex. 53 at 6, 54 at 15 (partial of one verse), Doc. 72-28, Depo. Ex. 57 at 27 (one verse), Doc. 72-30, Depo. Ex. 61 at 29, Doc. 72-31, Depo. Ex. 62 at 26, Doc. 72-32, Depo. Ex. 63 at 30, Doc. 72-33, Depo. Ex. 64 at 26, 67 at 2.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

   i.  ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 50 as it appears on pages 107 and 200 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  Also, **t**he HTM form of the verses is ***virtually identical to*** the Psalm as it appears (denominated Psalm 51) in Doc. 77-3, the 1851 Brenton translation, and ***has strong similarities*** with Doc. 77-34, the 1857 translation of the Psalms by Francis Patrick Kenrick (denominated "LI").   And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 50 as it appears in Doc. 77-2, the 1752 Douay-Rheims, Doc. 77-31, the 1611 King James (AV), the 1885 Revised Version, and Doc. 77-8, the 1966 Psalter of Archimandrite Lazarus Moore.

u.  Psalm 62.  Doc. 72-17 and 72-18, Depo. Exs. 50 at 55, 51 at 20.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable

work; except that – at the end of the Psalm in the website material – additional material is added that does not appear in the work claimed by HTM, but does appear also of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 62 as it appears at page 46-47 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, the HTM form of the verses is ***similar to*** the Psalm as it appears (denominated "LXIII") in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff (mostly just the removal of the commentary). And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 62 as it appears in Doc. 77-2, the 1752 Douay-Rheims, and as the Psalm appears in Doc. 77-3, the 1851 Brenton translation (denominated there as Psalm 63).

v.  Psalm 65. Doc. 72-28, Depo. Ex. 57 at 52 (one verse). The one verse in the website material matches the corresponding portion of what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the one verse is ***identical to*** the verse in Psalm 65 as it appears at page 25 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. <u>Also, apart from the one verse that appeared in the website material</u>, the HTM form of the Psalm as

a whole is ***identical to*** the verse in Psalm 65 as it appears at page 25 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence.

w. Psalm 69. Doc. 72-17 and 72-36, Depo. Exs. 50 at 40, 67 at 4. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 69 as it appears on page 28, 123, 191-192, 203 and 212 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. Also, **t**he HTM form of the verses is ***has strong similarities*** with the Psalm as it appears (denominated Psalm 70) in Doc. 77-3, the 1851 Brenton translation, with Doc. 77-34, the 1857 translation of the Psalms by Francis Patrick Kenrick, and with Doc. 77-32, the 1611 King James (AV). And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 69 as it appears in Doc. 77-1, the 1535 Coverdale Psalms (denominated Psalm 70), and Doc. 77-6, the 1906 Hapgood Service Book at pages 147-148.

x. Psalm 90. Doc. 72-17 and 72-40, Depo. Exs. 50 at 28, 108 at 53. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***very similar to*** Psalm 90 as it appears in Doc. 77-14 through 77-23, a work that has been

at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice**,** See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d).  It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.  This form of the verses is also ***very similar to*** Psalm 91 as it appears in Doc. 77-3, the 1851 Brenton translation.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 90 as it appears in Doc. 77-34, the 1857 translation of the Psalms by Francis Patrick Kenrick.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication.  Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed. *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23.

y.  Psalm 92.  Doc. 72-40, Depo. Ex. 108 at 90.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 92 as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice. <u>See</u> Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d). It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication. Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed. *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23. Psalm 92 never appeared in the original 1954 Abramtsov book. *Id.*

z. Psalm 100. Doc. 72-18, Depo. Ex. 51 at 47, Doc. 72-40, 108 at 57. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 100 as it appears at page 82 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice. The HTM form also is ***very similar to*** Psalm 100 as it appears in Doc. 77-34, the 1857 translation of the Psalms by Francis Patrick Kenrick, and to Psalm 101 at it appears in Doc. 77-5, the 1888 translation of Augustin on the Psalms – Post-Nicene Fathers Vol. 8 - editor Schaff. And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 100 as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice. See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d). It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov

publication. Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed. *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23.

    aa. Psalm 110. Doc. 72-28, Depo. Ex. 57 at 50 and 54 (two verses), 108 at 86. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

        i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice. <u>See</u> Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d). It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication. Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed. *See* Florio

Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23. Psalm 110 never appeared in the original 1954 Abramtsov book. *Id.*

    bb. Psalm 131. Doc. 72-40, Depo. Ex. 108 at 83. This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

        i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice. See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d). It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication. Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed. *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23. Psalm 131 never appeared in the original 1954 Abramtsov book. *Id.*

cc. Psalm 132.  Doc. 72-40, Depo. Ex. 108 at 88.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

    i. ***As regards prior works*** the HTM form of the verses is ***identical to*** the verse as it appears in Doc. 77-14 through 77-23, a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice.  See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d).  It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form.  This Psalm, in any case, is also substantially similar to other preexisting works in a fashion similar to that noted for the other Psalms discussed herein.

PLAINTIFF'S NOTE: The document submitted by Defendant to the Court under Dkt. 77-14 through 77-23 is an inaccurate and materially altered reproduction of the 1954 Abramtsov publication.  Defendant's copy contains pages that never appeared in the original published volume and has had the original copyright notices removed.  *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp.* Dkt. 77-14 – 77-23.  Psalm 132 never appeared in the original 1954 Abramtsov book.  *Id.*

dd. Psalm 145.  Doc. 72-30 through 72-33, Depo. Exs. 61 at 145, 62 at 111, 63 at 157, 64 at 123.  This Psalm in the website material is the same as what is claimed by HTM as its copyrightable work.

 i. ***As regards prior works*** the HTM form of the verses is ***identical to*** Psalm 145 as it appears on page 125-126 of Doc. 76-2 through 76-6, the ROCOR Horologion translated by Rassaphor-monk Laurence and published in 1984 without any copyright notice.  Also, the HTM form of the verses is ***has strong similarities*** with the Psalm as it appears in Doc. 77-35, the 1857 translation of the Psalms by Francis Patrick Kenrick.  And the HTM form ***contains phrases that precisely match*** distinct wording of verses and portions of verses of Psalm 145 as it appears in Doc. 77-32, the 1611 King James (AV) (denominated Psalm 46).

ee. Additional similar comparisons appear to exist between website material and these other portions of the Psalter:  Psalms 86, 87, 89, 101, 102, 103, 104, 109, 111, 116, 117, 129, 140, 141, and 142.

40. Without further clarification from HTM as to what portions of Archbishop Gregory's website material HTM believes are infringing, it is not possible further to determine whether challenged website material actually is, or is not, original to HTM.  See Doc. 76, Gregory Affidavit ¶ 16.  Most of the prior works to which the HTM version has been compared preexisted the very formation of HTM by a century or more. As regards the Euchologion, Doc. 77-14 through 77-23, this is a work that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright

notice. See Doc. 88, Supp. Decl. Bishop John at 3-4, ¶(1)(d). It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form. In any case, the HTM Psalter is also substantially similar to other preexisting works – not just to the Euchologion.

PLAINTIFF'S NOTE:  To the extent Defendant intends to rely on the document it submitted to the Court under Dkt. 77-14 through 77-23, such evidence is unreliable because it reflects an inaccurate and materially altered reproduction of the 1954 Abramtsov publication, which contains pages that never appeared in the original published volume and has has the original copyright notices removed.  *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23.

41.     As can be shown with the Psalter, comparisons can be made between all the other works in which HTM claims copyright and preexisting works that have been in the Orthodox Church for some time.  See Doc. 85-4, Depo. Ex. 30; Doc. 59-4, Gregory Depo. at pp. 182:17-183:11.  NOTE:

PLAINTIFF'S NOTE: HTM disputes this proposed fact as opinion unsupported by evidence of record, for example, the impreciseness of defendant's reference to "preexisting works" with no further specificity and no citation to where these alleged preexisting works may be hiding in the record..

42.     Apart from the Psalms that were on the website, it is Archbishop Gregory's perception that the other material HTM complains of does not come from HTM sources.  See Doc. 59-4, Gregory Depo. at pp. 97:23-98:5, 100:5-101:1, 103.11-24, 104:3-5.  A comparison

of the works posted on the website that HTM alleges were infringing from August 2007 until removed January 2008, shows that the majority of these works are not at all similar to the alleged works in which HTM claims copyright. <u>See</u> Doc. 59-7, Peter Depo. at 139:4-159:16. The Psalter is an exception. <u>See</u> Doc. 59-4, Gregory Depo. at p. 97:7-98:5. NOTE:

PLAINTIFF'S NOTE: HTM disputes this proposed fact as constituting unsupported opinion testimony as to "defendant's perception" of events, that is unsupported by any evidence of record, and also as constituting a legal conclusion where it purports to judge the substantial similarity of the accused works to HTM's works.

43.    Some of the material on the website complained of by HTM is material that Archbishop Gregory and others compiled from public domain sources. <u>See</u> Doc. 59-4, Gregory Depo.y at pp. 204:20-207:6, 210:20-211:5, 211:22-213:9, 213:15-216:13. One such work, "Akathist to the Theotokos," has been a continuing work in progress by Archbishop Gregory for decades. <u>See</u> Doc. 59-4, Gregory Depo. at pp. 205:14-206:15, 216:21-219:17.

PLAINTIFF NOTE: HTM disputes this fact as inaccurate and offering a legal conclusion as to materials that are allegedly in the "public domain", and regarding documents that have not been authenticated and which themselves may constitute infringements of HTM's works.

44.    About the time that suit was filed against Archbishop Gregory, HTM represented that the only material alleged to infringe HTM's copyright were: Depo. Exs. 33, 34, 36-57, 60-65, 67, and 71. <u>See</u> Doc. 12-2, Aff. Pachomius at 3-6, ¶¶ 12-16.

PLAINTIFF'S NOTE: Disputed where. Dkt. 12-2 is the prior settlement agreement between the parties.

45. At a deposition taken almost two years after HTM filed suit, HTM added concerns about Depo. Ex. 66, 68, 69, 106, and 108. Previously this material was described as "does not appear to comprise copyrighted material owned by the Monastery." See Doc. 12-2, Aff. Pachomius at 6, ¶ 16.

PLAINTIFF'S NOTE: Disputed as inaccurate where Dkt. 12-2 is the prior settlement agreement between the parties.

46. Monk Pachomius authenticated the following deposition exhibits as true copies of material that was on Archbishop Gregory's website, and which HTM claims infringed its copyright. Separately, the person who placed this content on Archbishop Gregory's website, Father Peter, see Doc. 59-7, Peter Depo. at pp. 66:10-68:8, 69:9-70:18, 72:17-19, 73:13-74:23, identified the non-HTM sources the material was taken from to post on Archbishop Gregory's website.

PLAINTIFF'S NOTE, HTM disputes the entirety of subparts a-kk of this proposed facts as inaccurate restatements of the deposition testimony.

    a. Doc. 72-1, Depo. Ex. 33, "January troparia to the saints." See Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. See Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. See Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

    b. Doc. 72-,2 Depo. Ex. 34, "February troparia to the saints." See Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy

Theotokos Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

c. Doc. 72-3, Depo. Ex. 36, "March troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

d. Doc. 72-4, Depo. Ex. 37, "April troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

e. Doc. 72-5, Depo. Ex. 38, "May troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

f. Doc. 72-6, Depo. Ex. 39, "June troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

g.  Doc. 72-7, Depo. Ex. 40, "July troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

h.  Doc. 72-8, Depo. Ex. 41, "August troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

i.  Doc. 72-9, Depo. Ex. 42, "September troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

j.  Doc. 72-10, Depo. Ex. 43, "October troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17.  It most likely has multiple authors from multiple sources.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

k.  Doc. 72-11, Depo. Ex. 44, "November troparia to the saints." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 50:4-50:13.  This website material came from Holy Theotokos Monastery.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8,

56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. See Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

l.  Doc. 72-12, Depo. Ex. 45, "December troparia to the saints." See Doc. 78-5, Pachomius Depo. at p. 50:4-50:13. This website material came from Holy Theotokos Monastery. See Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. See Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

m.  Doc. 72-13, Depo. Ex. 46, "Pentecostarion Period." See Doc. 78-5, Pachomius Depo. at p. 157:4-11. This website material came from Holy Theotokos Monastery. See Doc. 59-7, Peter Depo. at pp. 40:25-41:10, 55:1-56:8, 56:18-57:4, 78:8-80:17. It most likely has multiple authors from multiple sources. See Doc. 59-7, Peter Depo. at pp. 61:17-62:10.

n.  Doc. 72-14, Depo. Ex. 47, "Home Prayer Rule." See Doc. 78-5, Pachomius Depo. at pp. 223:4-224:9. This website material comes from services and texts that have been passed throughout the church for years. See Doc. 59-7, Peter Depo. at pp. 80:19-82:20; Doc. 59-4, Gregory Depo. at pp. 210:20-211:5, 211:22-213:9.

o.  Doc. 72-15, Depo. Ex. 48, "Home Prayer Rule (with Jesus Prayer)." See Doc. 78-5, Pachomius Depo. at pp. 223:4-224:9. This website material comes from services and texts that have been passed throughout the church for years. See Doc. 59-7, Peter Depo. at pp. 80:19-82:20; Doc. 59-4, Gregory Depo. at pp. 210:20-211:5, 211:22-213:9.

p.  Doc. 72-16, Depo. Ex. 49, "Akathist to the Theotokos." See Doc. 78-5, Pachomius Depo. at p. 229:5-229:15. This material was a work compiled over

decades by Archbishop Gregory.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 83:19-84:14.

<u>See also</u> Depo. Gregory at pp. 205:14-206:15, 216:21-219:17.

q.  Doc. 72-17, Depo. Ex. 50, "Divine Service Book for Home Use." <u>See</u> Doc. 78-5,
Pachomius Depo. at pp. 217:20-218:17.  This website material was a compilation
of various public domain service books in the Orthodox Church.  <u>See</u> Doc. 59-7,
Peter Depo. at. pp. 84:17-86:8.

r.  Doc. 72-18, Depo. Ex. 51, "All Night Vigil for Kliros." <u>See</u> Doc. 78-5,
Pachomius Depo. at  pp. 229:16-230:8.  The Jordanville Prayer Book contains the
equivalent of what might be called an all night vigil book.  <u>See</u> Doc. 59-7, Peter
Depo. at. pp. 103:20-104:8.

s.  Doc. 72-19 through Doc. 72-23, Depo. Ex. 52, "The Octoëchos." <u>See</u> Doc. 78-5,
Pachomius Depo. at p. 50:23-51:5.  The sources for this website material were
primarily ancient pages that had been passed around the Orthodox Church for
decades.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 58:1-59:11, 59:23-60:6.  It most likely
has multiple authors from multiple sources.  <u>See</u> Doc. 59-7, Peter Depo. at pp.
61:17-62:10.

t.  Doc. 72-24, Depo. Ex. 53, "Supplicatory Canon to the Theotokos." <u>See</u> Doc. 78-
5, Pachomius Depo. at pp. 58:19-59:5.  The source of this website material was
St. Nectarios Press.  <u>See</u> Doc. 59-7, Peter Depo. at pp. 92:13-93:20.  <u>See also</u>
Depo. Ex. 23 and 24.

u.  Doc. 72-25, Depo. Ex. 54, "Palm Sunday." <u>See</u> Doc. 78-5, Pachomius Depo. at p.
59:6-60:4.  The source of this website material is unknown.  <u>See</u> Doc. 59-7, Peter
Depo. at pp. 93:24-94:13.

v. Doc. 72-26, Depo. Ex. 55, "Pascha." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 60:7-60:20. The precise source is unknown. <u>See</u> Doc. 59-7, Peter Depo. at pp. 148:1-149:1.

w. Doc. 72-27, Depo. Ex. 56, "Pentecost." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 60:23-61:5. The precise source is unknown. <u>See</u> Doc. 59-7, Peter Depo. at pp. 148:1-149:1.

x. Doc. 72-28, Depo. Ex. 57, "Nativity." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 61:9-16. The source of this material was public domain documents that were understood to not be works in which HTM or any other person claimed copyright. <u>See</u> Doc. 59-7, Peter Depo. at pp. 149:5-13, 159:23-160:21.

y. Doc. 72-29, Depo. Ex. 60, "All Night Vigil." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 66:13-67:3. The original source of this website material was a service book put out by Jordanville Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 102:4-103:19.

z. Doc. 72-30, Depo. Ex. 61, "Divine Liturgy of St. John Chrysostom." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 67:7-16. The source of this website material was a service book put out by Jordanville Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 106:17-107:2, 107:16-109:7.

aa. Doc. 72-31, Depo. Ex. 62, "Divine Liturgy of St. John Chrysostom (Without a Deacon)." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 67:21-68:10. The source of this website material was a service book put out by Jordanville Monastery. <u>See</u> Doc. 59-7, Peter Depo. at pp. 106:17-107:2, 107:16-109:7.

bb. Doc. 72-32, Depo. Ex. 63, "Divine Liturgy of St. Basil the Great." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 68:15-69:7. The source of this website material was a service book put out by Jordanville Monastery and Doc. 77-6, the 1906 Hapgood Service Book. <u>See</u> Doc. 59-7, Peter Depo. at pp. 111:10-113:2, 114:12-114:23.

cc. Doc. 72-33, Depo. Ex. 64, "Divine Liturgy of St. Basil the Great (Without a Deacon)." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 69:13-23. The source of this website material was a service book put out by Jordanville Monastery and Doc. 77-6, the 1906 Hapgood Service Book. <u>See</u> Doc. 59-7, Peter Depo. at pp. 111:10-113:2, 114:12-114:23.

dd. Doc. 72-34, Depo. Ex. 65, "Holy Baptism." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 70:2-11. The source for this website material was a reworking of Doc. 77-6, the 1906 Hapgood Service Book. <u>See</u> Doc. 59-7, Peter Depo. at pp. 114:24-115:8.

ee. Doc. 72-35, Depo. Ex. 66, "Betrothal and Holy Matrimony." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 70:14-22. The source of this material was public domain documents that were understood to not be works in which HTM or any other person claimed copyright. <u>See</u> Doc. 59-7, Peter Depo. at pp. 151:24-152:11, 159:23-160:21.

ff. Doc. 72-36, Depo. Ex. 67, "Prayers for Purity." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 77:18-78:1. The source of this website material was a bound printed book published by Father Anthony Gavalas from Astoria, New York. <u>See</u> Doc. 59-7, Peter Depo. at. 117:12-118:8.

gg. Doc. 72-37, Depo. Ex. 68, "After Communion Prayers." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 79:12-19. The source for this website material was the Jordanville prayer book. <u>See</u> Doc. 59-7, Peter Depo. at 118:23-119:17.

hh. Doc. 72-38, Depo. Ex. 69, "Tonsure Service." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 79:22-80:9. The source of this website material was a book published by somebody in England. <u>See</u> Doc. 59-7, Peter Depo. 120:5-121:6. HTM has complained about the use of 12 sentences on page 2 of Doc. 72-38, Depo. Ex. 69, two verses of Psalm 27 appearing on page 38. <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 239:2-241:1.

ii. Depo. Ex. 71, "Homily on Faith, Repentance, Love, and Fear of God by St. Isaac of Syria." <u>See</u> Doc. 78-5, Pachomius Depo. at p. 84:2-8. It is believed that a novice monk obtained this material that was posted to the website from unknown internet sources. <u>See</u> Doc. 59-7, Peter Depo. at p. 69:1-70:24.

jj. Doc. 72-39, Depo. Ex. 106, "Meal Time Prayers." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 51:13-23, 53:21-56:8. The source of this material was public domain documents that were understood to not be works in which HTM or any other person claimed copyright. <u>See</u> Doc. 59-7, Peter Depo. at pp. 159:23-160:21.

kk. Doc. 72-40, Depo. Ex. 108, "Euchologion." <u>See</u> Doc. 78-5, Pachomius Depo. at pp. 72:3-73:9, 73:15-74:2, 75:14-18. This is a work posted on the website that was intended to be a web version of Doc. 77-14 through 77-23, a document that has been at Dormition Skete in its present form for more than two decades, and that was believed to have been created in its present form by David F. Abramtsov and distributed in 1954 without any copyright notice. <u>See</u> Doc. 88, Supp. Decl.

Bishop John at 3-4, ¶(1)(d).  It has been alleged that Doc. 77-14 through 77-23 contains about thirty additional pages than the original 1954 Abramtsov work, and Archbishop Gregory's position is just that the current document has been in its current form since at least 1983 – regardless of who actually compiled the document in its current form.

PLAINTIFF'S NOTE: The 1954 Abramtsov book that Defendant has submitted to the Court under Dkt. 77-13-77-23 is an inaccurate and materially altered reproduction of the actual 1954 Abramtsov publication, which has added pages and has had the original copyright notices removed.  *See* Florio Declaration ¶¶ 1-4, Exhibit 1, *cmp*. Dkt. 77-14 – 77-23.

47.  An examination of the material posted on the website, compared with what HTM claims are its copyrightable works, does not show any considerable equivalence.  See Doc. 76, Gregory Affidavit ¶ 17.

PLAINTIFF'S NOTE:  HTM disputes this proposed fact as legal conclusion where it purports to conclude whether the accused works are substantially similar to HTM's works.

48.  The posting of the material on the website that HTM alleges infringed its copyright was to allow persons to access English language versions of ancient writings that have been in the Orthodox Church for hundreds of years (and in some instances, like the Psalter, extant for thousands of years.)  See Doc. 76, Gregory Affidavit ¶¶ 13.

PLAINTIFF'S NOTE:  HTM disputes this proposed fact as immaterial where it is not relevant to any claim or defense.

49.  No great or prominent portions of the website material correspond to works that HTM alleges have been infringed.  See Doc. 76, Gregory Affidavit ¶¶ 14.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as immaterial where it is not relevant to any claim or defense, and also as constituting a legal conclusion where it asserts that defendant's works are not substantially similar to HTM's works..

50.    For years, the Psalter, Horologion, Vespers, Orthros, Menaion, Triodion, Pentecostarion, Apolytikia, Kontakia, and other hymns and works in which HTM claims copyright (and regarding which HTM has brought this lawsuit against Archbishop Gregory) have been made publicly available free-of-charge on the internet at the following websites: "The Divine Music Project," http://www.stanthonysmonastery.org/music/Index.html; "The Dynamic Horologion & Psalter," http://orthodox.seasidehosting.st/home; and the "Protection of the Mother of God Church," http://www.pomog.org/.  These works are in most instances downloadable as free pdfs or are otherwise printable or electronically storable.  These websites posting the material in which HTM claims copyright state that they are doing so with the permission of HTM.  See also Doc. 76, Gregory Affidavit ¶¶ 9-11.

PLAINTIFF'S NOTE: HTM disputes this proposed fact as immaterial where it is not related to any claim or defense, and as constituting (an inaccurate) legal conclusion that copyrighted works are no longer protected by copyright if they are licensed or appear on the Internet.

51.    Neither as a whole, nor individually, can HTM specify any "monetary quantifiable estimate of harms, damages, and losses" that HTM would attribute to the alleged infringement.  See Doc. 78-5, Pachomius Depo. at pp. 242:14-243:5.  See also Doc. 78-5, Pachomius Depo. at pp. 118:16-119:4, 121:3-9, 140:7-23, 144:4-12, 144:20-145:3, 145:11-19, 146:4-13, 146:22-147:5, 147:12-17, 147:24-148:7, 148:14-23, 149:8-15,

149:22-150:7, 150:14-22, 158:15-160:6, 167:8-19, 169:11-171:2, 184:15-23, 185:18-186:3, 186:9-188:13, 189:15-191:9, 197:16-198:8.

PLAINTIFF'S NOTE: HTM disputes this fact as immaterial where it is not relevant to any claim or defense, and also as inaccurate where it misstates deposition testimony to exclude the fact that the deponent testified with his familiarity as to damages "as of [the day of the deposition]" and not forever, as defendant's proposed fact suggests.


Dated: July 23, 2010


Respectfully submitted,                          Respectfully submitted,

/s/Amy L. Brosius                                /s/Chris L. Ingold

Amy L. Brosius (BBO # 656521)                    Chris L. Ingold, Esq. (Co. Bar # 28684)
Eric J. Keller (BBO # 670275)                    Irwin & Boesen, P.C.
FISH & RICHARDSON P.C.                           4100 East Mississippi Avenue, 19th Floor
225 Franklin St.                                 Denver, CO 80246
Boston, MA 02110
Telephone: 617-542-5070                          Harold R. Bruno, III, Esq. (Co. Bar # 14945)
Facsimile: 617-542-8906                          Robinson Waters & O'Dorisio, P.C.
brosius@fr.com                                   1099 18th Street, Suite 2600
keller@fr.com                                    Denver, Colorado 80202
                                                 Telephone: (303) 297-2600
Mark A. Fischer (BBO # 167100)
DUANE MORRIS LLP                                 Richard J. Bombardo, Esq. (BBO # 633161)
470 Atlantic Avenue                              Eleven Beacon Street, Suite 625
Boston, MA 02210-2243                            Boston, MA 02108
Telephone: 857-488-4224                          Telephone: (617) 742-0575
Facsimile: 857-488 4201
mafischer@duanemorris.com                        Neil S. Cohen, Esq. (BBO # 561173)
                                                 Neil S. Cohen, P.C.
                                                 Eleven Beacon Street, Suite 625
*Attorneys for Plaintiff, Society of the*        Boston, MA 02108
*Holy Transfiguration Monastery, Inc.*           Telephone: (617) 367-0070

                                                 *Attorneys for Defendant, Archbishop Gregory of*
                                                 *Denver Colorado*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on this 23rd day of

July.

/s/Andrea Lanno
Andrea Lanno